**CASE NO. 22-1365**
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Elisabeth Epps,
Ashlee Wedgeworth,
Amanda Blasingame,
Maya Rothlein,
Zach Packard,
Hollis Lyman,
Cidney Fisk, and
Stanford Smith,

      Plaintiffs-Appellees

v.

City and County of Denver, City of Aurora, Jonathan Christian, Keith
Valentine, David McNamee, Patricio Serrant, Mathews Brukbacher,

      Defendants-Appellants.

On Appeal from the United States District Court for The District of Colorado
Judge R. Brooke Jackson
District Court Civil Case No. 20-cv-01878-RBJ & 20-cv-01922-RBJ-MEH
(consol.)

**OPENING BRIEF OF DEFENDANTS-APPELLANTS**

Michael T. Lowe
David M. Goddard
Heidi J. Hugdahl
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
Telephone: (303) 831-1099
mlowe@brunolawyers.com
dgoddard@brunolawyers.com
hhugdahl@brunolawyers.com
*Attorneys for Defendants-Appellants
Serrant, McNamee, and Budaj,*

Peter Ruben Morales
Isabelle Sabra Evans
Office of the City Attorney
Aurora Municipal Center, Suite 5300
15151 East Alameda Parkway
Aurora, CO  80012
Telephone: (303) 739-7030
pmorales@auroragov.org
ievans@auroragov.org
*Attorneys for Defendants-Appellants
City of Aurora*

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

Table of Authorities ...................................................................v

Statement of Jurisdiction ...........................................................1

Issue Presented for Appeal.........................................................3

Statement of the Case ................................................................3

Factual Background ...................................................................3

Procedural History ....................................................................7

Summary of Argument ..............................................................10

Standard of Review....................................................................11

Argument...................................................................................14

    A.    The District Court erred in finding that the law which Plaintiffs'
             claim was violated was clearly established at the time of the
             Aurora Officers' conduct ...................................................14

        1.    The cases upon which the District Court relied to clearly
                establish the law were inapposite to the factual circumstances
                presented to the Aurora Officers ..................................17

    B.    The District Court erred in finding there was a constitutional
             violation by the Aurora Officers ........................................20

    C.    The District Court erred in allowing both the Fourteenth and
             Fourth Amendment claims to go forward based on excessive force ..25

    D.    In the Absence of an underlying constitutional violation by Aurora
             Officers the municipal claims against the City also failed to .............28

    Conclusion ...................................................................29

Statement Regarding Oral Argument ...........................................................30

Certificate of Service ....................................................................................31

Fed. R. Civ. P. 26.1 and Tenth Circuit Rule 26.1 Disclosure Statement ......32

Certificate of Digital Submission .................................................................34

Certificate of Compliance with Type-Volume Limit ....................................35

Certificate of Exact Copies...........................................................................36

Addenda pursuant to 10th Cir. R. 28.2(B) ...................................................37

   1.  Order regarding Motion for Summary Judgment [ECF 429]...................38

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGES**

*Anderson v. Creighton*, 483 U.S. 63 (1987) ...............................................................15

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...........................................................14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................2, 13

*Behrens v. Pelletier,* 516 U.S. 299 (1996) ................................................................13

*Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012) ........................................23

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ...............................................................16

*Brower v. County of Inyo,* 489 U.S. 593 (1989) ......................................................21

*Buck v. City of Albuquerque,* 549 F.3d 1269 (10th Cir. 2008)..........9, 17, 18, 19, 20

*Camreta v. Greene*, 563 U.S. 692 (2011) .................................................................14

*Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009) .................................23

*City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) .............................................15

*City of Tahlequah v. Bond,* 2021 U.S. LEXIS 5310 (Oct. 18, 2021) ......................16

*Clark v. Edmunds,* 513 F.3D 1219 (10th Cir. 2008)................................................26

*Cnty. Comm'rs of Bryan Cnty., Okla. V. Brown,* 520 U.S. 397 (1997)...................29

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)......................................21, 26

*Crowson v. Wash. City. State of Utah*, 983 F.3d 1166 (10th Cir. 2020)....................1

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ......................................16, 17

*Dundon v. Kirchmeier*, 577 F. Supp. 3d 1007 (D.N.D. 2021)....................22, 26, 27

*Est. of Carrigan v. Park Cty. Sheriff's Office*, 381 F. Supp

    3d 1316 (D. Colo. 2019) ................................................................................26

*Estate of Ceballos,* 919 F.3d, 1204 (10th Cir. 2019) ..................................20

*Fogarty v. Gallegos,* 523 F.3d 1147 (10th Cir. 2008) ................9, 10, 17, 18, 19, 20

*Gonzales v. Passino*, 222 F. Supp. 2d 1277 (D.N.M. 2002)....................................27

*Graham v. Connor*, 490 U.S. 386 (1989) ......................................................11, 20, 23

*Green v. Branson,* 108 F.3d 1296 (10th Cir. 1997)..................................................25

*Henderson v. Glanz,* 813 F.3d 938 (10th Cir. 2015) ................................................12

*Holdridge v. Blanki,* 255 F. Supp. 3d 1088 (D. Colo. 2017)....................................29

*Holland* ex rel *Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) ..............24

*Jiron v. Lakewood*, 392 F.3d 410 (10th Cir. 2004)............................................28, 29

*Johnson v. Jones,* 515 U.S. 304 (1995) ....................................................................13

*Klen v. City of Loveland*, 661 F.3d 498 (10th Cir. 2011) ........................................18

*Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010) .................................................12, 15

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................................15

*Mascorro v. Billings,* 656 F.3d 1198 (10th Cir. 2011) .............................................16

*McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019)............................................20

*Moore v. Guthrie*, 438 F.3d 1036 (10th Cir. 2006) ..................................................26

*Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012) ........................................................12

*Mullenix v. Luna*, 577 U.S. 7 (2015) ........................................................................16

*Pearson v. Callahan*, 555 U.S. 223 (2009).............................................................14

*Quinn v. Young,* 780 F.3d 998 (10th Cir. 2015) ....................................................11

*Reichle v. Howards*, 566 U.S. 658 (2012) ..............................................................15

*Riggins v. Goodman,* 572 F.3d 1101 (10th Cir. 2009) ...........................................14

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................14

*Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012) ...............................................26

*Serna v. Colo. Dep't of Corr.,* 455 F.3d (10th Cir. 2006) ......................................24

*Tolan v. Cotton*, 572 U.S. 650 (2014)......................................................................16

*Thomson v. Salt Lake Cnty.*, 584 F.3d 1304 (10th Cir. 2009) ................................14

*Torres v. Madrid*, 141 S. Ct. 989 (2021) ................................................................21

*Trigalet v. City of Tulsa,* 239 F.3d 1150 (10th Cir. 2001)......................................28

*Truong v. Hassan,* 829 F.3d 627 (8th Cir. 2016) ....................................................27

*United States v. Lanier*, 520 U.S. 259 (1997).........................................................25

*Webber v. Mefford,* 43 F.3d 1340 (10th Cir. 1994) ................................................28

*White v. Pauly*, 137 S. Ct. 548 (2017) ....................................................................15

*White v. Smith*, 696 F.3d 740 (8th Cir. 2012) .........................................................27

**STATUTES**

28 U.S.C. 1343 ..........................................................................................................2

28 U.S.C. § 1331 ........................................................................................................1

42 U.S.C. § 1983 .................................................................2, 8, 20, 26, 28, 29

## RULES

Fed. R. App. P. 4 ................................................................................................2

Fed. R. Civ. P. 56 ..............................................................................................3

## Jurisdictional Statement

This is an interlocutory appeal of the District Court's September 23, 2022, Order ("Order") denying qualified immunity to Aurora Police Department Sergeant Patricio Serrant and Aurora Police Department Officers David McNamee and Cory Budaj (individually, "Sergeant Serrant," "Officer McNamee" and "Officer Budaj," or collectively, "Aurora Officers"), in their individual capacities. The City of Aurora also appeals based on the District Court's finding of municipal liability insofar as that finding is inextricably intertwined with and dependent upon the finding of an underlying constitutional violation by the Aurora Officers. *See, e.g., Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166, 1191, 1192 (10th Cir. 2020) (dismissing failure-to-train theory of agency liability based on lack of underlying constitutional claim by individual employee).

In the matter currently under review, Plaintiffs originally asserted: 1) retaliation claims under the First Amendment; 2) excessive force claims under the Fourth Amendment; 3) due process and equal protection claims under the Fourteenth Amendment; 4) failure-to-intervene and supervisory liability claims; and 5) municipal liability claims against the City under *Monell* and on the basis of custom or policy and failure to train, supervise, or discipline. [App. Vol. I at 149-158]. The District Court for the District of Colorado has subject matter jurisdiction over such claims pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon district

courts for "all civil actions under the Constitution, laws, or treaties of the United States," and pursuant to § 1343(a), which confers jurisdiction on the district court for all alleged violations of 42 U.S.C. § 1983.

Following lengthy and protracted litigation, the Aurora Officers and the City of Aurora (collectively, "Aurora Defendants") filed a motion for summary judgment, with the individual defendants asserting qualified immunity. [App. Vol. I at 161-175]. The District Court ultimately dismissed the First Amendment retaliation claims, all claims against Defendant Aurora Sergeant Brukbacher, and the failure to intervene claims. [App. Vol. VII at 1770]. With respect to the remaining claims, the District Court found the remaining individual Defendants not entitled to qualified immunity, and allowed the agency liability claims against the City of Aurora to proceed. [*Id.* at 1762-1770]. The Tenth Circuit Court of Appeals therefore has jurisdiction over this appeal because it is brought pursuant to the denial of qualified immunity at the summary judgment stage. This appeal therefore falls under collateral-order doctrine and is an appealable final decision within the meaning of 28 U.S.C. 1291. *Ashcroft v. Iqbal*, 556 U.S. 662, 674-75 (2009). The District Court Order being appealed was submitted on September 23, 2022. [App. Vol. VII at 1750]. Pursuant to Fed. R. App. P. 4(a)(1)(A), the Aurora Defendants timely filed their Notice of Appeal on October 24, 2022. [App. Vol. VII at 1771-74].

## Issues Presented for Review

1.      Whether the District Court erred in its denial of qualified immunity where Plaintiffs failed to carry their burden that Aurora Officers violated a clearly established statutory or constitutional right.

2.      Whether the District Court erred in allowing the claims asserted under both the Fourth Amendment and the Fourteenth Amendment to proceed simultaneously.

3.      Whether the District Court erred in its finding of an underlying constitutional violation by Aurora Officers, thereby improperly allowing the agency liability claims against the City of Aurora to proceed.

## Statement of the Case

### Factual Background[1]

Between May 28 and June 2, 2020, hundreds of protesters gathered in downtown Denver, Colorado to demonstrate and protest, sparked by George Floyd's death. [App. Vol. I at 12, ¶62]. By 1:00 p.m. on May 30, the Denver Mayor had announced a state of "emergency" and imposed a curfew.[2] [*Id.* at 17, ¶98]. On May

---

[1] Only the facts relevant to the remaining claims and parties are set forth herein. For the purposes of this appeal only some of the facts asserted by Plaintiffs in their response to the Rule 56 motion are assumed to be true.

[2] Defendants acknowledge the issue of the applicability of the curfew was challenged, but at the time officers believed it to be in effect and they were tasked with enforcing it.

30-31, 2020, Denver Police Department ("DPD") sent out a request for help to other law enforcement agencies, and the Aurora Police Department ("APD") Emergency Response Team ("ERT") met the call, to provide aid with the crowds and civil unrest. [*Id.* at 161, ¶2; 184; 189]. Denver informed ERT members that the previous nights' protests had been a mix of simultaneous violent and more peaceful protests. [*Id.* at 161-62].

**May 31, 2020**: At approximately 9:00 p.m., Sergeant Serrant and Officer McNamee were deployed to the intersection of Colfax and North Washington. [*Id.* at 163, ¶19; App. Vol. II at 356]. Sergeant Serrant instructed APD Officers including Officer McNamee to deploy less-lethal munitions at protesters who were kicking cannisters emitting smoke and gas at Officers in conformity with his training. [App. Vol. I at 163, ¶20; App. Vol. II at 357]. Mr. Packard was at the intersection of Colfax and North Washington when he kicked a gas cannister and was hit in his right temple area by an unknown object. [App. Vol. I at 164, ¶21; App Vol. II at 369]. At the time Mr. Packard was struck, Sergeant Serrant's team was equipped with shotguns that shot "socks" (beanbags), and 40mm launchers that shot foam rounds. [App. Vol. VII at 1716, 1741]. Other Officers were also in the area at the time, including Officer James Queisner, carrying a less-lethal shotgun with beanbag rounds, and Officer Darren Martinez, both of whom also deployed less-lethal shotgun rounds toward protestors who threw unknown items at police or interfered with police "CS gas."

[App. Vol. VII at 1716; App. Vol. II at 310, 315]. In addition, Aurora Officer Joshua Winters deployed beanbag rounds at persons clearly observed throwing items and picking up deployed gas/smoke canisters and attempting to throw them back. [App. Vol. VII at 1716; App. Vol. II at 242-43].

Officer Budaj deployed with ERT, to protect the Denver Police Department District 6 building at East Colfax and North Washington from a hostile large crowd intent on disobeying repeated lawful orders to exit the area. [App. Vol. I at 163, ¶13; App. Vol II at 245]. Protesters were throwing rocks, bricks, cement, concrete and asphalt chunks, large fireworks and explosive devices, bottles, unknown liquids and Molotov cocktails, softballs, golf balls, and chemical canisters at Officers, sometimes using lacrosse sticks to hurl projectiles. Protesters started fires. Officers were in fear for themselves and others as they were struck with these projectiles. Protesters ignored lawful commands to disperse and continued to violate Denver's curfew and despite multiple orders to vacate the area. Officers were advised that rioters may try to take Denver's District 6 Police Station. Acts of arson, vandalism, and assault were witnessed by officers. [App. Vol. VII at 1714; App. Vol. II at 240, 242, 245, 247, 249, 251, 256, 258-9, 261, 267, 272, 277, 280-81, 283, 285, 288, 290, 292-3, 295, 298, 300, 302, 305-6, 308, 310, 312-13, 315, 317, 319, 325, 327-28, 330, 332, 334 and 339; App. Vol. VII at 1711 (conventionally submitted video Exhibit 21 to Plaintiffs' Response to Motion for Summary Judgment)].

While attempting to hold the line at Colfax and North Pearl Street, Officer Budaj was struck approximately four times with paint ball rounds. [App. Vol. II at 245]. Defendant Budaj deployed approximately 15 foam baton rounds in conformity with his training, all at unknown persons engaging in criminal behavior and deployed a gas canister at approximately 9:41 p.m. to disperse a crowd. [App. Vol. I at 109, ¶203; App. Vol. II at 245, 351]. At or about this same time, Plaintiff Mr. Duran was standing behind protesters near the intersection of Colfax Avenue and Pearl Street. The protesters were using dumpsters they had pushed into the middle of the street as a barricade as they threw fireworks and other projectiles at Officers. Protesters used the dumpster as cover while they kicked or threw gas canisters back toward police. [App. Vol. VII at 1711 (Exhibit 21), at timestamp 20:33-21:28]. At approximately 9:34 p.m., Mr. Duran was live-streaming video from behind these protestors when he was struck by a 40 mm foam round. [App. Vol. I at 128, ¶328; App. Vol. VII at 1711 (Exhibit 21)]. Notably, there is no timestamp on Mr. Duran's video. [App. Vol. VII at 1711 (Exhibit 21)]. In any event, after Mr. Duran was hit with the foam round, he continued filming and chatting on his livestream feed— even joking about making a necklace or a "sex toy" out of the foam round. [*Id.* at timestamps 22:55, 24:02].

Finally, although Plaintiffs frequently characterize the conduct of all law enforcement officers present as "indiscriminately" using less-lethal munitions, there

is no record evidence to support that assertion. [App. Vol. VII at 1715]. Neither is there any record evidence that Aurora Officers were involved in that use either as a group or with specific respect to Plaintiffs Packard or Duran. The record supports only that Officer McNamee deployed less-lethal bean bag rounds at protesters attempting to pick up and throw gas canisters back at the police. Furthermore, as noted above, there is no record evidence for the allegation that Officer McNamee was the only officer firing less-lethal rounds when Mr. Packard was injured.

**Procedural History**

Plaintiffs' First Amended Complaint, in Civil Action No. 1:20-cv-1878, named Defendants the City of Aurora, Officer McNamee, Sergeant Serrant, and Matthew Brukbacher. That action was consolidated with Plaintiffs' Third Amended Complaint in Civil Action No. 1:20-cv-01922, which further named Officer Budaj as a defendant. This Third Amended Complaint is the operative pleading in this matter, and alleges: 1) retaliation claims under the First Amendment; 2) excessive force claims under the Fourth Amendment; 3) due process and equal protection claims under the Fourteenth Amendment; 4) failure-to-intervene and supervisory liability claims; and 5) municipal liability claims against the City under *Monell* and on the basis of custom or policy and failure to train, supervise, or discipline. [App. Vol. I at 149-158]. The Aurora Defendants filed a motion for summary judgment raising qualified immunity on January 28, 2022. [App. Vol. I at 161]. Plaintiffs

timely filed a response on June 8, 2022. [*Id.* at 413]. The Aurora Defendants replied on July 13, 2022 [App. Vol. VII at 1714], and Plaintiffs filed a Surreply on July 29, 2022. [*Id.* at 1744].

In its Order on Aurora Defendants' Motion for Summary Judgment, as to Plaintiffs' claims of "personal involvement" under 42 U.S.C. § 1983, the District Court found Plaintiffs had raised a genuine dispute of material fact as to whether Officer McNamee, Sergeant Serrant, and Officer Budaj were personally involved in the alleged violations of Plaintiff Zach Packard's and Plaintiff Johnathan Duran's rights [App. Vol. VII at 1753-55], and that finding is not a subject of this appeal. However, as to Sergeant Brukbacher, the District Court dismissed all claims— finding Plaintiffs could not prove his involvement in the alleged constitutional violations. [*Id.* at 1754-55]. The District Court also dismissed Mr. Packard's and Mr. Duran's First Amendment and failure-to-intervene claims. [*Id.* at 1770].

Regarding Plaintiffs' excessive force and supervisory claims, the District Court found Plaintiffs could raise a substantive due process claim, as long as that conduct "shocks the conscience." [*Id.* at 1760]. The District Court also found Officer McNamee and Officer Budaj were not entitled to summary judgment on the excessive force claims, and the supervisory liability claim against Sergeant Serrant also survived summary judgment. [*Id.* at 1760-62].

With respect to the parameters of the qualified immunity analysis, the District Court denied qualified immunity as to the Aurora Officers, finding "[t]he law is clearly established that an officer cannot shoot a protestor with pepper balls or other less-lethal munitions when that protestor is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee." [*Id.* at 1763]. In so finding, the District Court relied on *Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008), and *Fogarty v. Gallegos*, 523 F.3d 1147, 1159-62 (10th Cir. 2008). [*Id.*]. More specifically with regard to Mr. Packard's claims, the District Court denied qualified immunity, finding "[n]o reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers," coming to this conclusion by making an unsupported distinction between "thrown" objects and "kicked" objects, and recognizing that "A thrown object might reasonably be considered a threat by an officer." [*Id.* at 1763-64]. The District Court found that "[t]he evidence show[ed] that Mr. Packard, just before he was shot, kicked a gas canister between five and ten feet away from the protestors and roughly in the direction of the officers." The District Court added that the threat presented by Mr. Packard was further diminished by Officers wearing gas masks "that protected them from any gas from that canister," a finding also not supported by any evidence in the record. [*Id.* at 1764].

Regarding the claims of Mr. Duran, the District Court also denied qualified immunity by finding he was shot with a 40 mm round, while in a crowd of protestors, but that he did not pose a threat to the safety of anyone Officer. And, again relying on *Fogarty v. Gallegos*, the District Court also found "[a]ny officer should have known that shooting a less-lethal weapon at him was not reasonable use of force and that such force is violative of a protestor's constitutional rights." [*Id.* at 1764].

As to the City of Aurora, the District Court held that because some of the individual officers were liable for constitutional violations, the municipal claims were not subject to dismissal. [*Id.* at 1764-65]. The remaining findings of the District Court with respect to other theories of liability as found by the District Court are not the subject of appeal. Rather, the Aurora Defendants contend on appeal that because the record facts do not support a violation of a constitutional right by any Aurora Officer, agency liability against the City of Aurora cannot lie.

### Summary of the Argument

The District Court erred in finding that the law which Plaintiffs claim was violated, was clearly established at the time of the Aurora Officers' conduct. Here, the contours of the right were not sufficiently clear, and the constitutional question is certainly not beyond debate. The analysis done by the District Court was done at far too high level of generality, and given the totality of the circumstances it would not have been clear to a reasonable officer when confronted with what, at the time

was unprecedented, that the use of less lethal munitions could not be used in their efforts at crowd control. At times, Aurora Officers were faced with countervailing considerations, endeavoring to enforce a curfew after Denver's Mayor announced a state of emergency, and in so doing, were met at times with violent resistance, which lead to grave threats to officer safety, the safety of property, and the safety of other protestors. In addition to the fact that there was not clearly established law, there was not an underlying constitutional violation in any event. There was no seizure triggering a Fourth Amendment violation and under the *Graham* analysis, particularly the second prong, the threat to officer safety justified the Aurora Officer's actions. In addition, the District Court erred in allowing both the Fourteenth and Fourth Amendment claims to simultaneously proceed. The events of May 31, 2020 as it relates to the Aurora Officers' actions do not rise to the level of conscience shocking conduct, which is a question of law and a much higher standard than would suffice to prove excessive force during a seizure. Finally, in the absence of an underlying constitutional violation by the Aurora Officers, the municipal claims against the City also fail. As a result, the District Court's Order denying Aurora Defendants summary judgment should be reversed.

## Standard of Review

A district court's denial of summary judgment on qualified immunity grounds is reviewed *de novo,* and limited to purely legal issues. *Quinn v. Young*, 780 F.3d

998, 1004 (10th Cir. 2015) (quotation omitted). In this context, a defendant-appellant must "be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal" and discuss only legal issues. *Henderso*n v. *Glanz*, 813 F.3d 938, 948 (10th Cir. 2015) (quotation omitted). Because jurisdiction in a qualified immunity interlocutory appeal is limited to purely legal issues, generally the appellate courts take, as given, the facts that the district court assumed when it denied summary judgment. *Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012) (citations omitted). More specifically, it is the district court's summary judgment responsibility to determine what facts "a jury could reasonably find from the evidence presented to it by the litigants," *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010), thereby allowing the district and appellate court to determine "whether those facts suffice to show a violation of law and whether that law was clearly established at the time of the alleged violation." *Id.*

In an instance where the district court has not adequately developed the factual predicate for a legal conclusion, *Lewis* instructs that the appellate court "may look behind the order denying summary judgment and review the entire record *de novo* to determine which factual inferences a reasonable jury could and could not make." *Id.* Accordingly, even if the district court did not "set forth with specificity the *facts* … that a reasonable jury could infer from the evidence presented by the parties," *id.* at 1226, then the appellate court has jurisdiction to "review the entire record,

construing the evidence in the light most favorable to … the plaintiff, and … ask *de novo* whether sufficient evidence exists for a reasonable jury to conclude" that that the officers violated plaintiffs' "clearly established rights." *Id.* at 1228. Generally, the district court's exclusive job is to determine which facts a jury could reasonably find from the evidence presented to it by the litigants. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Indeed, determining whether there is a "genuine issue of material fact at summary judgment is [itself] a question of law," *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009), which is routinely reviewed *de novo* in appeals from the grant of summary judgment.

What has thus been deemed "Johnson's rule" has attracted at least three exceptions—two of which are applicable here. First, the court has indicated that, when a district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record, the appellate court may look behind the order denying summary judgment and review the entire record *de novo* to determine for itself as a matter of law which factual inferences a reasonable jury could and could not make. *See Behrens v. Pelletier*, 516 U.S. 299, 312, 313 (1996); *see also Johnson*, 515 U.S. at 319. Second, when the "version of events" the district court holds a reasonable jury could credit "is blatantly contradicted by the record," then the appellate court may assess the case based on its own *de novo* view

of which facts a reasonable jury could accept as true. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because the individual Defendants asserted the defense of qualified immunity here, Plaintiffs bear a heavy two-part burden and must demonstrate: (1) that Aurora Officers violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (emphasis added). The plaintiff must make this demonstration "on the facts alleged." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009), and plaintiff's factual recitation must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

### Argument

**A.     The District Court erred in finding that the law which Plaintiffs' claim was violated was clearly established at the time of the Aurora Officers' conduct.**

Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). With respect to the clearly established prong of the qualified immunity analysis, a district court's failure to adequately address that analysis is cause for remand. *See Camreta v. Greene*, 563 U.S. 692, 706-07 (2011) (holding the Tenth Circuit will remand a case to the district court for further consideration when

the district court has given only cursory treatment to qualified immunity's clearly established prong). Moreover, when viewing the evidence from the perspective of a reasonable officer in the context of that analysis, a court must afford "ample room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). This is particularly true where officers "have obligations that tend to tug against each other," *Lewis*, 523 U.S. at 853, as was the case here, where Aurora Officers were attempting to quell often violent and chaotic protests involving large groups containing both violent and non-violent individuals.

Conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. at 741. In other words, the existing precedent must have placed the statutory or constitutional question *beyond debate*. *Reichle v. Howards*, 566 U.S. at 664 (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741). "The operation of this standard … depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S 63, 639 (1987). In that regard, the clearly established right must be defined with specificity, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019), and "particularized" to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. at 640). Indeed, the Supreme Court recently reiterated and

affirmed this principle when it re-emphasized the importance of not defining clearly established law at too high a level of generality. *City of Tahlequah v. Bond,* 2021 U.S. LEXIS 5310 (2021) (citing *al-Kidd*, 563 U.S. at 742); *see also Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("[W]e have instructed that courts should define the clearly established right at issue on the basis of the specific context of the case.") Particularly apropos to this case is the Supreme Court's admonition that "[t]he general proposition … that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742. In turn, this Court has previously indicated that it must "scrupulously adhere" to its longstanding duty to ascertain "clear law (clear answers) that would apply to the situation at hand." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Tahlequah,* 2021 U.S. LEXIS 5310 *4 (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). The foregoing precept was observed by the Court to be even more critical within the context of the Fourth Amendment jurisprudence, *Tahlequah,* 2021 U.S. LEXIS 5310 *5 (citing *Mullenix,* 577 U.S. at 12), because "it is sometimes difficult for an officer to determine how the relevant

legal doctrine … will apply to the factual situation the officer confronts." *Wesby*, 138 S. Ct. at 590 (citation omitted). With the foregoing in mind, this Brief first addresses Plaintiffs' failure to meet their burden to show clearly established law.

### 1. The cases upon which the District Court relied to clearly establish the law were inapposite to the factual circumstances presented to the Aurora Officers.

The District Court relied on two cases in finding that "an officer cannot shoot a protestor with pepper balls or less-lethal munitions when the protestor is committing no crime more serious than a misdemeanor, not threatening anyone, or attempting to flee" was clearly established: *Buck v. Albuquerque* 549 F.3d 1269, 1291 (10th Cir. 2008) and *Fogarty v. Gallegos*, 523 F.3d 1147, 1159-62 (10th Cir. 2008). [App. Vol. VII at 1762-64]. However, the District Court failed to critically analyze these cases and determine whether they bore a sufficient factual symmetry to the facts here, so as to put the Aurora Officers on notice that the use of less-lethal munitions can only be used when officers are addressing an individual throwing an object—which would be "reasonably" perceived as a threat, as stated by the District Court, [App. Vol. VII at 1763]—but not when addressing an individual kicking an object, as was the case with Mr. Packard. Similarly, the District Court did not address the fact that neither *Buck* nor *Fogarty* speak to the notion of accidental, unintentional, mistaken or inadvertent contact of a third party as the result of a use of force by officers, as was the case with Mr. Duran. **In these contexts, even if**

Plaintiffs need not locate a case "directly on point," they must show that it "would have been clear to a reasonable officer [in Sergeant Serrant's, Officer McNamee's, and Officer Budaj's positions] that their conduct was unlawful in the situation." *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011) (quotations omitted). As set forth below, neither *Buck* nor *Fogarty* even come close to clearly establishing the law in either of these contexts.

In *Buck*, five to seven "provocateurs" were arrested at an anti-war protest. After succumbing to tear gas and feeling immobile, one of the plaintiffs was closely surrounded by several police officers and laid down in the street while one of the officers repeatedly fired non-lethal pepper ball rounds at her. At the time the officers surrounded her she posed no threat, was not engaged in apparently unlawful behavior, nor was she in the vicinity of other individuals against whom officers were justifiably using force. Another of the plaintiffs—who was not resisting arrest—was pushed face down on the pavement, kneed in the back, pressed face forward on the hood of a police car, and exposed to tear gas while handcuffed in a police van. Yet a third plaintiff, who similarly did not resist arrest or attempt to flee, was hit repeatedly by an officer's horse, sprayed with pepper spray, pinned between two horse-mounted officers, kicked in the back, and shaken violently by the strap of his shoulder bag. *Buck*, 549 F.3d. at 1275. Not surprisingly, the Court determined each of these three plaintiffs demonstrated sufficient evidence that she or he was

subjected to excessive force in violation of the Fourth Amendment. However, none of these plaintiffs were in positions or circumstances similar to those presented to the Aurora Officers in this case, particularly with respect to their physical proximity to individuals and groups of protesters who were engaged in unlawful conduct or actively resisting lawful orders to disperse.

*Fogarty v. Gallegos* is similarly inapposite. There, the plaintiff was attending an anti-war protest where he marched and played a drum with his hands before hearing "garbled" words on a loudspeaker, which were followed by a volley of gas and plaintiff being hit with a "pepper ball" and another projectile, then more gas which resulted in a "acute bronchospasm." *Fogerty*, 523 F.3d at 1151-52. A group of officers then seized the plaintiff, pushed him to the ground, hyperflexed his wrists while handcuffing him, and then dragged him down the street. At the time plaintiff was seized he had separated himself from the crowd and was kneeling on some steps. *Id.* None of these circumstances are even remotely similar to those presented to the Aurora Officers in this case.

Globally, then, the features in *Buck* and *Fogarty* diverge so significantly from the facts presented to the District Court here, that those cases cannot be used to clearly establish the law. In both *Buck* and *Fogarty* the force was clearly and unequivocally directed at particular individuals, over a prolonged period of time, who had been approached and seized by a group of officers and separated from the

surrounding groups of protestors. More critically, neither *Buck* nor *Fogarty* addressed a situation where officers were being pummeled with rocks, bricks, and mortars by a swelling crowd engaging in threatening behaviors at the time the officers utilized the force at issue. Thus, the circumstances surrounding Plaintiffs Packard and Duran potentially being struck by less-lethal munitions bear almost no resemblance to the circumstances of the plaintiffs in *Buck* and *Fogerty*. Simply put, *Buck* and *Fogarty* fall well short of meeting Plaintiffs' burden to show a controlling case or a robust consensus of cases informing the Aurora Officers that their actions in deploying less-lethal munitions in the context of an effort to control a chaotic crowd were unconstitutional. The Aurora Officers are therefore entitled to qualified immunity.

**B.    The District Court erred in finding there was a constitutional violation by the Aurora Officers.**

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "A Fourth Amendment excessive-force claim is governed by a purely objective standard: 'A police officer violates an arrestee's … Fourth Amendment right to be free from excessive force *during an arrest* if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting [the officer].'" *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) (quoting *Estate of*

*Ceballos*, 919 F.3d, 1204 (10th Cir. 2019)). To prevail on a claim for excessive force under the Fourth Amendment, a plaintiff must show he or she was "seized" by a government actor. The Supreme Court has defined a "seizure" in this context as "a governmental termination of freedom of movement *through means intentionally applied.*" *County of Sacramento v. Lewis,* 523 U.S. 833, 844 (1998) (internal quotation marks omitted) (emphasis in original); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); *see also Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (finding a seizure requires the use of force *with intent to restrain.* Accidental force will not qualify. Nor will force intentionally applied for some other purpose.). Put directly, a seizure under the Fourth Amendment requires intentional conduct, and even intentional conduct applied for some other purpose—such as attempting to deter a different individual or disperse a group of individuals—will not suffice to satisfy the seizure requirement.

First, the record in this case does not provide any evidence that the Aurora Officers engaged in an intentional effort to apply force to Plaintiffs Packard or Duran, and there has therefore been no seizure here. Neither is there record evidence supporting the inference that Aurora Officers were directed to do so by their superiors. Sergeant Serrant only tells his Officers to engage with individuals who are interfering with gas canisters. He does not ever direct anyone to disperse

individuals indiscriminately through the use of less-lethal munitions. As such, the District Court erred in finding that the actions of the Aurora Officers amounted to a constitutional violation in the absence of any seizure or direction to unlawfully use force to seize protesters.

Second, the use of less lethal munitions such as those used here has been recognized as a tool to disperse crowds, and in cases where such tools were used criticism emanated from the fact that the crowds were at times surrounded or encircled and left with no egress, which was not the case here. *See, e.g., Dundon v. Kirchmeier,* 577 F. Supp. 3d 1007, 1039-1040 (D.N.D. 2021). In *Dundon*, the Court concluded no seizure occurred when officers held a line against a moving crowd, as was the case here. *Id.* at 1040. Moreover, the *Dundon* Court focused on the voluntary nature that protestors were free leave and to disengage with law enforcement officers—thus, finding no seizure occurred. *Id*. 1041. The court further found that officers would be entitled to qualified immunity on the question of whether there was a seizure because "a reasonable officer would not have known that using less-lethal munitions in a crowd of hundreds, if not thousands, would constitute a seizure especially since officers did not encircle the crowd." *Id.* at 1042. The foregoing rational applies equally to the herein case.

Put directly, the record contains no evidence that any Aurora Officer intentionally targeted Plaintiff Packard or Plaintiff Duran, nor any evidence that they

were directed do so by Sergeant Serrant. As such, the District Court erred in finding that there was intentional action directed toward the Plaintiffs, and that there was a seizure of these Plaintiffs as a result, sufficient to satisfy the Fourth Amendment.

Moreover, in the context of seizures of individuals, courts have begun to recognize that the well-known *Graham* apply with increasing difficulty on crowd control and mass demonstration scenarios, such as the Aurora Officers faced here. This is particularly so when assessing the second factor considering the threat to officers at the time force is used when that threat can emanate from many different sources and directions simultaneously. *See Bernini v. City of St. Paul*, 665 F.3d 997, 1004 (8th Cir. 2012) (citing *Carr v. District of Columbia*, 587 F.3d 401, 408, 388 U.S. App. D.C. 332 (D.C. Cir. 2009)) ("The D.C. Circuit has addressed the practical dilemma faced by officers responsible for reacting to large group activity, and recognized that a requirement that the officers verify that each and every member of a crowd engaged in a specific riotous act would be practically impossible in any situation involving a large riot."). And indeed, it was a practical impossibility for the Aurora Officers here to assess an individualized threat in the circumstances presented to them. Despite the characterizations that the event was "peaceful," the record evidence clearly contradicts that characterization. A state of emergency was issued.  Hundreds of law enforcement personnel were called from multiple agencies to assist Denver. The scenes were chaotic and the destruction to property was

unparalleled. Windows were broken or boarded up, the sounds of fireworks and rock being thrown at Officers can be heard. Dumpsters were being set on fire. The wave swept across the country, and it was no secret that cities where erupting in fires, there was widespread looting and destruction, and the situation the Officers found themselves in—as well as did the Plaintiffs—was dangerous. [App. Vol. VII at 1714; App. Vol. II at 240, 242, 245, 247, 249, 251, 256, 258-9, 261, 267, 272, 277, 280-81, 283, 285, 288, 290, 292-3, 295, 298, 300, 302, 305-6, 308, 310, 312-13, 315, 317, 319, 325, 327-28, 330, 332, 334 and 339; App. Vol. VII at 1711 (conventionally submitted video Exhibit 21 to Plaintiffs' Response to Motion for Summary Judgment)]. Thus, based on the totality of the circumstances in this specific case as set forth in the record, the Aurora Officers' conduct was objectively reasonable, and the District Court erred in holding that the Aurora Officers violated the constitution by their actions.

Furthermore, with specific respect to the remaining supervisory liability claim against Sergeant Serrant, to find such liability there must be evidence in the record that the supervisor deliberately set in motion a series of events that the supervisor knew or shown have known would lead to *unlawful* action against the plaintiffs. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *see also Holland v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001). In this instance, Sergeant Serrant authorized his team only to use less lethal rounds against those who

were interfering with gas munitions, which even the District Court held a reasonable officer could view as a threat in some circumstances. [App. Vol. VII at 1763]. Such action, even viewed in the light most favorable to the Plaintiffs and without more, does not implicate him in the particular alleged use of excessive force. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (finding may not be based upon "mere negligence" and plaintiff "must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur.") Simply put, there must be evidence that Sergeant Serrant somehow knew or should have known that an *unlawful* use of force would follow from his direction to use less-lethal rounds on protestors who were not only disobeying lawful others to disperse but also who were in the area where protestors were deploying much more aggressive tactics—those that directly impacted officer safety, toward law enforcement. There is no evidence that Segreant Sergeant directed Officers to fire less-lethal rounds in an unlawful manner. In light of the foregoing, the Aurora Defendants are therefore entitled to reversal of the District Court's Order.

**C.     The District Court erred in allowing both the Fourteenth and Fourth Amendment claims to go forward based on excessive force.**

Not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments." *United States v. Lanier*, 520 U.S. 259, 272 (1997). "If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must

be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Id*. (modified). If a claim does not fit neatly within the Fourth or Eighth Amendments, a plaintiff may turn to the Fourteenth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 (1998). However, in circumstances such as those presented here, a claim based on unlawful seizure may only proceed under the Fourth or the Fourteenth Amendment, *not both. See Clark v. Edmunds,* 513 F.3d 1219, 1222 (10th Cir. 2008) (holding when a plaintiff is "not actually seized by the police," the plaintiff's § 1983 claim cannot be based on a Fourth Amendment excessive force theory and instead must be governed by Fourteenth Amendment substantive due process standards); *see also Dundon*, 577 F. Supp. 3d 1007, 1034 (D.N.D. 2021). Here, the District Court has improperly allowed the force claims against the Aurora Officers to proceed under both theories, without determining whether a seizure, in fact, occurred under the law. [App. Vol. VII at 1760]. Moreover, by allowing the force claims to proceed under the Fourteenth Amendment, the District Court has allowed a properly legal decision to move to the jury under the "shocks the conscience" standard. The conscience-shocking standard is difficult to define, *Moore v. Guthrie*, 438 F.3d 1036, 1041 (10th Cir. 2006), but "[c]onduct that shocks the judicial conscience must be egregious and outrageous." *Est. of Carrigan v. Park Cty. Sheriff's Off.*, 381 F. Supp. 3d 1316, 1326 (D. Colo. 2019); *see also Schwartz v. Booker*, 702 F.3d 573, 586 (10th Cir.

2012). Conscience-shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *Dundon*, 577 F. Supp. 3d at 1060 (citing *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012)). "[T]he alleged substantive due process violations must involve conduct "so severe … so disproportionate to the need presented, and … so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Id.* (quoting *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016).

Whether something is "conscious shocking" is a question of law. The District Court did not make any findings as to whether the actions of Aurora Officers would rise to the level of "shocking the conscience." And, for the reasons set forth herein, because the law was not clearly established at the time of the protest that Aurora Officers were in violation of the Fourth Amendment, then the law is equally not clearly established under the Fourteenth Amendment. *See Gonzales v. Passino*, 222 F. Supp. 2d 1277, 1280 (D.N.M. 2002) ("The level of egregiousness needed to establish a violation of substantive due process is much higher than will suffice to prove excessive force during a seizure."). Thus, the District Court erred in in denying qualified immunity to the Aurora Officers under the Fourth and Fourteenth Amendment Claims, and erred in allowing the force claims to proceed under both constitutional theories.

27

**D.    In the absence of an underlying constitutional violation by Aurora Officers the municipal claims against the City also fail**

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible (1) that the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  However, a municipality cannot be held liable under § 1983 for the allegedly unconstitutional actions of its employees if those actions were not in fact unconstitutional. *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001); *see also Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised.").

As demonstrated above, there is no record evidence to support an underlying constitutional violation by any Aurora Officer in the instant case. Thus, because there is no underlying constitutional violation, the claims against the City of Aurora also necessary fail. And this is so even where individual policies of an agency might be unconstitutional. *See Trigalet*, 239 F.3d at 1155-56 ("Thus, even if it could be said that Tulsa's policies, training, and supervision were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional

violation."); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (holding that a plaintiff show direct causal link between municipal action and deprivation of federal rights in order to hold municipality liable under § 1983); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation—*i.e.*, the first step of the qualified immunity analysis—a finding of qualified immunity does preclude the imposition of municipal liability."); *Holdridge v Blank*, 255 F. Supp. 3d 1088, 1098-99 (D. Colo. 2017) (granting city's motion for summary judgment on claims of failure to train and policies or customs resulting in illegal seizure of plaintiff, excessive force, unlawful arrest because there was no constitutional violation after the individual officer was granted summary judgment).

## Conclusion

For the reasons and authority foregoing, Appellants Aurora Defendants seek an Order of this Court reversing the District Court's denial of summary judgment and granting summary judgment to them. The District Court erred in finding that Plaintiffs had carried their heavy burden considering the Aurora Officers' defense of qualified immunity. Furthermore, the District Court erred in allowing both the Fourth and Fourteenth Amendment claims to proceed simultaneously. Finally,

because the District Court erred in finding there was an underlying constitutional violation, the claims against the City of Aurora should also be dismissed.

## Statement Regarding Oral Argument

Because this case involves important questions regarding qualified immunity and occurs in the context of specific factual scenarios of crowd control and mass protests which are evolving and developing causes of action arising in the wake of nationwide civil unrest, Defendants-Appellants believe oral argument is necessary and will assist the panel.

Dated this 6th day of January, 2023.

s/ Michael T. Lowe
Michael T. Lowe
David M. Goddard
Heidi J. Hugdahl
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
Telephone: (303) 831-1099
E-mail: mlowe@brunolawyers.com;
dgoddard@brunolawyers.com;
hhugdahl@brunolawyers.com
*Attorneys for Defendant-Appellants*
*McNamee, Serrant and Brukbacker*

s/ Isabelle S. Evans
Isabelle S. Evans
Peter R. Morales
Office of the City Attorney
Aurora Municipal Center, Suite 5300
15151 East Alameda Parkway
Aurora, CO  80012
Telephone: (303) 739-7030
E-mail: pmorales@auroragov.org
ievans@auroragov.org
*Attorneys for Defendants-Appellants*
*City of Aurora*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this **DEFENDANTS-APPELLANTS'
OPENING BRIEF** was electronically filed via CM/ECF on this 6th day of January,
2023, with service to all counsel of record.


*s/ Julie Bozeman*
Julie Bozeman, Paralegal
Bruno, Colin & Lowe, P.C.

**10th CIR. FORM 4. DISCLOSURE STATEMENT**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

**Fed. R. Civ. P. 26.1 and Tenth Circuit Rule 26.1 Disclosure Statement**

| | |
|---|---|
| Elisabeth Epps, et al.<br><br>v.<br><br>City and County of Denver, et al. | Case No. 22-1365 |

Pursuant to Federal Rule of Appellate Procedure 26.1(a), (b), and/or (c), the undersigned, on behalf of <u>Appellants/Defendants Cory Budaj, Patricio Serrant, and David McNamee, in their individual capacities</u>

[Party or Parties] in the subject case(s).

certifies[3] as follows:

☐ The following parent corporation(s); publicly held corporation(s); organizational victim(s); and/or debtor(s) are disclosed as required by Fed. R. App. P. 26.1 (attach additional pages if necessary):

☒ There is no information to disclose pursuant to Fed. R. App. P. 26.1.

<u>January 6, 2023</u>
Date

<u>*s/ Michael T. Lowe*</u>

---

[3] Pursuant to Federal Rule of Appellate Procedure 26.1(d)(3), this disclosure statement must be promptly updated whenever any of the information required under Fed. R. App. P. 26.1 changes.

## CERTIFICATE OF SERVICE

I hereby certify that:

☒All other parties to this litigation are either: (1) represented by attorneys; or (2) have consented to electronic service in this case; or

☐ On _____ I sent a copy of this Entry of Appearance, [date] Certificate of Interested Parties, and Disclosure Statement to:

*s/ Michael T. Lowe*_____

Michael T. Lowe
Attorney for Defendants-Appellees
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
Telephone: (303) 831-1099

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made 10th Cir. R. 25.5;

(2)      if required to file additional hard copies, that the ECF submission is an
exact copy of those documents; and

(3)     The digital submissions have been scanned for viruses with the most recent
version of a commercial virus scanning program, Webroot SecureAnywhere
Antivirus updated daily and according to the program are free of viruses.


Dated this 6th day of January, 2023.


*s/ Michael T. Lowe*
Michael T. Lowe
Attorney for Defendants-Appellees
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
Telephone: (303) 831-1099
E-mail: mlowe@brunolawyers.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,308 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.

2.      This brief complies with the type face requirements of Fed. R. App. P.  and Local Rule 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman.

Dated this 6th day of January, 2023.

*s/ Michael T. Lowe*
Michael T. Lowe
Attorney for Defendants-Appellees
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
Telephone: (303) 831-1099
E-mail: mlowe@brunolawyers.com

## CERTIFICATE OF EXACT COPIES

I hereby certify that pursuant to Fed. R. App. P. 25(e) and Section VII.D of the Practitioner's Guide to the United State Court of Appeals for the Tenth Circuit, Eleventh Edition – January 2021 (Tenth Circuit Rules effective Jan. 1, 2021), within five (5) business days of notice that the electronically filed brief is compliant, I will cause seven (7) paper copies of the foregoing to be delivered to the Clerk of Court via hand delivery. I further certify that the seven (7) paper copies will be exact copies of the electronically submitted version.


Dated: January 6, 2023                 *s/ Julie Bozeman*
                                       Julie Bozeman, Paralegal
                                       Bruno, Colin & Lowe, P.C.

# ADDENDA PURSUANT 10TH CIR. R. 28.2(A)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01878-RBJ

ELISABETH EPPS,
ASHLEE WEDGEWORTH,
AMANDA BLASINGAME,
MAYA ROTHLEIN,
ZACH PACKARD,
HOLLIS LYMAN,
CIDNEY FISK,
STANFORD SMITH,
SARA FITOURI,
JACQUELYN PARKINS,
KELSEY TAYLOR,
YOUSSEF AMGHAR,
JOE DERAS,
JOHNATHEN DURAN,
MICHAEL ACKER and
CLAIRE SANNIER,

   Plaintiffs,

v.

CITY AND COUNTY OF DENVER,
DANIEL FELKINS,
DAVID ABEYTA,
CITY OF AURORA,
CORY BUDAJ,
BOARD OF COUNTY COMMISIONERS FOR JEFFERSON COUNTY, COLORADO,
JONATHAN CHRISTIAN,
KEITH VALENTINE,
DAVID MCNAMEE,
PATRICIO SERRANT,
MATTHEW BRUKBACHER,
ANTHONY TAK,
J. LNU,
PAUL PAZEN,
JOHN AND JANE DOES 1-100, and
JOHN AND JANE BOES 1-50,

   Defendants.

## ORDER ON THE AURORA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Aurora defendants' motion for summary judgment (ECF No. 259). For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The parties dispute many facts, but in this section, I will note the facts on which they agree. This case arises from the protests that occurred in Denver between May 28 and June 2, 2020 following the murder of George Floyd. The protests were large, and Mayor Hancock announced a state of emergency and imposed a curfew on May 30, 2020. Denver requested help from police departments in other cities ("mutual aid departments"). The Aurora Police Department ("APD") was one of the mutual aid departments brought in to assist Denver with crowd control and civil unrest on May 30 and 31, 2020. Specifically, APD's Emergency Response Team ("ERT") was brought in to help.

On May 31, 2020 plaintiff Zachary Packard was protesting near Washington and Colfax around 9:00 p.m. ECF No. 383-10 at 261–62. An unknown officer threw a tear gas canister near Mr. Packard. Mr. Packard kicked that canister away from himself and other protesters, in the direction of a line of officers. *Id.* at 265. Mr. Packard was immediately hit with a beanbag round fired from a shotgun.[1] The round knocked him unconscious and caused significant injuries. *Id.*[2]

---

[1] A beanbag round is a sack containing lead shot.

[2] In an earlier trial Mr. Packard sought compensation for his damages against the City and County of Denver on the theory that that Denver is liable for the actions of the APD as a mutual aid department. The jury awarded $3 million. This Court has since entered judgment for those damages. The $3 million compensatory award would appear to be a cap on Mr. Packard's claim for damages against the individual Aurora officers.

Just before Mr. Packard was shot, APD Sergeant Serrant instructed officers on that line, "[i]f they start kicking that shit, go ahead and frickin' hit 'em." ECF No. 383-15 at 21:12:26–21:12:30. Officer McNamee was in the line of officers near Mr. Packard. ECF No. 383-17 at 21:09:00–21:13:00. He fired several beanbag rounds around the time that Mr. Packard was shot. *Id*. The parties dispute whether Officer McNamee is the officer that shot Mr. Packard. Sergeant Brukbacher was also on the line with Officer McNamee and Sergeant Serrant. Shortly after Mr. Packard was shot, Sergeant Brukbacher instructed officers in that line that if protesters "touch any of our gas, they get hit." ECF No. 383-19 at 21:19:29–21:19:34.

On May 31, 2020 Officer Budaj responded in Denver with the ERT. Around 9:30 p.m., Officer Budaj was at the intersection of Colfax and Pearl and was assisting other APD officers in moving protesters west on Colfax. Ex. 27 at 21:34:23–21:34:36. Officer Budaj was armed with less lethal weaponry. *Id*. During his May 31 deployment, Officer Budaj fired about fifteen foam baton rounds. ECF No. 259 at 3. Around 9:34 p.m., plaintiff Johnathen Duran was struck in the groin by a foam round. Ex. 21 at 21:08–21:25. The parties dispute whether Officer Budaj is the officer that shot Mr. Duran.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is material if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The movant bears the burden of showing a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment; nor may the nonmovant rely on 'mere reargument of his case or a denial of an opponent's allegation.'" *Stuart v. Erickson Living Mgmt.*, No. 18-CV-01083-PAB-NYW, 2019 WL 7289016 at *2 (D. Colo. July 29, 2019) (quoting 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998)).

## III.   INDIVIDUAL DEFENDANTS

### A. <u>Personal Participation of the Named Individual Defendants</u>

To succeed on a § 1983 claim, a plaintiff must show that each government official defendant, through the official's own individual actions, has violated the Constitution. *See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The individual defendants argue that they are entitled to summary judgment because plaintiffs have not presented evidence that they were personally involved in the incidents complained of. Plaintiffs respond with evidence indicating that each individual defendant was involved in the incidents.

#### 1.   <u>Officer McNamee</u>

There is a genuine dispute of material fact concerning whether Officer McNamee was the officer that injured Mr. Packard. There is evidence that Officer McNamee was standing in the line of officers opposite Mr. Packard when he was shot. ECF No. 383-17 at 21:09:00–21:13:00. There is evidence that Officer McNamee fired three beanbag rounds two to three seconds after a

siren stopped.  *Id.* at 21:12:00–13.  There is evidence that Mr. Packard was hit with a beanbag round between two and three seconds after what appears to be the same siren stopped.  ECF No. 383-13.  Plaintiffs point to additional evidence that Officer McNamee was the officer that shot Mr. Packard, but more is not needed to survive a motion for summary judgment.  Plaintiffs have raised a genuine dispute of material fact that Officer McNamee was personally involved in the alleged violation of Mr. Packard's rights.

   2.   <u>Sergeant Serrant</u>

   Plaintiffs have raised a genuine dispute of material fact on whether Sergeant Serrant was personally involved in the alleged violation of Mr. Packard's rights.  On Officer McNamee's body-worn camera (BWC), Sergeant Serrant can be heard to say, "[i]f they start kicking that shit, go ahead and frickin' hit 'em."  ECF No. 383-15 at 21:12:26–21:12:30.  Sergeant Serrant, as a sergeant, gave orders that inferior officers were supposed to obey.  His order that officers shoot at protesters who kicked gas canisters is sufficient evidence to survive summary judgment on this issue.

   3.   <u>Sergeant Brukbacher</u>

   There is not a genuine dispute of material fact remaining on whether Sergeant Brukbacher was involved in the shooting of Mr. Packard for purposes of § 1983 liability. Plaintiffs point to evidence that Sergeant Brukbacher told officers the day before Mr. Packard was shot (May 30, 2020) that officers should deploy less-lethal munitions against protesters who were touching gas canisters, and that he repeated that order in the minutes following the shooting of Mr. Packard.  *See* ECF Nos. 383-18 at 3, 383-19 at 21:19:29–21:19:34.  However, plaintiffs do not identify any evidence that shows that Sergeant Brukbacher's May 30 instruction caused Officer McNamee or any other officer to shoot Mr. Packard, especially because Sergeant

Serrant's instruction on the subject occurred directly before Mr. Packard was shot.  They do not provide evidence that any officer on the scene when Mr. Packard was shot was present when Sergeant Brukbacher gave the May 30 instruction.  Nor do plaintiffs identify evidence that Sergeant Brukbacher's instructions *after* Mr. Packard was shot to shoot protesters who were touching gas canisters caused Mr. Packard's rights to be violated.

    4.    <u>Officer Budaj</u>

     Plaintiffs have raised a genuine dispute of material fact on the issue of whether Officer Budaj was involved in the alleged violation of Mr. Duran's rights.  There is evidence that Mr. Duran was hit in the groin thirteen seconds after the light at Colfax and Pearl turned green.  ECF No. 383-21 at 21:08–21:25 min.  There is evidence that the officer on the left side of the Aurora truck exiting the alley near Colfax and Pearl was the officer that shot Mr. Duran because that officer had his weapon raised at the time of the shooting and appears to shoot.  *See* ECF No. 383-27 at 21:34:36.  There is also evidence that the officer on the left side of that truck was Officer Budaj—part of the word police was covered on his back, and he had gray tape (which Officer Budaj had) on his helmet.  *See id.*; ECF Nos. 383-30 at 21:40:51–21:48:19, 383-22 at 59, 99–101, 383-27 at 21:34:36.  This is sufficient evidence to raise a genuine dispute of material fact that Officer Budaj was the officer who hit Mr. Duran at Colfax and Pearl.

    **B.  <u>Plaintiffs' First Amendment Claims</u>**

    "It has long been clearly established that the First Amendment bars retaliation for protected speech and association."  *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005).  A First Amendment retaliation claim requires a Plaintiff to show: (1) that he was engaged in constitutionally protected activity; (2) that defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

activity; and (3) that the adverse action taken by defendant was substantially motivated as a response to the exercise of the constitutionally protected conduct. *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1148 (10th Cir. 2020).

  1. <u>Mr. Packard's First Amendment Claims</u>

  Defendants argue that they are entitled to summary judgment on Mr. Packard's First Amendment claims because he cannot prove the first and third elements of a First Amendment retaliation claim. *See* ECF No. 259 at 8. I agree.

  On the first element, they argue that it is not established that kicking a gas canister during a protest is protected First Amendment activity. *Id.* On the third element, they argue that there is not a genuine dispute of material fact that the actions taken by Officer McNamee or Sergeant Serrant were motivated by his exercise of his First Amendment rights. Mr. Packard responds that he was engaged in clearly protected First Amendment activity: protest. ECF No. 383 at 9. On the third element, he responds that motive is a fact question and that the jury could conclude that the defendants were substantially motivated by Mr. Packard's exercise of his constitutionally protected First Amendment rights.

  While I concur with Mr. Packard that protesting is clearly protected First Amendment activity, not all forms of protest are protected. For instance, if a person chose to protest the actions of the police by attempting to assassinate the Chief of Police, that would not be a protected form of protest. Whether Mr. Packard's kicking the gas canister was part of his protected speech or a separate, unprotected action, is the crux of the issue.

  There is a question as to whether the kicking of the canister was speech—whether the action was "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974). In

deciding whether particular conduct possesses sufficient communicative elements to warrant First Amendment protections, courts have asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410–11.

I find that Mr. Packard's kicking of the gas canister was not speech and not protected by the First Amendment.  Mr. Packard testified at trial that his intent was not to convey a particularized message but rather to get the canister away from his fellow protesters.  ECF No. 387 at 195, 224.  Mr. Packard did not intend, with that kick, to convey a particularized message—he intended to get the harmful gas away from himself and others.[3]

I also fine that here is no genuine dispute of material fact on the third element—whoever shot Mr. Packard did so because he kicked the canister, not because he was protesting.  Immediately before Mr. Packard was hit, Sergeant Serrant can be heard telling officers to shoot at people who are kicking canisters, not at people who are speaking or protesting.  ECF No. 383-15 at 21:12:26–21:12:30.  Plaintiffs do not present any evidence that it was the protesting rather than the kicking that caused Mr. Packard to be shot.

    2.    <u>Mr. Duran's First Amendment Claims</u>

Defendants argue that they are entitled to summary judgment on Mr. Duran's First Amendment claims because he cannot prove the first and third elements of a First Amendment retaliation claim.  *See* ECF No. 259 at 8.  On the first element, they argue it is not established that recording the police is protected First Amendment activity.  *Id*.  On the third element, they

---

[3] The jury in the Denver trial found that Denver was liable for violating Mr. Packard's First Amendment rights.  However, Mr. Packard was engaged in protesting and was subject to gas and pepper ball shootings at various other points.  The Court concludes that the specific act of kicking the can, which is the action triggering claims against the individual defendants, was not speech and was not protected by the First Amendment.

argue that there is not a genuine dispute of material fact that the actions taken by Officer Budaj was motivated to shoot by Mr. Duran's First Amendment conduct.  Mr. Duran responds that he was engaged in clearly protected First Amendment activity, and that there remains a genuine dispute of material fact on whether Officer Budaj was motivated by Mr. Duran's exercise of his First Amendment rights.

On the first element, defendants argue that "it is entirely unclear whether there is even a [First] Amendment right to record police activity in the [Tenth] Circuit."  ECF No. 259 at 8 (citing *Frasier v. Evans*, 992 F.3d 1003, 1019-23 & n.4 (10th Cir. 2021) (where the Tenth Circuit declined to decide whether such a right exists and analyzing and distinguishing out-of-circuit authority holding that such a right exists)).  However, Mr. Duran was doing more than just recording police actions—he was a credentialed reporter, reporting on an important, historic protest in Denver.  *See* ECF No. 91-6 at ¶¶1–3.  The Tenth Circuit has held that "'the First Amendment provides at least some degree of protection for gathering news and information, particularly news and information about the affairs of government.'"  *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1197 (10th Cir. 2017) (quoting *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012)).

On the third element, however, defendants argue there is no evidence that Officer Budaj was motivated to shoot because of Mr. Duran's First Amendment activity.  They argue "there is no evidence that Officer Budaj saw, or could see, a hardhat with the word 'media,' at night, through smoke, more than a city block away, while Duran was moving and positioned behind protesters engaged in unlawful activity."  ECF No. 403 at 9–10.

There is no direct evidence that Officer Budaj saw the writing on Mr. Duran's hardhat or that he was motivated by it to shoot him.  Nor do I find that there is circumstantial evidence

sufficient to support that conclusion.  Officer Budaj said that he could have accurately targeted

Mr. Duran from where he was positioned.  ECF No. 383-22 at 82.  The words on Mr. Duran's

helmet appear to be more than four inches tall.  ECF No. 91-6 at 6.  Mr. Duran appeared to be

roughly two hundred feet from the Aurora truck when he was struck, but the intersection was

well lit.  ECF No. 383-21 at 21:08–21:25.  A reasonable juror could infer that Officer Budaj

could perceive that Mr. Duran was a member of the media.  *See* ECF No. 27 at 21:34:36.

However, I do not find that a reasonable juror could infer that Officer Budaj shot him because of

that knowledge.  Without more, that is sheer speculation.  Summary judgment is warranted on

Mr. Duran's First Amendment claim.

### C.  Plaintiffs' Failure to Intervene Claim

Defendants argue that summary judgment is warranted on plaintiffs' claim for failure to

intervene because plaintiffs have not identified any individual defendants who failed to

intervene.  ECF No. 259 at 9.  "To establish a constitutional violation under a 'failure to

intervene' theory, [a plaintiff] must show: (i) the defendant officer was present at the scene; (ii)

the defendant officer witnessed another officer applying force; (iii) the application of force was

such that any reasonable officer would recognize that the force being used was excessive under

the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to

prevent the further application of excessive force, but failed to do so."  *Erickson v. City of*

*Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1200 (D. Colo. 2020) (quoting *Martinez v. City &*

*Cnty. of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25,

2013).

Here, Plaintiffs have failed to identify which individual Aurora officers they believe are

liable for failure to intervene.  *See* ECF No. 153 at 81–82.  They have likewise failed to identify

any of the other elements required to establish a claim for failure to intervene.  *Id*.  They did not respond to defendants' motion for summary judgment on Count IV.  *See* ECF No. 383. Defendants are entitled to summary judgment on the claim for failure to intervene.

### D.  Plaintiffs' Excessive Force and Supervisory Liability Claims

#### 1.  Fourteenth Amendment Issue

The individual defendants argue that plaintiffs' Fourteenth Amendment claims must be dismissed because the Fourth Amendment is the basis for plaintiffs' claims.  ECF No. 259 at 10. This issue came up before the Denver trial.  The solution in that instance was that Denver admitted that the uses of force could constitute seizures and, as a result, plaintiffs agreed to dismiss their Fourteenth Amendment claims.  I do not know if a similar meeting of the minds can be attained for the Aurora trial.

However, as to defendants' claim that plaintiffs *cannot* recover under the Fourteenth Amendment for the conduct of Aurora officers, I disagree.  Plaintiffs can raise a substantive due process claim for the complained of conduct, as long as that conduct "shocks the conscience." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006).  It is a difficult standard to prove because "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995)).  While plaintiffs' Fourth Amendment claims are substantially stronger than their substantive due process claims, I cannot say that they are not entitled to bring them.  Defendants are not entitled to summary judgment on the substantive due process claims.

#### 2.  Fourth Amendment Excessive Force Claim

Defendants argue that the Fourth Amendment excessive force claims must be dismissed because there is no evidence that either Officer McNamee or Officer Budaj intentionally used force against plaintiffs Packard and Duran in an excessive manner.  *Id*. at 10–11.  Plaintiffs

respond that there is evidence that the actions of Officer McNamee and Budaj were intentional and that legally, defendants misunderstand what "intentionally" means in these claims.  ECF No. 383 at 11.

Before getting into any factual dispute on whether Officer McNamee or Officer Budaj unintentionally hit Mr. Packard or Mr. Duran, I agree with plaintiffs' legal understanding of the intentionality requirement.  The "intentional application of physical force means that the force is purposefully applied," which "contrasts with an accidental or negligent, use of force.  *See Torres v. Madrid*, 141 S. Ct. 989, 991 (2021).  Denver does not contend that either officer shot by accident, only that plaintiffs cannot prove that the officers hit Messer's. Packard and Duran intentionally.

In any case, there is sufficient evidence to raise a genuine dispute of material fact on the question of whether Officer McNamee and Officer Budaj intended to use force against the plaintiffs.  Though defendants insist that there is no proof of such an intent for either officer, the fact is that there is evidence (that I have outlined in the sections above) that these officers fired munitions in the direction of Messrs. Packard and Duran and evidence that Messrs. Packard and Duran were hit with these munitions.  A reasonable juror could (but certainly does not have to) infer from these facts that Officer McNamee shot Mr. Packard intentionally, and Officer Budaj shot Mr. Duran intentionally.  Defendants are not entitled to summary judgment on the excessive force claims.

3.      Supervisory Liability

Defendants argue that they are entitled to summary judgment on the issue of supervisory liability because "there is no evidence to support the notion that either of them directed the use of *unconstitutional* force, either generally or specifically, toward any Plaintiff."  ECF No. 259 at 11

(emphasis in original).  Plaintiffs respond that "[b]oth sergeants instructed officers to use potentially lethal force without regard for the factors relevant to whether an officer's use of force is justified."  ECF No. 383 at 11–12.  As I granted summary judgment in favor of Sergeant Brukbacher above, I consider this claim only as to Sergeant Serrant.

A supervisor may be liable for the unconstitutional acts of his subordinates if he "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."  *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir.1990).  Here, there is evidence that Sergeant Serrant instructed officers, including Officer McNamee, "[i]f they start kicking that shit, go ahead and frickin' hit 'em."  ECF No. 383-15 at 21:12:26–21:12:30.  He instructed officers to use substantial force against protesters without regard to whether those protesters were committing a severe crime, posed an immediate threat to officers or others, or were actively evading arrest, the factors that officers must consider in determining whether force is warranted.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  Sergeant Serrant knew or should have known that instructing his officers to fire without regard to the *Graham* factors, and instead based only on whether a protester kicked a gas canister, would violate protesters' right to be free from excessive force.  Not every kick of a gas canister will pose an immediate threat to officers or others, be a severe crime, or evince the resisting of arrest.  Summary judgment against Sergeant Serrant is not appropriate.

### E.  Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity will apply unless the plaintiff shows

that (1) defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time it was allegedly violated.  *Id.* at 232.

The law is clearly established that an officer cannot shoot a protester with pepper balls or other less-lethal munitions when that protester is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee.  *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008).  In *Fogarty v. Gallegos*, 523 F.3d 1147, 1159–62 (10th Cir. 2008), the Tenth Circuit expanded on this proposition.  It held that an officer is not entitled to qualified immunity for "shooting [a protester] with a pepper ball or some other type of projectile" when he did not "pose[] an immediate threat to the safety of the officers or others," the protester had committed only "a petty misdemeanor," and the "police may have contributed to the need to use force."  *Id*.

4.     Qualified Immunity for the Force Used Against Mr. Packard

I agree with plaintiffs that the individual defendants are not entitled to qualified immunity for the force used against Mr. Packard.  No reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers.  The evidence shows that Mr. Packard, just before he was shot, kicked a gas canister between five and ten feet away from the protesters and roughly in the direction of the officers.  ECF No. 383-10 at 15.  However, that action did not pose an immediate threat—officers were equipped with gas masks that protected them from any gas from that canister.  *See* ECF No. 383-13.

There is another reason that a reasonable officer would not have regarded Mr. Packard's kicking of the gas canister as an imminent threat.  Mr. Packard's kicking the gas canister between five and ten feet is not analogous to protesters who were throwing rocks, bottles, or other objects at officers.  A thrown object might reasonably be considered a threat by an officer.

However, a kicked object is, as a matter of common sense and physics, much less likely to be a threat to officers. A kicked item will be significantly slowed by friction as it moves along the ground—a thrown item maintains speed better, which accounts for officers' perceiving thrown rocks or bottles as a threat.

I can understand why officers did not like protesters kicking gas canisters away from the protesters. Officers were attempting to use gas to manage the crowds, and that gas might be less effective if kicked away from the crowds. However, there is no evidence that the kicking of gas canisters generally, or the specific instance of Mr. Packard's kicking a gas cannister, posed an imminent threat to officers or anyone else. Just because officers did not like the kicking of cannisters does not mean that it was an imminent threat. The individual defendants are not entitled to qualified immunity as to Mr. Packard.

5.      Qualified Immunity for the Force Used Against Mr. Duran

The evidence submitted shows that when Mr. Duran was shot with a 40mm round, he was in a crowd of protesters, but that he did not pose a threat to the safety of anyone, police or otherwise. When he was shot, he was apparently standing near the intersection of Colfax and Pearl Street, speaking with an acquaintance, and filming the protest. ECF No. 91-6 at 7. Any officer should have known that shooting a less-lethal weapon at him in those circumstances was not a reasonable use of force—it is well established that such a use of force is violative of a protester's constitutional rights. *See Fogarty*, 523 F.3d at 1159–62. Officer Budaj is not entitled to qualified immunity for the use of force against Mr. Duran.

## IV.    CITY OF AURORA

Aurora argues that it is entitled to summary judgment for two reasons. The first, is that no individual officers are liable for any constitutional violations, so it cannot be as a

municipality.  ECF No. 259 at 13.  As I have determined that some claims against individual officers may proceed to trial, that argument cannot succeed.  The second is that plaintiffs have failed to raise a genuine dispute of material fact on the question of whether a policy or custom of Aurora caused plaintiffs' injuries.  *Id.*  Plaintiffs respond that the Colorado Attorney General's office found that Aurora has a practice of using excessive force, that even if there is no policy or practice of using excessive force, Aurora ratified the excessive force used by its officers during the George Floyd protests, and that the policy or ratification is so closely related to the violations that injured plaintiffs that a jury could find that the policy or ratification caused the violations.

"Municipal entities can be held liable for constitutional violations that are committed by their employees if a plaintiff can demonstrate that such deprivations were caused by a municipal custom or policy and that the custom or policy was adopted or maintained by the municipality with a sufficiently culpable state of mind (i.e., with reckless disregard of the potential that it might cause a constitutional deprivation)."  *Moses-El v. City & Cnty. of Denver*, 376 F. Supp. 3d 1160, 1176 (D. Colo. 2019) (citing *Harte v. Board of Commissioners*, 864 F.3d 1154, 1195 (10th Cir. 2017)).  A policy or custom can be established in numerous ways, including by informal custom that amounts to a widespread practice, decisions of final policymakers, ratification, or a failure to adequately train employees with deliberate indifference to the attendant effects.  *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020).

## A. <u>Ratification</u>

I agree with Aurora that plaintiffs have not presented sufficient evidence to raise a genuine dispute of material fact on their *Monell* claims on a theory of ratification.  On the ratification issue, plaintiffs do not respond to Aurora's argument that summary judgment is warranted because they cannot show that Aurora ratified the allegedly unconstitutional actions of

Aurora officers.  As they have not presented evidence of ratification, they cannot proceed on a

ratification theory.

   **B.  <u>Policy, Practice, or Custom and Failure to Train</u>**

   However, on the theories of policy, custom, or practice and failure to train, plaintiffs have

raised a genuine dispute of material fact.

   1.     <u>Policy, Practice, or Custom</u>

   Plaintiffs point to policies on use-of-force, use of less lethal weapons, use of body worn

camera ("BWC"), and use-of-force reports as causing their injuries.  The directive on less lethal

weapons states that "[u]se of less lethal weapons is justified in those proper and lawful situations

requiring a degree of force greater than that provided with weaponless control techniques."  ECF

No. 383-8 at 1.  It states, "justification for the use of less lethal force must be in compliance with

Colorado Revised Statutes as well as appropriate components within directives."  *Id*. at 2.

Specifically, as to impact munitions, the directive advises, "when using less lethal impact

weapons, members should avoid targeting the head, neck, throat, heart, kidneys, spine, groin, and

knee joint."  *Id*. at 3.

   Plaintiffs' expert, Norman Stamper, asserts that this policy sanctioned the uses of less

lethal force against Messrs. Packard and Duran.  ECF No. 383-5 at 2–3.  The Colorado Attorney

General's report on the APD and the report commissioned by the APD from 21CP Solutions

indicate that Aurora's use-of-force and less lethal force policies are too vague to allow officers to

understand when force can legally be used and that the result is many instances of excessive

force from APD officers.  *See* ECF Nos. 383-40 at 68, 383-41 at 34.  Mr. Stamper attests that

requiring officers to complete accurate and timely use of force reports is important for officer

accountability.  ECF No. 383-5 at 9.  There is evidence that APD policy did not require use of

force reports, because an APD Lieutenant sent an email on July 2, 2020 instructing officers to write a report for past uses of force during their mutual aid to Denver. *Id.* There is also evidence that it was policy not to require activation of BWCs during uses of force—the APD training on BWC focused entirely on how to use BWCs, not when they must be used. *See* ECF No. 383-37 at 5–6.

A reasonable juror could conclude that these policies, collectively, caused the injuries to plaintiffs. The vagueness in the policy regarding the use of less lethal force could lead to confusion on when such force is warranted. Without consulting unspecified Colorado Statutes and Constitutional law, an officer would not know, from the text of that policy, when such force is warranted. Further, the effect of this vagueness would be compounded by the BWC and use-of-force report policies—reasonable jurors could conclude that officers would know that even if they used force that was outside the vague less lethal force parameters, it would be unlikely that they would suffer any consequences from it. This can be seen in the disputes in this case concerning which officers shot Mr. Packard and Mr. Duran. Had every officer on-scene had his or her BWC activated and written a timely use-of-force report, it presumably would be easier to identify the individual officers involved.

2.   <u>Failure to Train</u>

Summary judgment is also not appropriate on plaintiffs' failure to train theory. The standard for proving a *Monell* failure to train theory is slightly different than for policy, custom, or practice or ratification. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "The deliberate indifference standard may be satisfied when the municipality has actual

or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  It can also, in some limited circumstances, be satisfied "absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Id*. at 308 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997)).

Here, plaintiffs have alleged that Aurora's training on crowd management, use of less lethal weapons, and use-of-force generally is inadequate.  Though they have presented evidence to support each of those failures, I will outline only the evidence on the failure to train on use-of-force, as that alone would be sufficient to preclude summary judgment.  The Colorado Attorney General's report lays out the instances where APD officers, have, in past, used excessive force. *See* ECF No. 383-40 at 77–86.  Though that report was written after the George Floyd protests, a reasonable juror could find that Aurora was already on notice that its training on use-of-force was deficient.  The report references specific instances of excessive force in December 2018, March 2019, August 2019, and March 2020, and noted that Aurora reported paying over $7 million in settlements for claims of excessive force and constitutional violations by APD between 2008 and 2018.  *Id*. at 13–14, 20.  This evidence is sufficient for a reasonable juror to conclude that Aurora had actual and constructive notice that its failure to train on use-of-force was likely to result in constitutional violations.  Summary judgment is inappropriate.

3.    <u>Aurora's Potential Liability in Light of Denver's Established Liability</u>

The Court raised concerns about Aurora's liability after Denver was determined liable at trial for First and Fourth Amendment violations committed by Aurora officers.  In its reply, Aurora shared that concern, arguing that Denver was the proper *Monell* defendant because plaintiffs asserted throughout the Denver trial that *Denver's* policies, practices, and customs caused plaintiffs' injuries.  Plaintiffs respond that "multiple tortfeasors who concurrently cause an indivisible injury are jointly and severally liable; each can be held liable for the entire injury." ECF No. 412 at 2 (quoting *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996)).  As § 1983 claims sound in tort, they argue, there is no reason that Aurora and Denver cannot be jointly liable for their injuries.

I agree with plaintiffs.  This is a situation where both Denver and Aurora could have caused plaintiffs injury.  In the Denver case, plaintiffs who were injured by Aurora officers challenged Denver's policy or practice of permitting mutual aid officers to follow the use-of-force policies from their own jurisdictions and use weapons permitted in their own jurisdictions. Here, plaintiffs are asserting that various Aurora policies caused their injuries.  The argument is that but for Denver's policy of permitting the use of Aurora's policies, plaintiffs would not have been injured.  However, but for Aurora's deficient policies, plaintiffs also would not have been injured.  This is plausible, and the law supports such a stacking theory, as plaintiffs outlined in their surreply.  *See Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 873 (N.D. Ohio 2011) (denying summary judgment to a city and county, holding that each could be liable on a *Monell* claim for ratification); *Johnson v. Bd. of Police Comm'rs*, 370 F. Supp. 2d 892, 901–02 (E.D. Mo. 2005) (writing that "the fact that the Defendants are separate legal entities does not prevent them from acting in concert to deprive constitutional rights pursuant to a joint policy or

custom").  Summary judgment is not warranted on this ground.  However, this does raise issues as to Mr. Packard's award.  *See supra* at 2, n.2.  n. 1.

**ORDER**

1. Defendants' motion for summary judgment (ECF No. 259) is GRANTED for all claims against Sergeant Brukbacher, Mr. Packard's First Amendment claims, Mr. Duran's First Amendment claims, and plaintiffs' failure to intervene claims.

2. The motion is DENIED for all remaining claims.


DATED this 23rd day of September, 2022.


BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge