No. 22-01365

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

ELISABETH EPPS, ET AL.

*Plaintiffs-Appellees,*

v.

CORY BUDAJ, ET AL.

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court
for the District of Colorado
No. 20-cv-1878 (Hon. R. Brooke Jackson)

**BRIEF FOR APPELLEE JOHNATHEN DURAN**

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

**Oral Argument Not Requested**

February 24, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a), Plaintiff-Appellee Johnathen Duran makes the following disclosures:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

s/ Elizabeth Wang
Counsel of Record for Plaintiff-
Appellee Johnathen Duran

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com
*Counsel of Record for Plaintiff-Appellee Johnathen Duran*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES .................................................iv

STATEMENT REGARDING PRIOR OR RELATED APPEALS.............1

INTRODUCTION.....................................................................1

JURISDICTIONAL STATEMENT ........................................3

STATEMENT OF ISSUES.................................................7

STATEMENT OF THE CASE .................................................8

I.     On May 30 and 31, 2020, Plaintiff Duran Witnessed and
       Experienced Unjustified Police Violence Against Protestors and
       Journalists................................................................8

II.    Defendant Budaj Shot Plaintiff Duran in the Groin with a
       40mm Launcher without Justification .........................................11

III.   Defendant City of Aurora's Policies, Practices, Customs, and
       Failure to Train Caused Plaintiffs' Injuries ..................................17

SUMMARY OF ARGUMENT ....................................................19

ARGUMENT .......................................................................21

Standard of Review ..........................................................21

I.     This Court Lacks Jurisdiction to Review Defendant Budaj's
       Fact-Based Challenge to the District Court's Ruling....................23

II.    Defendant Budaj Violated Plaintiff Duran's Fourth
       Amendment Rights .......................................................26

III.   The Law Was Clearly Established in May 2020 that an Officer
       Could Not Shoot an Unarmed, Nonviolent Journalist with a
       Less-Lethal Weapon.......................................................30

IV.    The District Court Did Not Err in Denying Summary Judgment
       to Defendant Budaj on Plaintiff Duran's Fourteenth
       Amendment Claim .......................................................................... 40

V.     There Is No Pendent Jurisdiction to Review the District Court's
       Denial of Summary Judgment to Defendant City of Aurora ........ 42

CONCLUSION ......................................................................................... 45

CERTIFICATE PURSUANT TO CIRCUIT RULE 31.3 ........................ 47

CERTIFICATE OF COMPLIANCE UNDER FRAP 32(G) ................... 48

CERTIFICATE OF DIGITAL SUBMISSION ........................................ 49

CERTIFICATE OF SERVICE ................................................................. 50

# TABLE OF AUTHORITIES

## Cases

*Alsaada v. City of Columbus*, 536 F. Supp. 3d 216 (S.D. Ohio 2021)..... 29

*Arnold v. Curtis*, 359 F. App'x 43 (10th Cir. 2009) .................................. 30

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ................................................ 6

*Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012) ...................... 38

*Brown v. City of Colorado Springs*, 709 F. App'x 906
(10th Cir. 2017) ........................................................................................ 45

*Bryson v. Gonzales*, 534 F.3d 1282 (10th Cir. 2008) .............................. 43

*Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008) ....... *passim*

*Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009) ................. 38

*Castillo v. Day*, 790 F.3d 1013 (10th Cir. 2015) .................................... 24

*Cavanaugh v. Woods Cross City*, 718 F.3d 1244 (10th Cir. 2013) ......... 40

*Cox v. Glanz*, 800 F.3d 1231 (10th Cir. 2015) ....................................... 42

*DeWitt v. Western Pac. R.R. Co.*, 719 F.2d 1448 (9th Cir. 1983)............. 4

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ............................. 5

*Dundon v. Kirchmeier*, 577 F. Supp. 3d 1007 (D.N.D. 2021) ........... 38, 39

*Fancher v. Barrientos*, 723 F.3d 1191 (10th Cir. 2013)......................... 41

*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008)...................... *passim*

*Graham v. Connor*, 490 U.S. 386 (1989) .......................................... 26, 27

*Gutierrez v. Kermon*, 722 F.3d 1003 (7th Cir. 2013)................................5

*Henderson v. Glanz*, 813 F.3d 938 (10th Cir. 2015) ...........................5, 30

*Hope v. Pelzer*, 536 U.S. 730 (2002)..................................................31, 42

*Huff v. Reeves*, 996 F.3d 1082 (10th Cir. 2021).....................................29

*Jackson v. City of Cleveland, et al.*, 920 F.3d 340 (6th Cir. 2019).........32

*Johnson v. Jones*, 515 U.S. 304 (1995)........................................... *passim*

*Johnson v. City of San Jose*, 591 F. Supp. 3d 649 (N.D. Cal. 2022).......29

*Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011) .........................................25

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018).........................................32, 42

*Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010)......................................22

*Lowery v. Cnty. of Riley*, 522 F.3d 1086 (10th Cir. 2008) ......................25

*Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232 (10th Cir. 2022) .... 40, 41

*Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306
(10th Cir. 1999) .......................................................................................44

*Malley v. Briggs*, 475 U.S. 335 (1986)....................................................31

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) ...................................................................................7

*Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995)...................44

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012)............................28

*Novitsky v. City of Aurora*, 491 F.3d 1244 (10th Cir. 2007) .................36

*Ortiz v. Jordan*, 562 U.S. 180 (2011)..........................................................3

*Pauly v. White*, 874 F.3d 1197 (10th Cir. 2017) .....................................30

*Pierson v. Ray*, 386 U.S. 547, 555 (1967)...............................................32

*Porro v. Barnes*, 624 F.3d 1322 (10th Cir. 2010) ...................................41

*Ralston v. Cannon*, 884 F.3d 1060 (10th Cir. 2018) ..........................5, 31

*Reavis Estate of Coale v. Frost*, 967 F.3d 978 (10th Cir. 2020) ............42

*Roosevelt-Hennix v. Prickett*, 717 F.3d 751 (10th Cir. 2013) ..................3

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) ..........40

*Sawyers v. Norton*, 962 F.3d 1270 (10th Cir. 2020) ...........................4, 21

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990)....................................6

*Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2015) (en banc) ...................25

*Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995).......................42, 43

*Taylor v. Riojas*, 141 S. Ct. 52 (2020).....................................................31

*Torres v. Madrid*, 141 S. Ct. 989 (2021).....................................27, 28, 29

*Torres v. Madrid*, __ F. 4th __, 2023 WL 2053910
(10th Cir. 2023) .........................................................................................29

*United States v. Lanier*, 520 U.S. 259 (1997).........................................31

*United States v. Walker*, 918 F.3d 1134 (10th Cir. 2019) ......................41

*Valdez v. Motyka*, 804 F. App'x 991 (10th Cir. 2020)......................25, 45

*Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154
(10th Cir. 2021) ................................................................................. 21, 22

*White v. Pauly*, 580 U.S. 73 (2017) ........................................................ 31

*Wyatt v. Cole*, 504 U.S. 158 (1992) ........................................................ 32

*Zadeh v. Robinson*, 928 F.3d 457 (5th Cir. 2019) .................................. 32

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ............................................... 32

## Statutes

28 U.S.C. § 1291 ................................................................................. 3, 42

28 U.S.C. § 1331 ..................................................................................... 3

## Other Authorities

William Baude, *Is Qualified Immunity Unlawful?*,
106 Cal. L. Rev. 45 (2018) ..................................................................... 32

Joanna C. Schwartz, *The Case Against Qualified Immunity*,
93 Notre Dame L. Rev. 1797 (2018) ....................................................... 32

## STATEMENT REGARDING PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## INTRODUCTION

In May and June 2020, historic protests took place in Denver in the aftermath of the police killing of George Floyd. Although the protests were overwhelmingly peaceful, the Denver Police Department ("DPD") and officers from other agencies in DPD's mutual-aid network (including the Aurora Police Department), used violent crowd control tactics on the protestors. Over the course of several days, police used excessively forceful methods to control and corral the protestors, including launching tear gas and flashbang grenades into crowds and shooting police projectiles at peaceful protestors, without warning. The police use of force injured many protestors, journalists, and bystanders.

On May 30 and 31, 2020, Plaintiff-Appellee Johnathen Duran covered the protests as a journalist. On May 31, he was shot in the groin by an Aurora police officer, Defendant-Appellant Cory Budaj, who was wielding a 40mm launcher. At summary judgment, Duran provided extensive evidence that Budaj was the officer who shot him, and that Budaj shot him intentionally as part of a crowd control tactic to encircle

and arrest protestors (a tactic known as "kettling"). After considering the extensive record, the district court held that a reasonable jury could find that Budaj intentionally shot Duran, thereby limiting his freedom of movement. The district court also denied Budaj qualified immunity because it has been clearly established for decades that a police officer could not shoot a person with a police projectile when that person had committed no crime and posed no threat to the safety of officers or anyone else. The district court also denied summary judgment to the Defendant City of Aurora on Plaintiffs' claim that Aurora's policies, practices, customs, and failure to train caused the constitutional violations against them.

None of the district court's factual findings are reviewable in this interlocutory appeal. Yet, Defendants repeatedly contest the facts in their opening brief. That's because their only way of distinguishing this Circuit's clearly established law is to dispute the facts. And their only basis for arguing that they committed no constitutional violation is to dispute the facts found by the district court. Because this appeal does not present a "neat abstract issue of law" for this Court's resolution, it

should be dismissed. Alternatively, the Court should affirm and remand for trial.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331. On September 23, 2022, the district court denied Defendants-Appellants City of Aurora, Cory Budaj, David McNamee, and Patricio Serrant's motion for summary judgment. Add. 1–21.[1] Defendants timely filed their notice of interlocutory appeal on October 24, 2022. App. Vol. VII at 1771.

Federal appellate courts have jurisdiction to review only "final decisions." 28 U.S.C. § 1291; *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). Interlocutory appeals, like this one, therefore "are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013) ("Orders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291."). Under the collateral-order doctrine, this Court has jurisdiction to review a government official's interlocutory appeal from a

---

[1] "Add." refers to the district court's opinion, attached as an addendum to Defendants' brief.

denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves "neat abstract issues of law." *Johnson*, 515 U.S. at 317 (internal quotation marks and citation omitted). When reviewing the denial of qualified immunity at the summary judgment stage, this Court "lacks jurisdiction … to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Sawyers v. Norton*, 962 F.3d 1270, 1281 (10th Cir. 2020) (internal quotation marks and citation omitted).

Appellants, unhappy with the district court's decision, inappropriately contest the factual basis for the decision, depriving this Court of jurisdiction over their appeal. *DeWitt v. Western Pac. R.R. Co.*, 719 F.2d 1448, 1451 (9th Cir. 1983) ("The decision to appeal should be a considered one, … not a knee-jerk reaction to every unfavorable ruling."). The only abstract issue of law that could have been raised by Budaj on appeal is whether it was clearly established by May 31, 2020, that an officer could not shoot a nonviolent, law-abiding journalist in the groin with a less-lethal weapon during a protest. However, this is not how Budaj has chosen to argue this issue. Instead, he repeatedly

4

challenges the facts found by the district court throughout his brief, including in his discussion of whether the law was clearly established in May 2020. This Court's jurisdiction over the question of whether the law was clearly established exists only "when the defendant does not dispute the facts alleged by the plaintiff and raises only legal challenges to the denial of qualified immunity based on those facts." *Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015) (internal quotation marks and citation omitted). As one appellate court has explained, "an appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument." *Gutierrez v. Kermon*, 722 F.3d 1003, 1010 (7th Cir. 2013).

Defendant Budaj "dispute[s] the facts [the] district court determines a reasonable juror could find" and fails to raise pure "'legal challenges to the denial of qualified immunity based on those facts.'" *Ralston v. Cannon*, 884 F.3d 1060, 1067 (10th Cir. 2018) (citation omitted). This Court does not have jurisdiction in this interlocutory appeal to review the district court's factual findings and inferences. *See Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010). As observed in *Ralston*, the Supreme Court long ago limited appeals like this one.

884 F.3d at 1067–68 (concluding appeals that "flaunt the jurisdictional limitations set out in *Johnson*[] serve only to delay the administration of justice") (citing *Johnson*, 515 U.S. at 304).[2] Allowing a defendant to bring an interlocutory appeal simply to delay a trial prejudices plaintiffs and the court. *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) ("there is the risk that such interlocutory appeals will be subject to abuse."). Ultimately, because Budaj does not concede the most favorable view of the facts to Duran for purposes of the appeal, and instead litters his brief with inappropriate factual arguments, the Court lacks jurisdiction over this appeal. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case.").

Similarly, this Court should not exercise pendent appellate jurisdiction over Aurora's appeal of the district court's denial of its motion for summary judgment. The only basis asserted for Aurora's appeal is that "no record evidence" shows that a constitutional violation

---

[2] Plaintiffs' claims against the Aurora Defendants are set for trial on June 19, 2023. Supp. App. at 96–97.

was committed by any Aurora officer, and therefore, Aurora cannot be liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Because there is no jurisdiction to review the individual Defendants' fact-based challenge to the existence of a constitutional violation, there is no basis to exercise pendent appellate jurisdiction over Aurora's appeal.

## STATEMENT OF ISSUES

1.　　Whether there is jurisdiction to review Defendant-Appellant Budaj's fact-based challenge to the district court's finding that a reasonable jury could find Budaj violated the Fourth Amendment when he shot Plaintiff-Appellee Duran, a peaceful journalist covering a protest, in the groin with a less-lethal weapon.

2.　　Whether it was clearly established in May 2020 that a police officer could not shoot an unarmed, nonviolent person with a less-lethal weapon.

3.　　Whether the district court erred in denying summary judgment to Defendant-Appellant Budaj on Plaintiff-Appellee Duran's Fourteenth Amendment claim.

4.      Whether there is a basis for this Court to exercise pendent appellate jurisdiction over Defendant-Appellant City of Aurora's appeal of the district court's denial of summary judgment when there is no jurisdiction over the only issue that is "inextricably intertwined" with the pendent appellate claim.

## STATEMENT OF THE CASE

I.     **On May 30 and 31, 2020, Plaintiff Duran Witnessed and Experienced Unjustified Police Violence Against Protestors and Journalists**

In May and June 2020, large, mostly peaceful protests occurred in Denver following the police murder of George Floyd. Add. at 2.[3] Denver requested help managing the protests from police departments in other cities. *Id.* The Aurora Police Department ("APD") was one of the mutual-aid departments brought in to assist Denver with the protests on May 30 and 31, 2020. *Id.*

---

[3] Denver imposed a nighttime curfew from May 30 to June 5, 2020. Credentialed members of the press (such as Duran) were exempt from the curfew. App. Vol. I at 93 (¶ 103). Other plaintiffs in this lawsuit have challenged the constitutionality of Denver's enforcement of the curfew, and a class of curfew arrestees has been certified. Supp. App. at 1–8. The class action is set for trial in April 2023. *See id.* 71–77, 94–95. The constitutionality of Denver's enforcement of the curfew is not an issue in this appeal.

Although the protests were overwhelmingly peaceful, officers repeatedly used their "less-lethal" weapons indiscriminately on nonviolent protestors and journalists. App. Vol. II at 414, 432–54. On May 30 and 31, 2020, Duran covered the protests as a credentialed member of the press. App. Vol. IV at 662, 678–81, 683, 714–16.

On May 30, Duran was in the vicinity of the State Capitol. *Id.* at 685–87. He was wearing a press pass. *Id.* at 677. While in the area of Civic Center Park, Duran saw officers clear Civic Center station of hundreds of protestors with "flash-bang grenades and tear gas and pepper balls." *Id.* at 686–87. Protestors were not throwing anything or engaged in any acts of property destruction or vandalism. *Id.* at 695, 698–99. The only people he saw carrying weapons of any kind were the police. *Id.* at 696. Later, at the intersection of Colfax and Lincoln, Duran saw police tear gas, pepper spray, shoot pepper balls and throw flashbang grenades at protestors who were kneeling and chanting with their hands up. *Id.* at 688, 703–04. As he documented and took

9

photographs of this, he was shot with pepper balls by a Denver police officer.[4] *Id.* at 675, 687.

Due to the police violence he witnessed on May 30, when Duran returned to the protest on May 31, he wore a helmet that said "MEDIA" four times in large letters all around it, "to help indicate to officers that I was there as a journalist." *Id.* at 677, 707, 710. Duran started at the Capitol, where most of the protestors were gathered, and followed the march east down Colfax, filming and taking photos. *Id.* at 711–12. When protestors reached the intersection of Colfax and Washington, officers threw explosives and tear gas at peaceful protestors, without justification or warning. App. Vol. II at 456–64.

At one point, officers formed a line across Colfax behind a gyro restaurant. App. Vol. IV at 712. There, Duran "witnessed officers facing east launching flash-bang grenades and pepper balls at folks that were on Colfax." *Id.* Duran's video shows that officers used their weapons on

---

[4] Duran also sued Denver for injuries he sustained on May 30, 2020. Duran reached a settlement with Denver before the trial against Denver in March 2022 that is referenced in Plaintiff-Appellee Packard's brief. (Duran's suit, *Fitouri, et al. v. City and County of Denver, et al.*, No. 20-cv-1922-RBJ-MEH, was consolidated with Packard's suit, *Epps, et al. v. City and County of Denver, et al.*, No. 20-cv-1878-RBJ, at the outset of litigation.)

protestors at the moment that protestors were peacefully chanting, "March with us! March with us!" App. Vol. VII at 1711 (Ex. 21 (Duran video), 5:04–5:36 min.). Duran cut through a few alleyways and ended up at the intersection of Colfax and Pearl. App. Vol. IV at 713. There, some protestors were hiding behind dumpsters to avoid being shot by the police. *Id.* At that time, Duran saw a friend who was acting as a street medic.[5] *Id.* He stopped to talk to her. *Id.*

## II.     Defendant Budaj Shot Plaintiff Duran in the Groin with a 40mm Launcher without Justification

At 9:34 p.m., Duran was livestreaming at the intersection of Colfax and Pearl Street, standing near the south sidewalk, when APD officers pushed forward using batons and less-lethal weapons, including tear gas. As Duran was backing up, he was shot in the testicle with a 40mm "foam baton" round, commonly referred to as a "rubber bullet." App. Vol. VII at 1711 (Ex. 21, 21:24–22:50 min.; Ex. 23, 9:34:07–9:34:24

---

[5] Duran's friend was a street medic wearing black shorts and holding a clear umbrella. App. Vol. IV at 713. Duran can be see standing next to her on the HALO video at Colfax and Pennsylvania. App. Vol. VII at 1711 (Ex. 23 (HALO–Colfax and Pennsylvania), 9:34:07–9:34:24 p.m.).

p.m.);[6] App. Vol. IV at 711–14, 758–62, 903–04; App. Vol. V at 940–41

(Duran circled in green in screenshots of HALO video).

At approximately 9:30 p.m., APD and DPD began moving to corral

protestors in front of a cathedral on Colfax between Pennsylvania and

Logan at the direction of the Incident Commander, Patrick Phelan.

Commander Phelan wanted to push protestors there in order to "make

some arrests." Supp. App. at 32. He ordered APD to push protestors

west from their position east of the cathedral and simultaneously

ordered a team of DPD officers to push protestors east from their

position west of the cathedral. *Id.* at 28–39, 55–67.

At about 9:34 p.m., Defendant Budaj was at the intersection of

Colfax and Pearl assisting other APD officers in forcing protestors west

on Colfax. Add. at 3; App. Vol. VII at 1711 (Ex. 27 (Bubna BWC),

21:34:23–21:34:36 (1:11–1:24 min.)); App. Vol. V at 1096. Budaj was on

the left side of the Aurora Bear (a large black police vehicle), near the

south sidewalk, armed with a 40mm launcher. App. Vol. V at 1096;

---

[6] Exhibits 4, 13, 15, 17, 19, 21, 23, 27, 30–35, and 47 to Plaintiffs'
Opposition to Aurora Defendants' Motion for Summary Judgment are
videos which were conventionally submitted to this Court on flash
drives as part of the Appendix on January 19, 2023.

App. Vol. IV at 840, 843, 865–68, 872; App. Vol. VII at 1711 (Ex. 4 (HALO–Colfax and Washington), 9:33:28–9:34:23 p.m.). Budaj shot his launcher fifteen times between 9:15–9:46 p.m., but he did not activate his body-worn camera ("BWC"). App. Vol. IV at 843–46, 885–60; Add. at 3.

The stop light at Pearl and Colfax is visible in Duran's video, Bubna's video, and the HALO video at Colfax and Pennsylvania. Thirteen seconds after the light at Pearl turned green, Duran was shot in the testicle by a rubber bullet from a 40mm launcher. App. Vol. IV at 654, 668, 876–79; App. Vol. VII at 1711 (Ex. 21, 21:08–21:25 min.; Ex. 23, 9:34:24 p.m.) (Duran doubled over at moment of impact).[7] No warnings were given. App. Vol. IV at 735. Duran described being shot in the testicle as "horrific" and the worst pain he had felt in his life. *Id.* at 736–37.[8]

---

[7] There are no timestamps on Duran's video (Ex. 21), and the timestamps on Aurora officer BWCs are not synced with each other or with Denver HALO video. Thus, specific events must be identified across videos by reference to visual or audio markers.

[8] Duran's friend picked up the 40mm round from the ground afterwards and gave it to him. App. Vol. IV at 713–14, 761; App. Vol. VII at 1711 (Ex. 21, 22:08–22:21 min.).

Budaj can be seen in APD Officer Bubna's BWC (Ex. 27) at 9:34 p.m.; Budaj is the officer standing on the left side of the Bear with his 40mm launcher raised in a shooting position:[9]



Ex. 27 at 21:34:36 (1:24 min.)

---

[9] Budaj was wearing a hydration pack that covered up some of the "POLICE" lettering on his vest. App. Vol. VII at 1711 (Ex. 35 (Sweeney BWC), 21:41:53–21:41:59 (12:49–12:54 min.) (Budaj appearing on edge of video); Ex. 30 (Wilson BWC), 21:41:12–21:41:22 (1:02:15–1:02:25 min.) (Budaj throwing a flashbang grenade)); App. Vol. IV at 848–49 (Budaj admitting he wore a hydration pack), 860-61 (Budaj admitting that he can be seen in Officer Wilson's BWC throwing a flashbang grenade). Budaj had gray tape on his helmet, although a reflection off a nearby neon red Office Depot sign made Budaj's gray tape appear partially red. App. Vol. IV at 851, 880–83, 888–93; App. Vol. VII at 1711 (Ex. 27, 21:34:39–21:34:36 (1:18–1:24 min.)).

Budaj fired at Duran approximately twelve seconds after the light in front of him at Pearl turned green, and the rubber bullet traveled in the air for one second before hitting Duran thirteen seconds after the light turned green. App. Vol. VII at 1711 (Ex. 27, 21:34:23–21:34:36 (1:11–1:24 min.)); App. Vol. IV at 900–07; App. Vol. V at 1218). Budaj fired at Duran at the moment a police explosive went off next to the Aurora Bear. App. Vol. VII at 1711 (Ex. 27, 21:34:36–21:34:37 (1:24–1:25 min)). That same explosive can be seen in Duran's video. *Id.* at 1711 (Ex. 21, 21:23 min.). The other two officers in the area with 40mm launchers did not shoot at that time. App. Vol. IV at 904–07 (Budaj admitting that Bubna and Smick did not fire); App. Vol. VII at 1711 (Ex. 31 (Smick BWC), 21:34:17–21:34:32 (51:23–51:38 min.)). No other officers had a 40mm launcher, fired a shot at 9:34 p.m., or were at Colfax and Pearl at this time. App. Vol. V at 1072–73, 1096, 1132, 1147, 1223; App. Vol. VII at 1711 (Exs. 17, 19, 30, 32–34);[10] App. Vol. II at 247, 305. On appeal, Budaj concedes his personal participation. Defs.' Br. at 8.

---

[10] These are BWC videos of other APD officers which show that they were not at Colfax and Pearl at 9:34 p.m., did not fire a shot at 9:34, and/or did not have a 40mm launcher.

15

Budaj is an experienced marksman and grenadier, App. Vol. IV at 826–32, who had been trained to shoot through tear gas, App. Vol. III at 539. He admitted that he could accurately target Duran from that distance and that Duran had not done anything that warranted any use of force. App. Vol. IV at 870–76. In fact, the district court found that "[a] reasonable juror could infer that Officer Budaj could perceive that Mr. Duran was a member of the media," given the large lettering on Duran's helmet. Add. at 10.

As to whether Budaj was the officer who shot Duran in the groin at 9:34 p.m. on May 31, 2020, the district court found:

> There is evidence that Mr. Duran was hit in the groin thirteen seconds after the light at Colfax and Pearl turned green. There is evidence that the officer on the left side of the Aurora truck exiting the alley near Colfax and Pearl was the officer that shot Mr. Duran because that officer had his weapon raised at the time of the shooting and appears to shoot. There is also evidence that the officer on the left side of that truck was Officer Budaj—part of the word police was covered on his back, and he had gray tape (which Officer Budaj had) on his helmet. This is sufficient evidence to raise a genuine dispute of material fact that Officer Budaj was the officer who hit Mr. Duran at Colfax and Pearl.

Add. at 6 (citations omitted).

And in rejecting Budaj's assertion of qualified immunity, the district court found:

16

The evidence submitted shows that when Mr. Duran was shot with a 40mm round, he was in a crowd of protestors, but that he did not pose a threat to the safety of anyone, police or otherwise. When he was shot, he was apparently standing near the intersection of Colfax and Pearl Street, speaking with an acquaintance, and filming the protest. ECF No. 91-6 at 7. Any officer should have known that shooting a less-lethal weapon at him in those circumstances was not a reasonable use of force—it is well established that such a use of force is violative of a protester's constitutional rights. *See Fogarty*, 523 F.3d at 1159–62.

*Id.* at 15.

### III.  Defendant City of Aurora's Policies, Practices, Customs, and Failure to Train Caused Plaintiffs' Injuries

In addition to rejecting Budaj's qualified immunity argument, the district court also rejected Aurora's argument that it is not liable under *Monell* because no individual officers are liable for any constitutional violations. *Id.* at 17–19. Because the court found that a reasonable jury could find Budaj used excessive force in shooting Duran, the district court found Duran's claim against Aurora could proceed. *Id.* at 15–16.

Furthermore, the district court found that Plaintiffs raised a genuine dispute of material fact on whether Aurora had policies, practices, customs, or a failure to train that caused the constitutional violations against Plaintiffs. *Id.* at 17–19. The district court held that a reasonable jury could find that Aurora's specific policies on use-of-force,

use of less-lethal weapons, use of BWC, and use-of-force reports caused Plaintiffs' injuries. *Id.* at 17–18. The court cited evidence that Aurora's use-of-force and less-lethal force policies were too vague to allow officers to understand when force could legally be used and the that the result was use of excessive force by officers. *Id.* The court also cited testimony from Plaintiffs' expert Norman Stamper about Aurora's use-of-force reporting and BWC policies, which did not require officers to complete timely and accurate reports or activate their BWCs during protests. This had an adverse effect on officer accountability. *Id.* The court concluded that a reasonable jury "could conclude that these policies, collectively, caused the injuries to plaintiffs." *Id.* at 18.

The district court also found that there was sufficient evidence for a reasonable jury "to conclude that Aurora had actual and constructive notice that its failure to train on use-of-force was likely to result in constitutional violations." *Id.* at 19. Plaintiffs provided extensive evidence of inadequate training and policies. App. Vol. II at 466–74; App. Vol. III at 476–81, 516, 520–21, 529–31, 575–89; App. Vol. IV at 908–16; App. Vol. VI at 1244–45, 1249–50, 1252–56, 1270–1548; App.

Vol. VII at 1549–50, 1561–1710. Aurora does not contest any of this on appeal. Defs.' Br. at 28–29.

## SUMMARY OF ARGUMENT

The Court should dismiss Defendants' appeal and remand the case for trial. This appeal has no legal or jurisdictional basis. Instead, it is designed only to postpone the trial, abuse the interlocutory appeal process by rehashing factual arguments, and waste judicial resources by asking this Court to improperly consider the Defendants' version of the facts. Defendants' opening brief fails to accept the facts as found by the district court and the facts and inferences in the light most favorable to Plaintiffs. It is impossible to accept Plaintiffs' version of the facts, as this Court must, and find that the individual Defendants are entitled to qualified immunity. At its core, Defendants' argument on appeal is that the Court must accept their version of events—in which Budaj did not intentionally shoot Duran, a nonviolent journalist—contrary to the district court's findings.

This sort of argument is not permissible for a narrow interlocutory appeal in a federal appellate court. An argument about whose story to believe and what the evidence shows must be made to the jury, not an

appellate court. *Johnson*, 515 U.S. at 313. Because Defendants'
interlocutory appeal is not properly before this Court, the Court should
dismiss the appeal for lack of jurisdiction. And even if this Court were
to look to the facts in this case, it would reach the same conclusion as
the district court—a reasonable jury could conclude Defendant Budaj
violated Plaintiff's Fourth Amendment rights.

Similarly, if the Court were to reach the legal question of whether
the law was clearly established in 2020 that a police officer could not
intentionally shoot a nonviolent journalist with a less-lethal weapon
when that journalist posed no threat to anyone and had committed no
crime, the answer to that question is plainly yes. *See Buck v. City of
Albuquerque*, 549 F.3d 1269 (10th Cir. 2008); *Fogarty v. Gallegos*, 523
F.3d 1147 (10th Cir. 2008).

And finally, because this Court has no jurisdiction over the
individual Defendants' fact-based arguments about whether they
committed a constitutional violation against Plaintiffs, this Court has
no basis to exercise pendent appellate jurisdiction over the district
court's denial of Defendant City of Aurora's summary judgment motion.

## ARGUMENT

## Standard of Review

This Court "lack[s] jurisdiction to review factual disputes in this interlocutory posture." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021) (internal quotation marks and citation omitted). "[I]f a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, the Supreme Court has indicated [the appellate court] usually must take them as true—and do so even if [its] own *de novo* review of the record might suggest otherwise as a matter of law." *Sawyers*, 962 F.3d at 1281 (internal quotation marks and citation omitted). "Those facts explicitly found by the district court, combined with those that it likely assumed, … form the universe of facts upon which [appellate courts] base [their] legal review of whether defendants are entitled to qualified immunity." *Fogarty*, 523 F.3d at 1154.

Defendants suggest that this Court may conduct its own *de novo* review of the facts because the district court has "fail[ed] to identify the particular charged conduct that it deemed adequately supported by the record," and the district court's version of events is "blatantly

21

contradicted by the record." *Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (internal quotation marks and citations omitted). *See* Defs.' Br. at 12. Neither of these exceptions to the jurisdictional limits on this Court's review of the facts applies here.

First, the district court extensively identified the conduct committed by Budaj against Duran that it deemed adequately supported by the record. Add. at 6, 11–12, 15.

Second, the blatant-contradiction exception is satisfied "only when 'the version of events is so utterly discredited by the record that no reasonable jury could have believed' it, constituting 'visible fiction.'" *Vette*, 989 F.3d at 1164 (citation omitted). This exception plainly does not apply here. The evidence—for example, Duran's cell phone video, which shows the moment he was shot from his perspective on the west side of the Colfax and Pearl intersection, combined with Officer Bubna's BWC, in which Budaj can be seen on the other side of the intersection, raising his 40mm launcher to shoot just before Duran is hit—supports the district court's factual conclusions. App. Vol. VII at 1711 (Ex. 21, 21:10–21:27 min.; Ex. 27, 21:34:36 (1:24 min.)). Budaj does not even attempt to argue that the video "blatantly contradicts" the district

22

court's findings. He does not discuss the video at all. The district court's findings are amply supported by the videos, Duran's testimony, and admissions Budaj made in his sworn deposition testimony. It is Defendants' version of events that is "blatantly contradicted" by the record.

## I.     This Court Lacks Jurisdiction to Review Defendant Budaj's Fact-Based Challenge to the District Court's Ruling

The Court need look no further than Defendants' opening brief and the district court's opinion to determine that Defendants are raising factual questions on appeal over which this Court has no jurisdiction.

Defendants challenge the district court's finding that a reasonable jury could find Budaj violated Duran's constitutional rights. Their entire argument and recitation of the facts is limited to their version of the facts and the inferences that can be drawn therefrom. They cite almost exclusively to the facts in their own motion for summary judgment and the officers' self-serving police reports. *E.g.*, Defs.' Br. at 3–7, 24. Although Defendants:

> attempt[] to characterize the issue on appeal as Plaintiffs' failure to assert a violation of a constitutional right under clearly established law, [their] … argument is actually a challenge to the

23

district court's conclusion Plaintiffs presented sufficient evidence to survive summary judgment.

*Castillo v. Day*, 790 F.3d 1013, 1018 (10th Cir. 2015). This deprives this Court of jurisdiction at the interlocutory stage. *Id.*

Defendants repeatedly assert that there is "no record evidence" for Plaintiffs' claims:

- "although Plaintiffs frequently characterize the conduct of all law enforcement officers present as 'indiscriminately using less-lethal munitions, there is **no record evidence** to support that assertion." Defs.' Br. at 6–7 (emphasis added).

- "**Neither is there any record evidence** that Aurora Officers were involved in that use either as a group or with specific respect to Plaintiffs Packard or Duran." *Id.* at 7 (emphasis added).

- "**The record in this case does not provide any evidence** that the Aurora Officers engaged in an intentional effort to apply force to Plaintiffs Packard or Duran, and there has therefore been no seizure here." *Id.* at 21 (emphasis added).

- "Put directly, **the record contains no evidence** that any Aurora Officer intentionally targeted Plaintiff Packard or Plaintiff Duran, nor any evidence that they were directed to do so by Sergeant Serrant." *Id.* at 22–23 (emphasis added).

- "Despite the characterizations that the event was 'peaceful,' the **record evidence clearly contradicts** that characterization." *Id.* at 23 (emphasis added).

These assertions are contrary to the district court's findings and the evidence viewed in the light most favorable to Plaintiffs. *See* Add. at 6,

24

11–12; *supra,* Statement of the Case. This Court has no jurisdiction to review Defendants' challenge to the district court's factual conclusions. *Fogarty*, 523 F.3d at 1154.

When an appellate court reviews an order denying qualified immunity, appellate jurisdiction is limited to arguments raising only legal issues. Fact-driven arguments like those made by the Defendants are off limits. *See Lowery v. Cnty. of Riley*, 522 F.3d 1086, 1091 (10th Cir. 2008). And Budaj cannot dodge the jurisdictional bar by couching factual arguments in legal terms, as he attempts to do here. *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011) (rejecting "back-door effort" to contest the facts and dismissing qualified immunity appeal for lack of jurisdiction); *Stinson v. Gauger*, 868 F.3d 516, 525–26 (7th Cir. 2015) (en banc) (same). The hallmark of this back-door maneuver is a defendant arguing about qualified immunity without accepting Plaintiffs' version of events. *See id.*; *Lowery*, 522 F.3d at 1091–92 (dismissing appeal of district court's denial of qualified immunity because defendants did not genuinely accept plaintiff's version of events); *Valdez v. Motyka*, 804 F. App'x 991 (10th Cir. 2020) (same).

25

That is exactly what we have here. Budaj's argument that he committed no constitutional violation revolves entirely around his version of the facts. This stands in direct opposition to the district court's factual findings. This Court therefore cannot consider the argument.

## II. Defendant Budaj Violated Plaintiff Duran's Fourth Amendment Rights

To the extent, however, the Court considers Defendant's constitutional violation argument, the evidence and case law clearly supports Plaintiffs' position. Defendant Budaj used unreasonable force against Plaintiff when he shot Duran with a rubber bullet as he was peacefully documenting the protest. It is well-established that courts are required to apply the factors in *Graham v. Connor*, 490 U.S. 386 (1989), when analyzing whether an officer's use of force was objectively reasonable under the Fourth Amendment. "[W]e must pay 'careful attention' to factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fogarty*, 523 F.3d at 1159 (quoting *Graham*,

490 U.S. at 396).[11] Budaj has forfeited any argument that the use of force on Duran was reasonable because he did not make that argument below. App. Vol. I at 170–71.

In any event, the district court found that Duran was engaged in entirely peaceful conduct, had committed no crime, and posed no threat to the safety of officers or anyone else. Add. at 6, 15. The district court found that a reasonable jury could conclude that Budaj intentionally shot Duran, and that this was an excessive use of force. *Id.* Budaj disputes these facts, arguing that he did not intentionally target Duran, Defs.' Br. at 22, and asserting that he deployed fifteen rounds "all at unknown persons engaged in criminal behavior … ," *id.* at 6.

Under *Torres v. Madrid*, 141 S. Ct. 989, 994 (2021), "[t]he application of physical force to the body of a person with intent to restrain is a seizure, even if the force does not succeed in subduing the person." *Nelson v. City of Davis*, 685 F.3d 867, 875–76 (9th Cir. 2012)

---

[11] Defendants' suggestion that this Court ignore the *Graham* factors and consider instead what other people attending the protest at other times and other locations may have been doing is completely untethered to the law. *See* Defs.' Br. at 23–24. In fact, Budaj admitted that it would not be a reasonable use of force to shoot a person with a 40mm launcher simply because there were protestors hiding behind dumpsters nearby. App. Vol. IV at 870.

(holding the officer "took aim and intentionally fired in the direction of a group [of protestors] of which Nelson was a member" and therefore "unquestionably seized" him under the Fourth Amendment when he was hit with a projectile). A seizure can include "physical force" or a "show of authority" that "in some way restrain[s] the liberty of the person." *Torres*, 141 U.S. at 995.

The district court found that a reasonable jury could conclude that Budaj shot Duran intentionally, not accidentally, because he deliberately fired his weapon with an intent to restrain:

> Though defendants insist that there is no proof of such an intent for either officer, the fact is that there is evidence (that I have outlined in the sections above) that these officers fired munitions in the direction of Messrs. Packard and Duran and evidence that Messrs. Packard and Duran were hit with these munitions. A reasonable juror could (but certainly does not have to) infer from these facts that Officer McNamee shot Mr. Packard intentionally, and Officer Budaj shot Mr. Duran intentionally.

Add. at 12. Notably, Budaj has never claimed that he *accidentally* shot Duran. *See* App. Vol. IV at 869–70.

Budaj makes only one argument as to seizure—that he did not intentionally shoot or target Duran. Defs' Br. at 21–23. But the district court found that a reasonable jury could conclude otherwise, and this finding of fact cannot be challenged in this appeal. And regardless,

28

because Budaj applied physical force to Duran's body with the intent to restrain, Duran was legally seized. *Torres*, 141 S. Ct. at 1003; *Huff v. Reeves*, 996 F.3d 1082, 1088 (10th Cir. 2021) (circumstantial evidence was sufficient for a reasonable jury to find that officer shot plaintiff and rejecting officer's denial under oath as dispositive); *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 264–65 (S.D. Ohio 2021) (intentional application of physical force on protestors using less-lethal weapons constitutes a seizure when freedom of movement, not movement itself, is terminated).[12] In any event, it is "the jury's job" to resolve factual

---

[12] In *Torres*, the question was "whether the application of physical force is a seizure if the force, despite hitting its target, fails to stop the person." 141 S. Ct. at 995. The answer is yes. Budaj does not argue that the seizure of Duran was not intended to restrain him, *see* Defs.' Br. at 21–23, and even if he did, the argument is forfeited because he did not argue it below. *See* App. Vol. I at 170–71. The relevant facts of *Torres* are indistinguishable from Budaj's seizure of Duran, which was intended to restrain him, even though Duran escaped. *See Torres v. Madrid*, __ F.4th __, 2023 WL 2053910, at *5 (10th Cir. 2023) (officers not entitled to qualified immunity because at the time they shot Torres, they did not know that she would elude them). Budaj shot Duran as he backed away from the line of officers, which is evidence of an objective intent to restrain or terminate Duran's freedom of movement. *See Johnson v. City of San Jose*, 591 F. Supp. 3d 649, 660 (N.D. Cal. 2022); App. Vol. VII at 1711 (Ex. 21, 21:00–21:24 min.). Budaj and other APD officers were attempting to encircle or kettle the protestors in front of the cathedral on Colfax, in order to make arrests. Supp. App. at 28–39, 55–67. Moreover, the shot to the testicle impaired Duran's movement,

disputes about intentionality. *Arnold v. Curtis*, 359 F. App'x 43, 48

(10th Cir. 2009); *Pauly v. White*, 874 F.3d 1197, 1218 (10th Cir. 2017)

(holding that the "court may not simply accept what may be a self-

serving account by the police officer," but look to circumstantial

evidence contradicting his account).

### III.  The Law Was Clearly Established in May 2020 that an Officer Could Not Shoot an Unarmed, Nonviolent Journalist with a Less-Lethal Weapon

This Court has jurisdiction to review whether the law was clearly

established if Defendants raise a pure legal challenge to the denial of

qualified immunity. *Henderson*, 813 F.3d at 948. In their discussion of

clearly established law, however, Defendants continue to contest the

facts presented by Plaintiffs and found by the district court. *See* Defs.'

Br. at 17, 19–20. Budaj's argument regarding whether the law was

clearly established is as follows: *Buck* and *Fogarty* cannot clearly

establish the law in this case, as they "diverge so significantly from the

facts presented to the District Court here" because in those cases, "the

force was clearly and unequivocally directed at particular

---

even though he was able to hobble away. App. Vol. VII at 1711 (Ex. 21, 21:24–21:40 min.).

individuals ….." Defs.' Br. at 19. This factual argument stands in direct opposition to the district court's factual conclusion: that Budaj intentionally shot Duran. Because Budaj's "assertion that the constitutional right at issue is not clearly established … relies upon" a view of the record favorable to him, there is no jurisdiction to review this question. *Ralston*, 884 F.3d at 1066. Even assuming, however, that the Court has jurisdiction to review Defendants' argument, the law was clearly established for decades before May 31, 2020.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (internal quotation marks and citation omitted). There is no requirement that previous cases establishing the law be "fundamentally similar"; instead, while such cases "can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *United States v. Lanier*, 520 U.S. 259, 271 (1997); *see also Taylor v.*

*Riojas*, 141 S. Ct. 52, 53–54 (2020) (reaffirming that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.") (cleaned up).[13] Thus, Defendant is incorrect when he asserts that prior cases need to bear a "factual symmetry" to the facts here. Defs.' Br. at 17.

Even if Defendants were correct, however, and previous cases need to be "fundamentally similar" for purposes of clearly establishing law, there is just such a case here: *Fogarty v. Gallegos*, 523 F.3d 1147

---

[13] The text of 42 U.S.C. § 1983 makes no mention of immunity. It was not until the second half of the twentieth century that the Supreme Court recognized qualified immunity. *See Pierson v. Ray*, 386 U.S. 547, 555, 557 (1967). Judges and scholars have criticized the expansion of qualified immunity. *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1162 (2018) (Sotomayor, J., dissenting) (arguing that a "one-sided approach to qualified immunity transforms the doctrine into an absolute shield for law enforcement officers"); *Zadeh v. Robinson*, 928 F.3d 457, 479 (5th Cir. 2019) (Willett, J., concurring) (noting "unease with the real-world functioning of modern immunity practice"); *Jackson v. City of Cleveland, et al.*, 920 F.3d 340, 367 (6th Cir. 2019) ("Qualified immunity has outgrown its original justifications, which were 'rooted in historical analogy' and 'based on the existence of common-law rules in 1871.'") (quoting *Wyatt v. Cole*, 504 U.S. 158, 170 (1992)); William Baude, *Is Qualified Immunity Unlawful?*, 106 Cal. L. Rev. 45 (2018); Joanna C. Schwartz, *The Case Against Qualified Immunity*, 93 Notre Dame L. Rev. 1797 (2018); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and concurring in the judgment) (suggesting that, in an appropriate case, qualified immunity doctrine should reconsidered).

(10th Cir. 2008). In *Fogarty*, plaintiff John Fogarty alleged that officers used excessive force against him during an antiwar protest in 2003. He alleged that "[w]hile he was standing on the [University of New Mexico] campus, … an [Albuquerque police officer] shot him with some sort of projectile, perhaps a 'pepper ball' or some other variety of 'less lethal munition.'" *Id.* at 1152. Then, as Fogarty knelt on the steps of a bookstore, officers approached him, pulled his arms behind his back, handcuffed him, and dragged him down the street. *Id.* The evidence allowed a reasonable jury to conclude that the officer who shot him with a pepper ball was Officer Michael Fisher. *Id.* at 1153–54.

This Court affirmed the district court's denial of qualified immunity to Fisher for shooting a pepper ball at Fogarty as well as the denial of qualified immunity to the other officers who used additional force on Fogarty during his arrest. *Id.* at 1159–61. Contrary to Defendants' suggestion otherwise, Defs.' Br. at 19, it did not matter that Fisher was not one of the officers who pulled Fogarty's arms, handcuffed him, or dragged him down the street. Under the circumstances presented, the force used by the officers was unreasonable because (1) the crime committed by Fogarty (if any,

33

disorderly conduct) was minor; (2) there was "no suggestion that he posed an immediate threat to the safety of the officers or others," (3) "Fogarty was neither actively resisting arrest nor attempting to evade arrest by flight," and (4) the "police may have contributed to the need to use force." *Id.* at 1161. This Court also noted, "the amount of force used by police against Fogarty was considerable. Fogarty alleges that he was hit with a rifle-powered projectile while standing on UNM property." *Id.*

*Fogarty* provides especially strong support that the law was clearly established here because the facts are "fundamentally similar," to those in the instant case. Just as Fogarty was shot with a rifle-powered projectile by Officer Fisher, Plaintiff Duran was shot with a rifle-powered projectile by Defendant Budaj. Duran had committed no crime. He was filming and reporting on the protests as a credentialed member of the press. Like Fogarty, there is no suggestion that Duran was a threat to the safety of the officers or anyone else. Like Fogarty, Duran was not actively resisting arrest or trying to evade arrest in any way. And in this case, the police in this case also contributed to the need to use force because they shot and gassed nonviolent protestors

while pushing the crowd west on Colfax. *See* App. Vol. VII at 1711 (Ex. 21, 21:08–21:25 min.).

*Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), also provides strong support that the law here was clearly established in May 2020. *Buck* involved a protestor (Chavez) who was shot with pepper balls. *Id.* at 1275. This Court affirmed the district court's denial of qualified immunity to the police captain who authorized the use of pepper balls finding that Chavez posed no threat, was (at most) a nonviolent misdemeanant, and did not resist arrest. *Id.* at 1288–89. This Court concluded the force was therefore unreasonable. *Id.*

Budaj's attempt to distinguish *Fogarty* and *Buck* is unpersuasive. In *Fogarty* and *Buck*, this Court found a reasonable jury could conclude that the officers who fired and authorized the firing of rifle-powered projectiles at unresisting, nonviolent civilians who posed no threat to safety used unreasonable force in violation of the Fourth Amendment. And this Court concluded those officers were not entitled to qualified immunity—which means that the law was clearly established not only in 2008 (the date of those decisions), but at least by the time of the events in those cases, in 2003. *Fogarty*, 523 F.3d at 1162 ("Considering

35

that under Fogarty's version of events each of the *Graham* factors lines up in his favor, this case is not so close that our precedents would fail to portend the constitutional unreasonableness of defendants' alleged actions."); *Buck*, 549 F.3d at 1291 (same).

Every reasonable officer facing the circumstances that Budaj faced would have understood that he could not intentionally shoot his 40mm launcher at a peaceful, unarmed person who posed no threat and had committed no crime because "existing case law gave [Budaj] fair warning that [his] conduct violated the plaintiff's constitutional rights." *Buck*, 549 F.3d at 1290 (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255–56 (10th Cir. 2007)).

Because the law is clearly established on this point, Budaj seeks refuge instead in fact-based arguments, inappropriate for this interlocutory appeal. First, he asserts that his shooting of Duran was unintentional or accidental. Defs.' Br. at 17 ("neither *Buck* nor *Fogarty* speak to the notion of accidental, unintentional, mistaken or inadvertent contact of a third party as the result of a use of force by officers, as was the case with Mr. Duran."), 19 ("[i]n both *Buck* and *Fogarty* the force was clearly and unequivocally directed at particular

36

individuals…"). This is contrary to the facts, as discussed above. Budaj

also suggests that perhaps Duran was not hit by projectile at all. *Id.* at

20. As already discussed, this is contrary to the record and what the

district court found. Add. at 12.

Second, Budaj claims that *Fogarty* and *Buck* did not establish the

law because, in this case, the plaintiffs were in "physical proximity to

individuals and groups of protesters who were engaged in unlawful

conduct or actively resisting lawful orders to disperse." Defs.' Br. at 19.

As an initial matter, Budaj does not explain how he could justify his use

of force on Duran based on the activities of the nearby protestors. But

even so, his characterization of *Fogarty* and *Buck* is inaccurate—those

plaintiffs were part of a protest with many others, and Defendants'

assertion about the protests in this case is contradicted by the facts. *See*

App. Vol. VII at 1711 (Ex. 21, 21:08–21:25 min.; Ex. 27, 21:34:00–

21:34:50 (00:48–1:38 min.)) (no evidence of orders to disperse given or

anyone engaged in unlawful conduct near Duran at the time he was

shot); App. Vol. IV at 704, 766–67 (officers gave no warnings). There is

no evidence that, at the time Budaj shot Duran in the testicle, he was

"being pummeled with rocks, bricks, and mortars by a swelling crowd

37

engaging in threatening behaviors ….” Defs.’ Br. at 20; App. Vol. VII at 1711 (Ex. 21, 21:08–21:25 min.; Ex. 27, 21:34:00–21:34:50 (00:48–1:38 min.)). Plaintiffs’ evidence and the district court’s view of the facts was to the contrary, and Defendant cannot contest those facts in this appeal.

Additionally, Defendants’ citation to an out-of-Circuit district court case, *Dundon v. Kirchmeier*, 577 F. Supp. 3d 1007 (D.N.D. 2021), is unavailing. As an initial matter, *Dundon* is not precedential or binding on this Court. This Court’s decisions in *Buck* and *Fogarty* are binding and directly on point—they involved officers using less-lethal munitions at protests.[14]

In *Dundon*, the police did not attempt to encircle the protestors; instead, the protestors moved towards the officers, who were behind a

---

[14] The same applies to Defendants’ citation to other out-of-Circuit cases, *Bernini v. City of St. Paul*, 665 F.3d 997, 1004 (8th Cir. 2012); *Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009). These cases are not precedential and are irrelevant, given this Court’s clear decisions in *Buck* and *Fogarty*. Moreover, they are inapposite. In *Bernini*, there was evidence that a group of protestors was acting together in an attempt to break through a police line. The question in both *Bernini* and *Carr* was whether a reasonable officer would have had probable cause to believe that a group of protestors was engaged in inciting a riot and/or unlawful assembly. This case does not involve arrests; it involves whether the Defendants’ use of force on Plaintiffs was reasonable under *Graham*. Moreover, here, Duran was not even a protestor—he was a journalist covering and filming the protests.

blockade. *Dundon* could provide guidance to this Court only if it were to impermissibly view the facts as the Defendants wish them to be seen. Defendants again rely on their version of facts instead of Plaintiffs' version of facts and the district court's factual findings in citing to *Dundon*. The skirmish line that Defendants were a part of did in fact use their less-lethal weapons in order to corral or "kettle" the protestors. App. Vol. IV at 762–67 (Duran describing protestors being kettled on Colfax by APD officers pushing and firing weapons on one side and other officers also pushing and firing weapons on the other side); App. Vol. VII at 1711 (Ex. 21, 24:50–28:17 min.). And, according to Plaintiffs, the protests were largely peaceful, including at and around the time that Duran was shot. App. Vol. IV at 765 (describing protestors marching and chanting with their hands up); App. Vol. VII at 1711 (Ex. 21, 24:50–28:17 min.). Rather than look to *Dundon*, and the Defendant's version of the facts for guidance, this Court must cabin its review to the legal question at issue and look to *Fogarty* and *Buck*, directly on-point cases clearly establishing the Fourth Amendment law.

## IV. The District Court Did Not Err in Denying Summary Judgment to Defendant Budaj on Plaintiff Duran's Fourteenth Amendment Claim

Defendants argue that the district court erred in allowing the "force" claims to proceed under both the Fourth and Fourteenth Amendments. Defs.' Br. at 25–27. They misunderstand the district court's decision and the law. Duran incorporates by reference Plaintiff-Appellee Packard's argument on this issue. Packard Br. at 39–42.

Contrary to Defendants' argument otherwise (Defs.' Br. at 26), the question of whether there was a seizure is a question of fact. *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013) ("[T]he reasonableness of a search or seizure is a question for the jury."). If the jury finds there was no seizure, Duran may still pursue his alternative claim under the Fourteenth Amendment. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003).

Furthermore, as the district court found, a reasonable jury could conclude that Budaj's behavior—shooting a nonviolent journalist while he was covering a protest and when he had committed no crime—shocks the conscience and constitutes a clear abuse of government authority in violation of the Fourteenth Amendment. Add. at 11; *see Mahdi v. Salt*

*Lake Police Dep't*, 54 F.4th 1232, 1236 (10th Cir. 2022); *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). This is especially the case when Budaj knew that Duran was a journalist because he could see the words "MEDIA" in large letters on his helmet.

Regardless, this Court has no jurisdiction over Defendants' factual challenge to the district court's finding that a reasonable jury could find in favor of Duran on his Fourteenth Amendment claim. "[I]n reviewing the district court's rejection of [the defendant]'s qualified immunity defense, we must scrupulously avoid second-guessing the district court's determinations regarding whether [the plaintiff] has presented evidence sufficient to survive summary judgment." *Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013) (emphasis in original).

Defendants argue in a single, perfunctory sentence that the law was not clearly established in May 2020 on Plaintiffs' Fourteenth Amendment claim because it was not clearly established on the Fourth Amendment claim. Defs.' Br. at 27. This argument is so inadequately briefed as to be waived or forfeited. *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (arguments raised in a perfunctory manner or inadequately presented are waived or forfeited). Even if it were not

41

forfeited, it would be apparent to any reasonable police officer that he could not shoot a person with a less-lethal weapon when the person had committed no crime and posed no threat to the safety of others. *See Hope*, 536 U.S. at 741; *Kisela*, 138 S. Ct. at 1158 (citing *Hope*); *Reavis Estate of Coale v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) ("our analysis is not a scavenger hunt for prior cases with precisely the same facts ….").

## V.    There Is No Pendent Jurisdiction to Review the District Court's Denial of Summary Judgment to Defendant City of Aurora

"Although … an interlocutory appeal is proper under certain circumstances from a district court's denial of qualified immunity, no such right of appeal applies to [a municipality's] appeal from the denial of summary judgment." *Cox v. Glanz*, 800 F.3d 1231, 1255 (10th Cir. 2015) (internal quotation marks and citations omitted). The denial of Defendant Aurora's motion for summary judgment is therefore not a final decision under 28 U.S.C. § 1291, and this Court lacks jurisdiction over it. *Id.* (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43 (1995)).

Under the doctrine of pendent appellate jurisdiction, however, this Court "may exercise jurisdiction over an otherwise nonfinal and

42

nonappealable lower court decision that overlaps with an appealable decision." *Id.* (internal quotation marks and citations omitted). However, this doctrine is "discretionary," and the exercise of pendent appellate jurisdiction is "generally disfavored" and must be used "sparingly." *Id.* at 1255–56 (internal quotation marks and citations omitted); *see also Bryson v. Gonzales*, 534 F.3d 1282, 1285–86 (10th Cir. 2008). "[A] rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay … collateral orders into multi-issue interlocutory appeal tickets." *Swint*, 514 U.S. at 49–50.

The exercise of pendent appellate jurisdiction over the district court's decision to deny Aurora's summary judgment motion may be appropriate only when it is "inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions," or "review of the former decision was necessary to ensure meaningful review of the latter." *Id.* at 51. Aurora pursues only the first possible basis for pendent appellate jurisdiction. Defs.' Br. at 1. A pendent appellate claim is:

> inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—

43

that is, when the appellate resolution of the collateral appeal
*necessarily* resolves the pendent claim as well.

*Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995).

Aurora's argument (like the individual Defendants' argument)
revolves around its version of the facts. Defs.' Br. at 28 (arguing that
because there is "no record evidence" of a constitutional violation, the
*Monell* claims against Aurora also fail). This Court has no jurisdiction
over the fact-based challenges to the district court's finding that a
reasonable jury could conclude Defendants violated Plaintiffs'
constitutional rights. And even if this Court could review the existence
of a constitutional violation, it is clear, as discussed at length above,
that Defendants violated Plaintiffs' constitutional rights. Thus, this
Court cannot exercise pendent appellate jurisdiction over Aurora's
appeal because it cannot and should not reverse the district court's
finding on the constitutional violation prong of qualified immunity. *See*
*Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1317 (10th
Cir. 1999) (application of "inextricably intertwined" standard for
exercising pendent jurisdiction "must be narrowly focused on those
claims the review of which would not require the consideration of legal
or factual matters distinct from those raised by the claims *over which*

44

*we unquestionably have jurisdiction*.") (emphasis added); *Valdez*, 804 F. App'x at 995 (denying city's request for exercise of pendent appellate jurisdiction which was premised on an appellate finding that no individual constitutional violation occurred as a matter of law). Because the only question appropriately before this Court is whether the law was clearly established, this Court cannot exercise pendent jurisdiction over Defendant Aurora's appeal. *See Brown v. City of Colorado Springs*, 709 F. App'x 906, 916 (10th Cir. 2017) ("When we have resolved the constitutional-violation prong of the qualified immunity analysis, we have found interrelated claims … [but] [b]ecause we decided this case based solely on clearly established law, the claims here are not inextricably intertwined and we lack pendent appellate jurisdiction."). This Court should therefore not exercise pendent jurisdiction over the denial of Aurora's summary judgment motion.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal for lack of jurisdiction. Alternatively, the Court should affirm.

45

Respectfully submitted,

s/ Elizabeth Wang
Counsel of Record for Plaintiff-
Appellee Johnathen Duran

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

## CERTIFICATE PURSUANT TO CIRCUIT RULE 31.3

The separate response briefs filed by Plaintiffs-Appellees

Jonathen Duran and Zachary Packard are necessary because the

factual circumstances and legal claims differ as to each plaintiff. Duran

and Packard were shot by different Aurora officers (Budaj and

McNamee/Serrant, respectively) at different times and at different

locations during the protest. The Plaintiffs' claims also differ slightly—

Packard, for example, has sued an Aurora supervisory officer, Serrant,

while Duran did not sue any supervisory officer. Plaintiffs also are

represented by different counsel.


s/ Elizabeth Wang
Counsel of Record for Plaintiff-
Appellee Johnathen Duran

47

## CERTIFICATE OF COMPLIANCE UNDER FRAP 32(G)

This document complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(i) because this brief contains 9,582 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface and type style requirements of FED. R. APP. P. 32(a)(5) and 32(a)(6) because it has been preparing in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century, 14-point for the body and footnotes.

s/ Elizabeth Wang
Counsel of Record for Plaintiff-
Appellee Johnathen Duran

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that, with respect to the foregoing brief:

1.     All required privacy redactions have been made;

2.     The ECF submission is an exact copy of the hard copy document that is being filed with the Court;

3.     The ECF submission has been scanned for viruses with the most recent version of the commercial virus scanning program Microsoft Defender Antivirus Security Intelligence version 1.383.569.0, and, according to the program, is free of viruses.


s/ Elizabeth Wang
Counsel of Record for Plaintiff-
Appellee Johnathen Duran

49

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to all counsel of record.

s/ Elizabeth Wang
Counsel of Record for Plaintiff-
Appellee Johnathen Duran