No. 22-1365

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ELISABETH EPPS, ET AL.

*Plaintiffs-Appellees*,

v.

CORY BUDAJ, ET AL.

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Colorado
No. 20-cv-1878 (Hon. R. Brooke Jackson)

## BRIEF FOR APPELLEE ZACHARY PACKARD

Mark Silverstein
Sara R. Neel
AMERICAN CIVIL LIBERTIES
  UNION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
T: (303) 777-5482
msilverstein@aclu-co.org
sneel@aclu-co.org

Robert Reeves Anderson
Matthew J. Douglas
Brian M. Williams
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
T: (303) 863-1000
F: (303) 863-2301
reeves.anderson@arnoldporter.com
matthew.douglas@arnoldporter.com
brian.williams@arnoldporter.com

**Oral Argument Not Requested**

February 24, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF RELATED CASES .................................................. vi

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUE............................................................4

STATEMENT OF CASE ..................................................................5

    A.    Factual Background ........................................................5

    B.    Proceedings Below..........................................................10

SUMMARY OF ARGUMENT ............................................................14

STANDARD OF REVIEW ................................................................16

ARGUMENT ................................................................................19

I.    The District Court Correctly Denied Summary Judgment on Qualified Immunity as to Officer McNamee and Sergeant Serrant. ...........................19

    A.    Officer McNamee and Sergeant Serrant violated Mr. Packard's Fourth Amendment right to be free from excessive force. .................20

        1.    The evidence supports a finding that Mr. Packard was seized when he was shot in the head and knocked unconscious. ........21

        2.    The evidence supports a finding that Officer McNamee used excessive force when he shot Mr. Packard in the head. ...........26

        3.    The evidence supports a finding that Sergeant Serrant set in motion a series of events that he knew or should have known would lead to unlawful conduct. ...............................................30

    B.    This Court's precedents clearly establish that the Aurora Officers' conduct was unlawful. ........................................................32

II.    The District Court Correctly Allowed Mr. Packard to Assert an Alternative Fourteenth Amendment Claim for Excessive Use of Force.........................40

III.    This Court Lacks Jurisdiction to Review the District Court's Denial of Summary Judgment Regarding Aurora's *Monell* Liability...........................43

CONCLUSION .............................................................................45

CERTIFICATES............................................................................46

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arnold v. Curtis*,
  359 F. App'x 43 (10th Cir. 2009) ........................................................24

*Behrens v. Pelletier*,
  516 U.S. 299 (1996) ..........................................................................4

*Brower v. Cnty. of Inyo*,
  489 U.S. 593 (1989) ..........................................................................24

*Buck v. City of Albuquerque*,
  549 F.3d 1269 (10th Cir. 2008) ...................................... 4, 13, 15, 30, 35, 36, 39

*California v. Hodari D.*,
  499 U.S. 621 (1991) ..........................................................................21

*Cnty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ..........................................................................41

*Crowson v. Washington Cnty. Utah*,
  983 F.3d 1166 (10th Cir. 2020) ...........................................................19, 43, 44

*Davis v. Clifford*,
  825 F.3d 1131 (10th Cir. 2016) ..........................................................36

*Duda v. Elder*,
  7 F.4th 899 (10th Cir. 2021) ..............................................................17

*Dundon v. Kirchmeier*,
  577 F. Supp. 3d 1007 (D.N.D. 2021)....................................................26

*Edrei v. Maguire*,
  892 F.3d 525 (2d Cir. 2018) ...............................................................42

*Est. of Booker v. Gomez*,
  745 F.3d 405 (10th Cir. 2014) ............................................................17, 30, 32

*Est. of Ceballos v. Husk*,
  919 F.3d 1204 (10th Cir. 2019) ..........................................................43

*Finch v. Rapp*,
   38 F.4th 1234 (10th Cir. 2022) ....................................................16, 20, 26, 33, 37

*Fogarty v. Gallegos*,
   523 F.3d 1147 (10th Cir. 2008) ...................... 3, 4, 13, 15, 22, 33, 34, 35, 36, 39

*Graham v. Connor*,
   490 U.S. 386 (1989).................................................................................26, 31, 43

*Havens v. Colorado Dep't of Corr.*,
   897 F.3d 1250 (10th Cir. 2018) .................................................................27, 28

*Henderson v. Glanz*,
   813 F.3d 938 (10th Cir. 2015) ........................................................................4

*Holland v. Harrington*,
   268 F.3d 1179 (10th Cir. 2001) .....................................................................32

*Irizarry v. Yehia*,
   38 F.4th 1282 (10th Cir. 2022) ......................................................................33

*Johnson v. Jones*,
   515 U.S. 304 (1995)........................................................................................2, 4

*Lewis v. Tripp*,
   604 F.3d 1221 (10th Cir. 2010) .................................................................17, 19

*Lowery v. Cnty. of Riley*,
   522 F.3d 1086 (10th Cir. 2008) .....................................................................26

*Lynch v. Barrett*,
   703 F.3d 1153 (10th Cir. 2013) .....................................................................44

*Mahdi v. Salt Lake Police Dep't*,
   54 F.4th 1232 (10th Cir. 2022) ......................................................................41

*Moore v. City of Wynnewood*,
   57 F.3d 924 (10th Cir. 1995) .........................................................................43

*Mullenix v. Luna*,
   577 U.S. 7 (2015)............................................................................................33

*Nelson v. City of Davis*,
685 F.3d 867 (9th Cir. 2012) ................................................................24

*Porro v. Barnes*,
624 F.3d 1322 (10th Cir. 2010) ...........................................................42

*Ralston v. Cannon*,
884 F.3d 1060 (10th Cir. 2018) ..............................................................4

*Reavis v. Frost*,
967 F.3d 978 (10th Cir. 2020) ..............................................................33

*Roosevelt-Hennix v. Prickett*,
717 F.3d 751 (10th Cir. 2013) ....................................................2, 4, 17

*Roska v. Peterson*,
328 F.3d 1230 (10th Cir. 2003) ...............................................20, 25, 41

*Sawyers v. Norton*,
962 F.3d 1270 (10th Cir. 2020) .................................................3, 16, 37

*Serna v. CDOC*,
455 F.3d 1146 (10th Cir. 2006) ...........................................................32

*St. George v. City of Lakewood*,
No. 20-1259, 2021 WL 3700918 (10th Cir. Aug. 20, 2021) ..............26

*Tenorio v. Pitzer*,
802 F.3d 1160 (10th Cir. 2015) ...........................................................39

*Terry v. Ohio*,
392 U.S. 1 (1968) .................................................................................25

*Torres v. Madrid*,
141 S. Ct. 989 (2021) .....................................................................21, 24

*Torres v. Madrid*,
No. 22-2001, 2023 WL 2053910 (10th Cir. Feb. 17, 2023) ..............29

*Trujillo v. Goodman*,
825 F.2d 1453 (10th Cir. 1987) ...........................................................42

*United States v. Lanier*,
    520 U.S. 259 (1997)...............................................................40

*United States v. Mendenhall*,
    446 U.S. 544 (1980)...............................................................25

**Statutes**

28 U.S.C. § 1331 ......................................................................2

**Other Authorities**

Rosalie Berger Levinson, *Time to Bury the Shocks the Conscience Test*,
    13 Chap. L. Rev. 307 (2010) ..............................................42

## STATEMENT OF RELATED CASES

There are no prior or related appeals in this matter.

## INTRODUCTION

On May 31, 2020, Zach Packard was peacefully exercising his First Amendment right to protest against police violence following the death of George Floyd. Minutes after Mr. Packard joined other protestors in Denver, Colorado, Aurora Officer David McNamee—at the verbal direction of Sergeant Patricio Serrant—aimed and fired his shotgun at Mr. Packard, hitting him in the head with a Kevlar bag filled with lead pellets. The blow to Mr. Packard's temple immediately knocked him unconscious, fractured his skull, broke two discs in his neck, and caused brain bleeding. As Mr. Packard lay immobile in the gutter, police officers did nothing to aid him. The horrifying event was captured on camera from multiple vantage points, including by Officer McNamee's body-worn camera. Mr. Packard was hospitalized for four days.

In this § 1983 case, the district court correctly denied the Aurora defendants' motion for summary judgment on Mr. Packard's excessive-force claims, finding that Mr. Packard posed no threat, had committed no crime, and was not fleeing arrest at the time he was shot by Officer McNamee. Those factual findings, which are supported by extensive record evidence that Aurora continues to ignore on appeal, are unreviewable in the context of this interlocutory appeal on qualified immunity.

In its opening brief, Aurora raises arguments that are forfeited, factually baseless, legally meritless, or all three. After months of discovery, which included

1

review of thousands of hours of video footage, Mr. Packard identified the specific officers personally responsible for violating his constitutional rights. Neither of those officers is entitled to qualified immunity under clearly established circuit precedent. Finally, assuming the Court even has jurisdiction to decide the City's bootstrapped appeal regarding Mr. Packard's municipal liability claims, the district court did not err in allowing those claims to proceed to trial. This Court should affirm the well-reasoned decision below.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331. On September 23, 2022, the district court denied defendant-appellants' motion for summary judgment in part. Aurora's Addendum ("Add.") 21.[1] Appellants timely filed a notice of appeal on October 24, 2022.

"Orders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291." *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013). Under the collateral-order doctrine, however, this Court has jurisdiction to review a government official's appeal from a denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves "neat abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995). When

---

[1] Aurora's Addendum contains only the district court's order. Thus, all citations to the addendum refer to the opinion below.

reviewing the denial of qualified immunity at summary judgment, this Court "lacks jurisdiction at this stage to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Sawyers v. Norton*, 962 F.3d 1270, 1281 (10th Cir. 2020). "Those facts explicitly found by the district court, combined with those that it likely assumed, … form the universe of facts upon which [appellate courts] base [their] legal review of whether defendants are entitled to qualified immunity." *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008).

Appellants' opening brief disregards these strict limitations on the Court's jurisdiction under the collateral-order doctrine. The opening brief directly disputes the district court's findings.[2] And the legal issues presented rely on *appellants'* version of disputed material facts—turning the summary judgment standard on its

---

[2] *Compare, e.g.*, Aurora Br. 21 ("The record in this case does not provide any evidence that the Aurora Officers engaged in an intentional effort to apply force to Plaintiffs Packard or Duran, and there has therefore been no seizure here."), *with* Add. 12 ("Though defendants insist that there is no proof of such an intent for either officer, the fact is that there is evidence (that I have outlined in the sections above) that these officers fired munitions in the direction of Messrs. Packard and Duran and evidence that Messrs. Packard and Duran were hit with these munitions. A reasonable juror could (but certainly does not have to) infer from these facts that Officer McNamee shot Mr. Packard intentionally, and Officer Budaj shot Mr. Duran intentionally."); *compare also* Aurora Br. 22–23 ("Put directly, the record contains no evidence that any Aurora Officer intentionally targeted Plaintiff Packard or Plaintiff Duran, nor any evidence that they were directed to do so by Sergeant Serrant."), *with* Add. 13 ("[Sergeant Serrant] instructed officers to use substantial force against protesters ….").

head. This Court's jurisdiction over whether the law was clearly established extends only "when the defendant does not dispute the facts alleged by the plaintiff and raises only legal challenges to the denial of qualified immunity based on those facts." *Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015). Where, as here, an opening brief "dispute[s] the facts [the] district court determines a reasonable juror could find" and does not raise pure "legal challenges to the denial of qualified immunity based on those facts," *Ralston v. Cannon*, 884 F.3d 1060, 1067 (10th Cir. 2018), this Court lacks jurisdiction over the appeal.[3]

## STATEMENT OF THE ISSUE

In *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), and *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), this Court held that a police officer violates the U.S. Constitution when he shoots a protestor with so-called less-lethal munitions when the protester poses no threat to officers (or others), has committed no crime more serious than a misdemeanor, and is not fleeing arrest. Doing so, this

---

[3] Appellants cannot skirt this careful jurisdictional balance simply by arguing that "no evidence" supports the district court's findings. *See* Aurora Br. 6–7, 21, 22–23. "[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). "[T]his court has no interlocutory jurisdiction to review whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Roosevelt-Hennix*, 717 F.3d at 753 (citing *Johnson*, 515 U.S. at 320).

4

Court held, violates a protester's clearly established Fourth Amendment right to be free from unreasonable seizures constituting excessive force.

The question presented in this appeal is whether the district court properly denied summary judgment on qualified immunity based on the district court's determination that the evidence supports a finding that the Aurora Officers personally participated in the intentional shooting of Mr. Packard under circumstances that were objectively unreasonable in violation of clearly established law. If the Court affirms the district court's ruling that Mr. Packard presented sufficient evidence of a constitutional violation, the City of Aurora's pendant appeal on municipal liability necessarily fails.

## STATEMENT OF CASE

### A.    Factual Background[4]

On May 25, 2020, a 46-year-old Black man named George Floyd died after a Minneapolis police officer placed his knee and the weight of his body on Mr. Floyd's neck for eight minutes and forty-six seconds. Within days, millions of people around the world mobilized to mourn Mr. Floyd's death and protest against police brutality.

---

[4] The opening brief's "Statement of Facts" draws almost exclusively from appellants' self-serving description of facts in their summary judgment motion below. Aurora Br. 4–7. Mr. Packard disputed Aurora's "facts" and introduced counterstatements of fact in opposition. App. Vol. II at 415–16. This Court is required to accept the factual findings of the district court; for all other facts, the Court must view the evidence and reasonable inferences drawn therefrom in the light most favorable to Mr. Packard, the non-movant below.

In Denver, the protests began on May 28 and continued until June 2. Add. 2. As the number of protestors grew, the City of Denver requested that neighboring mutual-aid jurisdictions, including the Aurora Police Department (APD), send additional officers to help police the crowds. *Id.* Officers McNamee and Serrant were among the APD officers that assisted Denver in policing the protests. *Id.* at 3.

Zach Packard joined the protests in downtown Denver on May 31 near the intersection of Washington and Colfax Avenues. *Id.* at 2. Mr. Packard arrived around 9 p.m. *Id.* At that time, a group of protesters had gathered near the intersection, several of whom were sitting cross-legged in front of a line of officers. Another protester near the middle of the intersection can be seen holding his hands in the air.



App. Vol. III at 611.

Shortly after Mr. Packard arrived, an unidentified police officer launched a teargas canister—without warning or provocation—toward the assembled and stationary crowd of protestors, which included Mr. Packard. Add. 2. Mr. Packard instinctively kicked the canister away from himself and other protesters. *Id*. The canister traveled about five to ten feet into the middle of the street, generally in the direction of a line of officers equipped with gas masks. *See id.* at 2, 14. The canister stopped at least 20 feet short of the officers on the other side of the street. App. Vol. VII at 1711, Ex. 13 (conventionally submitted video), available at <u>bit.ly/3YZx9hz</u>.[5]

Immediately after Mr. Packard kicked the canister, he was shot in the head by a lead-filled Kevlar bag fired from a police shotgun. Add. 2 & n.1.[6] Mr. Packard was instantly rendered unconscious and fell to the concrete with a fractured skull and broken neck. *See id.* at 2; App. Vol. III at 614–15. While he was lying motionless in the gutter, a police officer shot another round that hit Mr. Packard's right shoulder.

---

[5] Exhibits 4, 13, 15, 17, 19, 21, 23, 27, 30–35, and 47 are videos that were conventionally submitted to the district court and conventionally submitted to this Court on flash drives as part of Aurora's Appendix on January 19, 2023.

[6] On appeal, Aurora refuses to acknowledge that Mr. Packard was struck by a lead-filled Kevlar shotgun round (what Aurora's brief euphemistically calls a "sock," Aurora Br. 4), admitting only that Mr. Packard "was hit in his right temple area *by an unknown object*." *Id*. at 4 (emphasis added). Aurora is free to feign ignorance, but the district court found that Mr. Packard was struck by a shotgun round. Add. 2. The Court must accept that factual finding as true for purposes of this appeal.

App. Vol. III at 608. A photographer standing nearby happened to capture still images of Mr. Packard's unconscious body collapsing onto the pavement.







App. Vol. III at 637–40. Bystanders dragged Mr. Packard's body away from the police assault. *Id.* at 604. Police officers on the scene took no action whatsoever to assist Mr. Packard. *Id.* at 606.

Mr. Packard suffered "significant" injuries. Add. 2. The shotgun round fractured his skull, broke two discs in his neck, and caused brain bleeding. App. Vol. III at 614–15. Mr. Packard spent four days recovering in the hospital. *Id.* at 615.

8

 

*Id.* at 630–31.

At the moment Mr. Packard was shot, Officer McNamee was among the line of Aurora officers on the opposite side of the street, facing Mr. Packard. Add. 4. Moments earlier, Sergeant Serrant instructed officers on that line, "[i]f they start kicking that shit [*i.e.*, the teargas canisters], go ahead and frickin' hit 'em." *Id.* at 3. Officer McNamee was standing near Sergeant Serrant when he gave that order, which can be heard on Officer McNamee's body-worn camera. *Id.*; App. Vol. VII at 1711, Ex. 17 at 21:12:00–21:12:03,[7] available at <u>bit.ly/3YZFp13</u>.[8] As can be seen in the video, the officers were equipped in riot gear, including gas masks. *Id.*

---

[7] Pincites correlate to the time stamp in the upper left-hand corner of the body-worn camera video.

[8] The video at this YouTube link is an excerpt of Exhibit 17, Officer McNamee's body-worn camera.

While the Aurora defendants have steadfastly refused to admit who shot Mr. Packard, a painstaking review of available video footage—coordinated and triangulated to the moment when Mr. Packard was shot—reveals Officer McNamee as the shooter. The identification was facilitated by a loud siren, audible in multiple videos, blaring for approximately eight seconds before Mr. Packard was shot. Add. 4–5. Using that siren as a common marker, the district court was able to compare the visual and auditory blasts from Officer McNamee's shotgun with the moment Mr. Packard was shot. *See id.* Mr. Packard was struck by a shotgun round two to three seconds after the siren stopped. *See id.* at 5. Officer McNamee fired three shotgun rounds two to three seconds after the same siren stops. *Id.; compare* App. Vol. VII at 1711, Ex. 13, *with id.*, Ex. 17 at 21:12:00–21:12:13. Officer McNamee was the only officer firing less-lethal shotgun rounds at Colfax and Washington when Mr. Packard was shot. App. Vol. VII at 1711, Ex. 17 at 21:12:00–21:12:13; *id.*, Ex. 15 at 21:12:28–21:12:41. Officer McNamee admitted in his use-of-force report that he shot protestors with less-lethal shotgun rounds if they touched teargas canisters. App. Vol. II at 302.

### B.    Proceedings Below

On June 25, 2020, Mr. Packard and six other peaceful protestors (referred to below as the "Epps Plaintiffs") sued the City and County of Denver and unidentified police officers under 42 U.S.C. § 1983 for violating their First, Fourth, and

Fourteenth Amendment rights. App. Vol. I at 31. The district court subsequently consolidated the Epps lawsuit with claims brought by other protestors, including appellee Johnathen Duran (referred to below as the "Fitouri Plaintiffs"). *Id.* at 34. In October 2021, following discovery, Zach Packard amended his complaint to add claims against the City of Aurora, Sergeant Patricio Serrant, and Officer David McNamee. *Id.* at 49.

Two months before trial, the Denver and Aurora defendants moved to bifurcate the trial. *Id.* at 56. The district court granted the motion and continued the trial date as to Aurora and its officers. Appellees' Joint Supplemental Appendix ("Supp. App.") at 10. The Epps and Fitouri claims against the Denver defendants were tried before a jury from March 7 to March 24, 2022. App. Vol. I at 62–64.

At the end of the three-week trial, the jury rendered a unanimous verdict in favor of all 12 plaintiffs, awarding $14 million. Supp. App. at 85–93. As to Mr. Packard, the jury specifically found that an officer "from a mutual aid jurisdiction violated [Mr. Packard's] constitutional rights" under the First and Fourth Amendments. *Id.* at 263–264.

After the Denver trial, the district court set a briefing schedule on Aurora's motion for summary judgment. App. Vol. I at 68. Aurora moved for summary judgment on Mr. Packard's First Amendment retaliation claim and his

11

Fourth/Fourteenth Amendment excessive force claims, as well as Mr. Packard's municipal-liability claims against the City of Aurora. *Id.* at 165–75.

In a careful order, the district court granted the Aurora defendants' motion for summary judgment in part and denied the motion in part. Specifically, the district court granted summary judgment for appellants on Mr. Packard's First Amendment retaliation claim and his claims against Sergeant Brukbacher, an Aurora officer who directed others to fire less-lethal weapons on any protestor who touched teargas canisters. Add. 5–8.[9]

The district court denied summary judgment on Mr. Packard's Fourth and Fourteenth Amendment excessive-force claims against Officer McNamee, Sergeant Serrant, and the City of Aurora. As to Mr. Packard's Fourth Amendment claim, the district court rejected the argument that Mr. Packard had not been "seized." *Id.* at 11–12. The court held that the evidence raised a genuine dispute of material fact regarding whether Officer McNamee intentionally shot Mr. Packard. *Id.* at 12. The court also held that Sergeant Serrant was not entitled to summary judgment because he "knew or should have known that instructing his officers to fire without regard to the *Graham* factors, and instead based only on whether a protester kicked a gas canister, would violate protesters' right to be free from excessive force." *Id.* at 13.

---

[9] The disposition of those claims, which have not been reduced to a final judgment, is not the subject of this appeal.

The court denied summary judgment on Mr. Packard's Fourteenth Amendment claim, holding that Mr. Packard is entitled to pursue relief under this alternative theory to the extent his excessive-force claim is not governed by Fourth Amendment standards. *See id.* at 11.

The court next held that neither Sergeant Serrant nor Officer McNamee was entitled to qualified immunity. *Id.* at 13–15. Citing *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), and *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), the court ruled that "[t]he law is clearly established that an officer cannot shoot a protester with pepper balls or other less-lethal munitions when that protester is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee." *Id.* at 14. Because the court found that "[n]o reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers" based on the court's review of the evidence and reasonable inferences drawn therefrom, the court rejected the officers' assertion of qualified immunity. *Id.* at 14–15.

Finally, the district court denied summary judgment on plaintiffs' *Monell* claims. *Id.* at 15–21. The court ruled that Mr. Packard had raised a genuine dispute of material fact regarding whether Aurora's policies and customs caused his injuries, as well as whether Aurora failed to train its officers. *Id.* at 17–19. The court ruled that a reasonable jury could find that "[t]he vagueness" in Aurora's policies

regarding the use of less-lethal force "could lead to confusion on when such force is warranted," *id.* at 18, and that Aurora "had actual and constructive notice that its failure to train on use-of-force was likely to result in constitutional violations," *id.* at 19.

## SUMMARY OF ARGUMENT

**I.** The district court correctly held that neither Sergeant Serrant nor Officer McNamee is entitled to qualified immunity. As to the first prong of the qualified immunity analysis, the district court rightly concluded that the officers violated Mr. Packard's right to be free from excessive force, including that Mr. Packard was "seized" within the meaning of the Fourth Amendment. At Sergeant Serrant's instruction, Officer McNamee fired three lead-filled Kevlar bags at Mr. Packard— striking him in the head and knocking him unconscious. By applying physical force to Mr. Packard's body with the intent to restrain, leaving Mr. Packard immobilized on the ground, Officer McNamee indisputably "seized" Mr. Packard.

The use of force applied to effect that seizure was unreasonable. The district court found as a factual matter, based on the summary judgment record, that Mr. Packard posed no immediate threat to any officer, had committed no crime, and was not fleeing arrest. Accepting those facts as true for purposes of this appeal, as the Court must, Officer McNamee's use of potentially deadly force was grossly excessive and violated Mr. Packard's Fourth and Fourteenth Amendment rights.

As to qualified immunity's second prong, every reasonable officer would have known that shooting Mr. Packard in the head under those circumstances violated his constitutional rights. It has been clearly established since at least 2008 that police may not fire less-lethal munitions at protesters who pose no threat to officers (or others), have committed no crime more serious than a misdemeanor, and who are not fleeing arrest. *Buck*, 549 F.3d at 1291; *Fogarty*, 523 F.3d at 1159–62. Accordingly, neither officer is entitled to qualified immunity.

**II.**  The district court correctly allowed Mr. Packard to maintain an alternative excessive-force claim under the Fourteenth Amendment. Aurora has steadfastly argued that Mr. Packard cannot prevail on his Fourth Amendment claim because (Aurora contends) Mr. Packard was not "seized" for Fourth Amendment purposes when Officer McNamee shot him in the head, fractured his skull, and rendered him unconscious. Although Aurora's seizure position is meritless, Mr. Packard asserted a Fourteenth Amendment claim to guard against the possibility that a jury would conclude that no seizure occurred. This Court's precedent expressly allows a plaintiff to proceed on these alternative claims under these circumstances.

**III.**  If this Court agrees with the district court on step one of the qualified immunity analysis (whether the evidence, taken in the light most favorable to Mr. Packard, presents genuine questions of material fact as to whether Mr. Packard's constitutional rights were violated), then this Court lacks pendent jurisdiction over

the City of Aurora's appeal of the district court's *Monell* ruling. That is because resolution of the qualified immunity question would have no bearing on Aurora's municipal-liability appeal. If the Court reaches that issue, it should affirm the district court's order allowing those claims to proceed to trial.

## STANDARD OF REVIEW

On an interlocutory appeal of the denial of qualified immunity, this Court can review "only questions of law"; it is "not at liberty" to review the district court's factual findings. *Finch v. Rapp*, 38 F.4th 1234, 1240 (10th Cir. 2022). Specifically, in an excessive-force claim like this one, the Court cannot review the district court's finding that the plaintiff was "unthreatening." *Id.* at 1238 ("The district court held that a reasonable jury could find that Finch was unarmed and unthreatening. We are bound by those findings for the purposes of this appeal.").

The Court's review on interlocutory appeal is limited to legal questions about whether the Aurora officers are entitled to qualified immunity, construing the evidence and all reasonable inferences drawn therefrom in the light most favorable to Mr. Packard. *Id.*; *see also Sawyers*, 962 F.3d at 1281 ("The district court's factual findings and reasonable assumptions comprise the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity."). That inquiry entails determining "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether

that law was clearly established at the time of the alleged violation." *Roosevelt-Hennix*, 717 F.3d at 753.

Aurora invokes two exceptions to the established rule that "if a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff …. [this Court] usually must take them as true—and do so even if our own *de novo* review of the record might suggest otherwise as a matter of law." *Est. of Booker v. Gomez*, 745 F.3d 405, 409–10 (10th Cir. 2014). This Court may review the factual record de novo if (1) "the district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record," or (2) "the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record." *Duda v. Elder*, 7 F.4th 899, 910 n.5 (10th Cir. 2021) (quoting *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)). Aurora never explains how or why those exceptions apply here. As such, Aurora has abandoned its position by failing to adequately substantiate its argument in its opening brief. In any event, neither exception applies.

First, the district court identified the facts that a reasonable jury could find in support of Mr. Packard's claims against both individual officers. As for Officer McNamee, the district court detailed evidence that "Officer McNamee was standing in the line of officers opposite Mr. Packard when he was shot"; "Officer McNamee fired three beanbag rounds two to three seconds after a siren stopped"; and

"Mr. Packard was hit with a beanbag round between two and three seconds after what appears to be the same siren stopped." Add. 4–5. The district court further found that "[n]o reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers." *Id.* at 14. As the court explained, "kick[ing] a gas canister between five and ten feet away from the protesters and roughly in the direction of the officers … did not pose an immediate threat" to officers who "were equipped with gas masks that protected them from any gas from that canister." *Id.* The district court also found that the shotgun round "knocked [Mr. Packard] unconscious" and "caused significant injuries." *Id.* at 2.

As for Sergeant Serrant, the district court found that he instructed officers on the line facing Mr. Packard, "[i]f they start kicking that shit, go ahead and frickin' hit 'em." *Id.* at 3, 5. The court explained that "as a sergeant," Serrant "gave orders that inferior officers were supposed to obey." *Id.* at 5. The court further found that Sergeant Serrant "instructed officers to use substantial force against protesters without regard to whether those protesters were committing a severe crime, posed an immediate threat to officers or others, or were actively evading arrest, the factors that officers must consider in determining whether force is warranted." *Id.* at 13; *see also id.* ("Not every kick of a gas canister will pose an immediate threat to officers or others, be a severe crime, or evince the resisting of arrest."). Thus, because the court "set forth with specificity the facts—the who, what, when, where, and why—

18

that a reasonable jury could infer from the evidence presented by the parties," this Court cannot look beyond the district court's clear factual findings. *Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010).

Second, none of the district court's findings is blatantly contradicted by the record—far from it. The blatant-contradiction exception is "very difficult" to satisfy and applies only when the district court's findings constitute "visible fiction." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1177 (10th Cir. 2020) (cleaned up). Aurora never identifies which particular finding is contradicted by the record, preventing Mr. Packard from meaningfully responding. To the extent Aurora argues that the record "contains no evidence" for the district court's various findings, *see, e.g.*, Aurora Br. 21, 22, 25, it is *Aurora's* position that is blatantly contradicted: the district court's order cites to the record throughout and supports each finding, *see* Add. 2–3, 4–5, 11–15.

## ARGUMENT

### I. The District Court Correctly Denied Summary Judgment on Qualified Immunity as to Officer McNamee and Sergeant Serrant.

While Mr. Packard was peacefully protesting, Officer McNamee shot him in the head with a Kevlar bag filled with lead pellets fired from a shotgun—knocking Mr. Packard unconscious and fracturing his skull—after Sergeant Serrant instructed officers to "hit" any protesters that touched a gas canister. The district court found that when Mr. Packard was shot, he posed no threat to anyone, he had committed no

crime, and he was not fleeing arrest. The use of force was objectively unreasonable under the circumstances and violated Mr. Packard's Fourth Amendment right to be free from excessive force—in this case, the use of potentially deadly force.

That constitutional right has been clearly established for more than a decade. In 2008, this Court twice held that an officer violates a protester's clearly established right to be free from excessive force by shooting them with a so-called "less-lethal" projectile under strikingly similar circumstances to the facts in this case. Because every reasonable officer would have known that shooting Mr. Packard in the head under these circumstances violated his clearly established rights, neither officer is entitled to qualified immunity.

### A. Officer McNamee and Sergeant Serrant violated Mr. Packard's Fourth Amendment right to be free from excessive force.

The Fourth Amendment prohibits state and federal police officers from making unreasonable seizures. *Finch*, 38 F.4th at 1241. The Aurora defendants moved for summary judgment on the basis that there was "no evidence" that Mr. Packard was "seized" within the meaning of the Fourth Amendment. The Aurora defendants did *not* argue below that the officers' conduct was reasonable (likely because Sergeant Serrant has admitted it wasn't). Thus, to avoid summary judgment on this claim, Mr. Packard was required to present evidence from which a reasonable juror could find "that a seizure occurred," when considering the evidence in the light most favorable to Mr. Packard. *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir.

2003). On appeal, Aurora now also argues that the use of force of Mr. Packard *was* reasonable. That argument is forfeited, and it is wrong in any event. The district court rightly concluded that Mr. Packard's excessive-force claims survive summary judgment.

### 1.     The evidence supports a finding that Mr. Packard was seized when he was shot in the head and knocked unconscious.

The district court correctly found that Mr. Packard presented evidence from which a reasonable jury could conclude that Officer McNamee shot in Mr. Packard's direction, that Mr. Packard was hit by one or more rounds from Officer McNamee's shotgun, that Officer McNamee shot him intentionally, and that the assault rendered Mr. Packard unconscious and immobile. Add. 2, 12. Those factual findings, which are unreviewable in this interlocutory appeal (and are robustly supported by the record in any event), establish that Mr. Packard was seized for purposes of the Fourth Amendment.

"The application of physical force to the body of a person with intent to restrain is a seizure." *Torres v. Madrid*, 141 S. Ct. 989, 994 (2021); *accord California v. Hodari D.*, 499 U.S. 621, 626–27, 628 (1991). "[B]rief seizures are seizures all the same" and, absent submission, "last[] only as long as the application of force." *Torres*, 141 S. Ct. at 999. Even a "mere touch can be enough for a seizure." *Id.* It makes no difference that an officer "used force from a distance," because "the

required … touching [of] the defendant's body can be as readily accomplished by a bullet"—or a less-lethal shotgun round—"as by the end of a finger." *Id.* at 998.

Here, the district court correctly held that a reasonable jury could conclude that Officer McNamee applied physical force to Mr. Packard's body with the intent to restrain when he shot Mr. Packard in the head with a less-lethal shotgun round, which immediately knocked him unconscious. Add. 2, 4, 5, 12. Aurora nevertheless argues that "the record in this case does not provide any evidence that the Aurora Officers engaged in an intentional effort to apply force to Plaintiff[] Packard …, and there has therefore been no seizure here." Aurora Br. 21. That assertion is foreclosed by the district court's unreviewable factual findings, which are supported by ample record evidence in any event. *Fogarty*, 523 F.3d at 1154 ("[W]e are not at liberty to review a district court's factual conclusions.").[10]

The district court relied on extensive evidence, including video footage, from which a reasonable jury could conclude that Officer McNamee aimed, fired at, and shot Mr. Packard in the head intentionally. The district court cited Officer McNamee's body-worn camera footage to find that Officer McNamee "was standing

---

[10] Aurora's opening brief does not challenge the district court's factual finding that Officer McNamee and Sergeant Serrant "were personally involved" in the violation of Mr. Packard's rights. Aurora Br. 8 (conceding that this "finding is not a subject of the appeal"). Having conceded the personal involvement of both officers, Aurora's argument is limited to whether Officer McNamee "intentionally targeted" Mr. Packard. *Id*. at 22.

in the line of officers opposite Mr. Packard when he was shot." Add. 4 (citing Exhibit 17); App. Vol. II at 428 (identifying Exhibit 17 as Officer McNamee's body-worn camera, sometimes referred to below as "BWC"). The district court also cited Officer McNamee's body-worn camera and other video footage to find that Officer McNamee fired three less-lethal shotgun rounds two to three seconds after a siren stopped blaring—the exact moment that Mr. Packard was shot, as shown in a second video angle. Add. 4–5 (citing Exhibits 17 and 13).

Indeed, Officer McNamee was following instructions to target Mr. Packard specifically, which further bolsters a finding of intentional targeting. "Just before Mr. Packard was shot," Sergeant Serrant can be heard on Officer McNamee's body-worn camera footage instructing officers to "hit" protesters who "kick" gas canisters. Add. 3, 5; *see also* Aurora Br. 21, 24–25 (admitting that Sergeant Serrant instructed officers to "engage"—i.e., shoot—anyone "interfering with gas canisters"). Facing the side of the street where Mr. Packard was standing, Officer McNamee fired three shotgun rounds in Mr. Packard's direction immediately after Mr. Packard kicked a teargas canister away from himself and into the middle of the street. Add. 4–5. Officer McNamee admitted in his use-of-force report that he shot protestors with less-lethal shotgun rounds if they touched teargas canisters. App. Vol. II at 302.

Based on that evidence, the district court concluded that "[a] reasonable juror could (but certainly does not have to) infer from these facts that Officer McNamee

23

shot Mr. Packard intentionally." *Id.* at 12. As the district court recognized, it is "the jury's job" to resolve fact disputes about intentionality. *Arnold v. Curtis*, 359 F. App'x 43, 48 (10th Cir. 2009).

While the district court's identification of this disputed material fact is sufficient to dispose of Aurora's arguments on appeal, it bears emphasizing that, as a legal matter, the intentionality requirement does not turn on the accuracy of an officer's aim. The intentional application of physical force means that the force is purposefully applied, which contrasts with an accidental or negligent use of force. *Torres*, 141 S. Ct. at 998. Aurora does not argue (nor has it ever argued, *see* Add. 12) that Officer McNamee accidentally or negligently fired his shotgun. Officer McNamee therefore "purposefully applied" the force that injured Mr. Packard when he pulled the trigger. As the Supreme Court has explained, a "seizure occurs even when an unintended person or thing is the object of the detention or taking," so long as "the detention or taking itself [is] willful." *Brower v. Cnty. of Inyo*, 489 U.S.593, 597 (1989); *see also Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012) (holding that plaintiff had been seized under the Fourth Amendment when he was struck by a less-lethal round even though officers had allegedly intended to shoot above his head because "[r]egardless of whether [Plaintiff] was the specific object of governmental force, he and his fellow students were the undifferentiated objects of shots intentionally fired by the officers in the direction of that group").

24

On appeal, Aurora raises a new argument, contending for the first time that no seizure occurred because Mr. Packard purportedly was "free [to] leave" after being shot in the head, since he was never encircled by officers. Aurora Br. 22. Even if this new "restraint" argument were not forfeited, it is baseless. A reasonable juror could conclude that the act of firing a shotgun at a person's head and hitting them in the temple with a lead-filled Kevlar bag reflects an "intent to restrain" that person's freedom of movement. Indeed, it is hard to reach any *other* conclusion.

To the extent Aurora argues that Mr. Packard was not legally "restrained" when he was shot in the head, that is nonsense. Mr. Packard was immediately knocked unconscious by Officer McNamee's lead "sock" and crumpled to the ground. Add. 2. No officer had to stand over Mr. Packard's limp and unconscious body to "restrain" him further. As the Supreme Court held in *Terry v. Ohio*, a seizure occurs "whenever a police officer accosts an individual and *restrains his freedom to walk away*." 392 U.S. 1, 16 (1968) (emphasis added). Mr. Packard could not walk at all, much less walk away. The Fourth Amendment thus applies because Officer McNamee restricted Mr. Packard's "freedom of movement" "by means of physical force or a show of authority," such that "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Roska*, 328 F.3d at 1243 (same).

In this light, the only case cited by the Aurora defendants for this point—*Dundon v. Kirchmeier*, 577 F. Supp. 3d 1007, 1017 (D.N.D. 2021)—supports Mr. Packard's position. In *Dundon*, the court concluded that protesters exposed to less-lethal munitions had not been seized because they "moved freely … in the area after force was used against them," they rushed towards officers "in the face of force," and they "even return[ed] to the area after force was used upon them." 577 F. Supp. 3d at 1041. In contrast, Mr. Packard lay unconscious on the ground after force was used against him and spent the next four days in the hospital.

> **2.    The evidence supports a finding that Officer McNamee used excessive force when he shot Mr. Packard in the head.**

Courts analyze excessive-force claims under the Fourth Amendment's "reasonableness standard," *Graham v. Connor*, 490 U.S. 386, 395 (1989), asking "whether the police employed objectively reasonable force given the totality of the circumstances," *Finch*, 38 F.4th at 1241. *Graham* identified three factors a court should consider when evaluating an excessive-force claim: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The objective-reasonableness test is a "highly fact-dependent inquiry," *St. George v. City of Lakewood*, No. 20-1259, 2021 WL 3700918, at *4 (10th Cir. Aug. 20, 2021), and the district court's identification of disputed material facts is not subject to review on interlocutory appeal. *Lowery v.*

*Cnty. of Riley*, 522 F.3d 1086, 1091 (10th Cir. 2008) ("We do not have jurisdiction to resolve disputed issues of fact and have therefore observed that a defendant may not appeal the sufficiency—as opposed to the legal significance—of the plaintiff's evidence.").

In the district court, neither Officer McNamee nor Sergeant Serrant disputed in their motion for summary judgment that the force used was excessive. *See* App. Vol. I at 170–71, Vol. VII at 1721. That argument is thus forfeited. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1259 (10th Cir. 2018) ("We ordinarily deem arguments that litigants fail to present before the district court but then subsequently urge on appeal to be forfeited.").

But even if the Court were to consider the *Graham* factors in the first instance, Officer McNamee used grossly excessive force when he shot Mr. Packard in the head. Mr. Packard was not resisting or evading arrest, nor had he committed any crime when Officer McNamee shot him. While Aurora vaguely accuses Mr. Packard of "unlawful conduct" for kicking a gas canister away from himself and fellow protestors, Aurora has never identified what law Mr. Packard allegedly broke. The district court specifically found that "[n]o reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers," Add. 14—and certainly not a threat that warranted the use of deadly force. The canister that Mr.

27

Packard kicked traveled only five to ten feet into the street; it posed no threat to officers in full riot gear at least 20 feet away. *Id.*

On appeal, Officer McNamee raises a new argument related to the second *Graham* factor, asserting that his conduct was "objectively reasonable" because, in the context of a "crowd control and mass demonstration scenario[]," it "was a practical impossibility for the Aurora Officers here to assess an individualized threat in the circumstances presented to them." Aurora Br. 23. In support, Officer McNamee cites to evidence relating to *other* locations, *other* protesters, and *other* officers. *See id.* at 5, 24 (citing various police accounts that were disputed below).[11]

That argument is too late (*see Havens*, 897 F.3d at 1259) and too little. Whether the force Officer McNamee used was excessive must be assessed based on the particular context in which the force was used, *i.e.*, the moments leading up to when he shot Mr. Packard. In the context of analyzing the reasonableness of an officer's use of force, circumstances that change over the course of mere seconds

---

[11] Aurora offers a 35-part record string cite to characterize the protests as "dangerous" and involving "widespread looting and destruction." Aurora Br. 24. Those citations are all chaff and no wheat. Two citations relate to different days of the protest. App. Vol. II at 288, 300. Another 10 sources relate to locations away from where Mr. Packard was shot or do not specify a location at all. *Id.* at 249, 256, 267, 283, 298, 319, 325, 330, 332, and 334. Of the remaining reports that mention Colfax and Washington, none details the moments leading up to Officer McNamee shooting Mr. Packard—the only moments that matter for purposes of this fact-bound qualified immunity analysis.

can make a difference: this Court has "repeatedly recognized that a reasonable use of force—such as when an officer is subject to a direct physical threat—may become unreasonable *even seconds later* when force persists after the threat has passed. *Torres v. Madrid*, No. 22-2001, 2023 WL 2053910, at *3 (10th Cir. Feb. 17, 2023) (emphasis added).

Officer McNamee identifies no evidence—much less *conclusive* evidence of an undisputed fact sufficient to warrant summary judgment—that he was unable to assess individualized threats when he shot Mr. Packard. Indeed, the video evidence contradicts Officer McNamee's description of the scene as a riotous mob. Shortly before he shot Mr. Packard in the head, Officer McNamee's body-worn camera shows several protesters sitting cross-legged on the ground in front of the officers and other protesters gathered across the street, many of whom are simply holding signs. *See* App. Vol. VII at 1711, Exhibit 17 at 21:11:15–21:11:45. Under those circumstances, Officer McNamee's decision to shoot Mr. Packard in the head was overwhelmingly disproportionate and violated Mr. Packard's right to be free from excessive force. At a minimum, though, this factor is unsuitable for disposition at summary judgment in light of highly contested (and highly contextual) disputes of material fact.

### 3. The evidence supports a finding that Sergeant Serrant set in motion a series of events that he knew or should have known would lead to unlawful conduct.

To avoid summary judgment on his claim against Sergeant Serrant, Mr. Packard was required to present evidence showing "an affirmative link between the supervisor and the constitutional violation." *Est. of Booker*, 745 F.3d at 435. That required evidence establishing Sergeant Serrant's "(1) personal involvement; (2) causation; and (3) state of mind." *Id.* Aurora challenges only the second element, causation. Aurora Br. 24–25. The district court found that Mr. Packard adduced ample causation evidence to survive summary judgment. Add. 13.

"For liability under section 1983, direct participation is not necessary. … The requisite causal connection is satisfied if the defendant *set in motion a series of events* that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Buck*, 549 F.3d at 1279–80 (emphasis added); *Est. of Booker*, 745 F.3d at 435. Roughly eleven seconds before Officer McNamee shot Mr. Packard, Sergeant Serrant can be heard on Officer McNamee's body-worn camera instructing officers, "[i]f they start kicking that shit, go ahead and frickin' hit 'em." Add. 3. In doing so, Sergeant Serrant directed his officers, including Officer McNamee (who was standing near him), to use potentially lethal force without regard for the factors relevant to whether an officer's use of force is justified—the severity of the crime, whether the protestor posed an

30

immediate threat to the safety of the officers or others, and whether he is actively resisting or evading arrest. *Graham*, 490 U.S. at 396. Sergeant Serrant knew or should have known that greenlighting (indeed, instructing) his officers to shoot protesters without regard to the *Graham* factors would cause his subordinate officers to deprive protesters of their constitutional rights.

As the district court recognized, kicking a gas canister—or to use Aurora's words, "interfering with gas canisters," Aurora Br. 21—is not synonymous with a threat to officer safety. Add. 13 ("Not every kick of a gas canister will pose an immediate threat to officers or others."); *id*. at 15 ("[T]here is no evidence that the kicking of gas canisters generally, or the specific instance of Mr. Packard's kicking a gas cannister, posed an imminent threat to officers or anyone else. Just because officers did not like the kicking of cannisters does not mean that it was an imminent threat."). Sergeant Serrant said so himself, testifying at his deposition that a protestor kicking a canister across the street "was not a threat" and that "it wouldn't be reasonable" to "target and hit an individual" who had done so. App. Vol. III at 643–44. An instruction to shoot protesters on that basis alone was thus untethered from *Graham*'s constitutional guardrails, as Sergeant Serrant well knew.

Aurora's cases again support Plaintiffs' claims against Sergeant Serrant. In *Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001), and *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146 (10th Cir. 2006), the Court found no supervisory liability

because the defendant officers either did not instruct their team to use force (*Holland*) or were not present when the violations occurred (*Serna*). Here, in contrast, Sergeant Serrant directly instructed his officers, including Officer McNamee, to use unreasonable force as he stood shoulder-to-shoulder with them. *See Est. of Booker*, 745 F.3d at 413–14, 435 (denying qualified immunity to officer on supervisory-liability claim because officer contributed to her subordinates' use of excessive force).

## B. This Court's precedents clearly establish that the Aurora Officers' conduct was unlawful.

Turning to the second prong of the qualified immunity analysis, this Court's decisions in *Fogerty v. Gallegos* and *Buck v. City of Albuquerque* clearly establish the unlawfulness of Officer McNamee's and Sergeant Serrant's conduct. Those cases put all reasonable officers in this Circuit on notice that it is unconstitutional to use less-lethal force against protestors who pose no immediate threat to anyone, who have committed no crime more severe than a misdemeanor, and who are not fleeing arrest—exactly the facts as the district court found them below.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point." *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022). Precedent is "on point" if it "involves *materially*

*similar conduct* or applies with *obvious clarity* to the conduct at issue." *Id.* Mr. Packard need not identify a case with identical facts to show that the constitutional right was clearly established. *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) ("[O]ur analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law."); *see also Finch*, 38 F.4th at 1242–43 ("To be sure, there is no case with identical facts to those here. But we do not think it requires a court decision with identical facts to establish clearly that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself.").

  By May 2020 it had been clearly established for over a decade that firing less-lethal munitions at a nonthreatening protestor is unlawful.

  In *Fogarty v. Gallegos*, the court considered whether police officers violated the plaintiff's clearly established Fourth Amendment right when they shot him with a pepper ball and exposed him to tear gas while he was protesting the Iraq war. 523 F.3d at 1150–53. That protest involved a crowd of 500 to 1,000 protesters, *id.* at 1151—several times the number of protesters that can be seen in the crowd where Mr. Packard was standing when Officer McNamee shot him, *see* App. Vol. VII at 1711, Ex. 17 at 21:11:25–21:11:43. The crowd "flooded" the street, and a drum circle formed; officers alleged that the drummers "were inciting the crowd" and

"making it difficult to communicate." 523 F.3d at 1151. Sometime after Fogarty joined the drum circle, an officer gave an order to "remove the drums." *Id.* at 1152. In the ensuing scuffle, an officer shot Fogarty "with some sort of projectile," either a "pepper ball" or "some other variety of less lethal munition." *Id.* Other officers then roughly arrested the plaintiff and "dragged him down the street." *Id.*

In denying the shooting officer's bid for qualified immunity, the Court first noted that Fogarty's alleged "disorderly conduct," a petty misdemeanor, was "the least serious of the three classes of state criminal offenses" and that "the amount of force used should have been reduced accordingly." *Id.* at 1160. In considering the threat to officers, the court acknowledged that Fogarty's behavior may have "played a role in inciting the crowd," but concluded that it "remain[ed] far from clear that the protesters presented any immediate threat to the officers or public safety." *Id.* The court also noted that Fogarty was not resisting or evading arrest and that the police "may have contributed to the need to use force." *Id.* at 1161. ("[O]ne witness stated that the protest was peaceful until police 'enraged' the crowd by initiating 'unnecessary' arrests."). Under those circumstances, the Court ruled that the officers' "considerable" use of force was unreasonable, citing, among other things, Fogarty's allegation that "he was hit with a rifle-fired projectile." *Id.* And while the court's precedents had never before addressed "the Fourth Amendment implications" of less lethal munitions, the court nonetheless held that a reasonable

34

officer would have been on notice that the *Graham* inquiry applies equally to that use of force. *Id.*

Later that year, this Court reached the same conclusion in *Buck v. City of Albuquerque*. 549 F.3d at 1287–90. *Buck* arose out of the same anti-war protest involved in *Fogarty*. *Id.* at 1274. During the demonstrations, one of the plaintiffs sat down in the street as a sign of protest. *Id.* at 1289. She was "shot repeatedly with pepper ball rounds," although she did not "recall feeling the impact" of the pepper balls, and the projectiles did not leave any welts or bruises. *Id.* She lied down to show that she was not a threat but was still "repeatedly shot with pepper ball rounds." *Id.* After concluding that her "purported infractions and the degree of potential threat that she posed to an officer's and to others' safety appeared to be nil" and she "did not resist or evade arrest," the Court held that the officers' use of force was unreasonable. *Id.* The Court also concluded that the officer had violated clearly established law because there was "no substantial grounds for a reasonable officer to conclude that there was legitimate justification" for shooting the peaceful protestor with less-lethal munitions. *Id.* at 1290–91.

*Fogarty* and *Buck* clearly establish that an officer is not entitled to qualified immunity for "shooting [a protestor] with a pepper ball or some other type of projectile" when he did not "pose[] an immediate threat to the safety of the officers or others," the protestor had committed (at most) "a petty misdemeanor," and the

"police may have contributed to the need to use force." *Fogarty*, 523 F.3d at 1159–62; *Buck*, 549 F.3d at 1291 (holding that an officer was not entitled to qualified immunity where the injured protester "posed no threat and did not attempt to flee"). These precedents compel the same result here—the denial of qualified immunity.

Beyond generic accusations of "unlawful conduct," Aurora has never pointed to any crime Mr. Packard committed—misdemeanor or otherwise—before he was shot in the head. *See Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) ("A minor offense—at most—supports the use of minimal force.") (cleaned up). And, as in *Fogarty*, the officers' conduct at the scene contributed to the need to use force. Packard was shot after reacting to an officer throwing a teargas canister towards him. *See* Add. 2.

The Aurora Officers instead take issue with the district court's factual finding—based on the judge's review of the evidence and informed by the judge's supervision of a three-week trial in which the events in question were meticulously analyzed—that Mr. Packard posed no threat to officers on the other side of the street, who were wearing full riot gear, including gas masks, when he kicked a teargas canister five to ten feet into the street. Aurora Br. 17; Add. 14. Aurora's attempt to relitigate the evidence is beyond the limited scope of an interlocutory appeal on qualified immunity. This Court is "bound" by the district court's factual findings,

*Finch*, F.4th at 1238, so it "cannot, at this stage in the proceedings, review the district court's findings that [Mr. Packard] was … unthreatening," *id.* at 1240.

The district court found that "[n]o reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers." Add. 14. The court acknowledged that Mr. Packard "kicked a gas canister between five and ten feet away from the protesters and roughly in the direction of the officers," but it found that "that action did not pose an immediate threat—officers were equipped with gas masks that protected them from any gas from that canister." *Id.*; *id.* at 15 ("[T]here is no evidence that the kicking of gas canisters generally, or the specific instance of Mr. Packard's kicking a gas canister, posed an imminent threat to officers or anyone else.").[12] Sergeant Serrant himself testified at his deposition that a protestor kicking a canister across the street "was not a threat" and that "it wouldn't be reasonable" to "target and hit an individual" who had done so. App. Vol. III at 643–44. Other officers testified similarly. *See* App. Vol. VII at 1554–55 (testifying

---

[12] Aurora asserts that the district court's finding that the officers' gas masks protected them from tear gas is "not supported by any evidence in the record." Aurora Br. 9. The video evidence clearly shows Aurora police officers in full tactical gear and gas masks. App. Vol. VII 1711, Ex. 17 at 21:11:25–21:11:56. It is reasonable to infer that officers wore gas masks to protect themselves from the very gas they were deploying, just as it would be reasonable to infer that a soccer player's shin guards protect their legs from errant kicks. *Sawyers*, 962 F.3d at 1282 (court must view both the evidence "and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party").

at trial that kicking a gas canister was not a threat that would justify firing 40mm round); *id.* at 1557–58 (same as to less-lethal shotgun rounds). Thus, even if the Court could revisit the district court's factual findings (and it cannot), the evidence robustly supports the district court's conclusion.

Aurora nevertheless argues that *Fogarty* and *Buck* are insufficiently factually similar to constitute clearly established law. Aurora contends that, unlike here, the plaintiffs in those cases were not "in the vicinity of other individuals against whom officers were justifiably using force" and who were "actively resisting lawful orders to disperse." Aurora Br. 18–19. This proposed distinction is a non-starter. The district court did not find that any orders to disperse had been given, let alone that Mr. Packard was among protesters "actively resisting" those orders. The district court held that the evidence supports a jury finding that Officer McNamee intentionally shot Mr. Packard; therefore, Mr. Packard's proximity to other protesters is irrelevant, no matter what they were or were not doing.

Aurora also argues that "neither *Buck* nor *Fogarty* addressed a situation where officers were being pummeled with rocks, bricks, and mortars by a swelling crowd engaging in threatening behaviors at the time the officers utilized the force at issue." Aurora Br. 20. Again, the district court found no evidence that Officer McNamee faced "a swelling crowd engaging in threatening behaviors," and the court determined that "Mr. Packard's kicking the gas canister between five and ten feet is

not analogous to protestors who were throwing rocks, bottles, or other objects." Add. 2–3, 14. The video evidence shows precisely the opposite of Aurora's description: in the moments before Officer McNamee shot Mr. Packard, protestors were sitting peacefully on the ground, while others were holding signs across the street. Even so, the *Fogarty* and *Buck* courts denied the officers qualified immunity notwithstanding that those officers, like Officer McNamee and Sergeant Serrant, were dealing with a crowd-control situation. *See Fogarty*, 523 F.3d at 1150–52 (describing the protests involving between 500 and 1,000 protesters, which the officers "vehemently contest[ed]" were peaceful); *Buck*, 549 F.3d at 1274 (adopting the same factual background as *Fogarty*).

In any event, the law is clearly established that an officer may not use deadly force against an individual absent "probable cause to believe that there is a threat of *serious physical harm* to the officer or to others." *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015) (denying qualified immunity). A reasonable jury could conclude that a gas canister resting 20 feet from officers in full riot gear posed no threat of serious physical harm that could justify firing a shotgun round at Mr. Packard's head that fractured his skull and neck.

## II.     The District Court Correctly Allowed Mr. Packard to Assert an Alternative Fourteenth Amendment Claim for Excessive Use of Force.

The district court rightly held that Mr. Packard is permitted to pursue an alternative Fourteenth Amendment excessive-force claim at trial so long as the Aurora defendants continue to dispute whether Mr. Packard was "seized." As Aurora's opening brief acknowledges, when a constitutional claim is governed by a specific constitutional provision, courts must analyze the claim under that specific amendment and "not under the rubric of" the Fourteenth Amendment. Aurora Br. 25–26 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). But when, as here, the government disputes a condition precedent to applying one amendment (here, the fact of seizure), the Fourteenth Amendment may be argued in the alternative.

This same issue arose in the underlying litigation against Denver. There, during a trial preparation conference, counsel for the Epps Plaintiffs explained that they were asserting a Fourteenth Amendment claim in case Denver argued that the plaintiffs had not been seized (and thus no Fourth Amendment violation occurred). Add. 11. Because Denver represented at that same hearing that it would not argue that the plaintiffs had not been seized, the plaintiffs agreed to dismiss their Fourteenth Amendment claims. *Id.* Accordingly, a Fourteenth Amendment claim was not submitted to the jury at the subsequent trial.

40

Unlike Denver, Aurora persists in arguing that Packard was not seized when Officer McNamee shot him in the head and indisputably restrained his freedom of movement (indeed, his ability to move at all). While Aurora's position is meritless, the question arguably turns on disputed issues of fact. If the jury finds that Mr. Packard was not "seized," his excessive force claim no longer implicates the Fourth Amendment and must be decided, instead, under the Fourteenth Amendment. As this Court explained in *Roska*, a "determination that plaintiffs were not seized within the meaning of the Fourth Amendment does not end the inquiry, however. Substantive due process analysis is appropriate in cases that involve excessive force where a specific constitutional provision—such as the Fourth or Eighth Amendment—does not apply." 328 F.3d at 1243 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)).

To prevail on his Fourteenth Amendment claim, Mr. Packard must show "that the complained-of accnttion"—here, being shot in the head while protesting against police violence—"shocks the conscience." *Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232, 1236 (10th Cir. 2022). Where, as here, an officer has the opportunity to deliberate before acting, "conduct that shows deliberate indifference to a person's life or security will shock the conscience." *Id.* When an officer does not have time to deliberate before acting, "conduct will shock the conscience only if it is done with the intent to harm the injured party." *Id.* at 1236–37.

Considering the "shocks the conscience" standard, the district court rejected Aurora's argument that Mr. Packard's Fourteenth Amendment claim was precluded as a matter of law. Add. 11. While acknowledging that claims brought under the Fourteenth Amendment must satisfy a more stringent standard, the court concluded that Mr. Packard was nonetheless entitled to "raise a substantive due process claim for the complained of conduct." *Id.* A jury could reasonably conclude that the Aurora Officers' behavior—intentionally shooting a protestor engaged in protected activity in the head with a lead-filled Kevlar bag that caused horrific injuries—shocks the conscience and constitutes a clear abuse of government authority. *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (Gorsuch, J.); *Edrei v. Maguire*, 892 F.3d 525, 537-38 (2d Cir. 2018).

Unless and until Aurora concedes that Mr. Packard was seized, nothing precludes him from pursuing an alternative Fourteenth Amendment claim.[13]

---

[13] Aurora declares without citation that "[w]hether something is 'conscious [sic] shocking' is a question of law." Aurora Br. 27. To the extent Aurora means that a jury has no role to play in assessing a claim for excessive-force under the Fourteenth Amendment, that position is incorrect. "Most appellate courts appear to treat this as a jury question, permitting the case to go to the jury unless no rational jury could find that the conduct was conscience-shocking." Rosalie Berger Levinson, *Time to Bury the Shocks the Conscience Test*, 13 Chap. L. Rev. 307, 332 (2010) (collecting cases). This Court has approved of juries deciding whether conduct shocks the conscience under the Fourteenth Amendment. *See Trujillo v. Goodman*, 825 F.2d 1453, 1460 (10th Cir. 1987) ("[T]he jury could properly conclude that Goodman's use of force was not inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere

### III. This Court Lacks Jurisdiction to Review the District Court's Denial of Summary Judgment Regarding Aurora's *Monell* Liability.

The district court denied the City of Aurora's motion for summary judgment on Mr. Packard's *Monell* claims after concluding that he had raised a genuine dispute of material fact regarding whether Aurora's policies, practices, or customs caused his injuries. Add. 17–19. A denial of summary judgment on *Monell* liability is generally not appealable. *Moore v. City of Wynnewood*, 57 F.3d 924, 928 (10th Cir. 1995). Because municipalities are not entitled to qualified immunity, Aurora "cannot invoke the collateral order doctrine to justify appeal of an otherwise nonappealable decision." *Id.* at 929 (cleaned up). Thus, this Court may consider Aurora's *Monell* liability only if it exercises pendent appellate jurisdiction over this aspect of the appeal. *Id.* "[B]ecause the exercise of pendent appellate jurisdiction is generally disfavored," this Court "exercise[s] this discretionary authority sparingly." *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1221 (10th Cir. 2019).

This Court has pendent appellate jurisdiction only to the extent the issues raised by the City's appeal are "inextricably intertwined with the district court's denial of qualified immunity to the individual defendants." *Crowson*, 983 F.3d at 1185. Issues are inextricably intertwined "[i]f resolution of the collateral qualified

---

carelessness."), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386, 395 (1989).

immunity appeal *necessarily* resolves" Aurora's liability, as well. *Id.* Otherwise, this Court lacks jurisdiction. *Id.*

Here, resolution of the officers' qualified immunity will not necessarily resolve Aurora's municipal liability. As explained above, Officer McNamee violated Mr. Packard's Fourth Amendment rights when he shot Mr. Packard in the head with a lead-filled Kevlar bag while Mr. Packard was protesting. *See supra* at 20–33. Even if this Court concluded that Officers McNamee and Serrant violated Mr. Packard's rights but were nonetheless entitled to qualified immunity because the right was not clearly established, that holding cuts against the exercise of pendent appellate jurisdiction. *Lynch v. Barrett*, 703 F.3d 1153, 1164 (10th Cir. 2013) ("But because we *assumed* Defendant Officers violated Plaintiff's right to court access and *held* they were entitled to qualified immunity based on the lack of clearly established law, Defendant City's appeal i[s] not 'inextricably intertwined' with Defendant Officer's appeal.").

If the Court decides nevertheless to exercise jurisdiction over Aurora's appeal, then the Court should affirm on the basis that the district court identified disputed questions of material fact that preclude summary judgment on whether Mr. Packard can prove an underlying constitutional violation. Aurora raises no other issue on appeal with respect to Mr. Packard's *Monell* claim.

## CONCLUSION

Mr. Packard respectfully asks this Court to affirm the decision below.

Dated: February 24, 2023

Respectfully submitted,

s/ *R. Reeves Anderson*

Robert Reeves Anderson
Matthew J. Douglas
Brian M. Williams
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
(303) 863-1000
reeves.anderson@arnoldporter.com
matthew.douglas@arnoldporter.com
brian.williams@arnoldporter.com

Mark Silverstein
Sara R. Neel
AMERICAN CIVIL LIBERTIES UNION OF
  COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
T: (303) 777-5482
msilverstein@aclu-co.org
sneel@aclu-co.org

*Counsel for Appellee Zachary Packard*

**CERTIFICATE OF COUNSEL**

Pursuant to 10th Cir. R. 31.3(B), counsel for appellee Zachary Packard certifies that separate briefs for appellees are necessary in this appeal. The two appellees filed separate lawsuits and are represented by separate counsel. The events giving rise to each appellee's claims involved different officers, different locations, and different circumstances that occurred at different times. The qualified immunity question at the heart of this appeal turns on the specific circumstances applicable to each appellee. Because appellants' opening brief often blurs the lines between different events and participants, separate appellee briefs are necessary to adequately address the legal standards as they applied to the particular circumstances involving Mr. Packard's injuries and claims.

Both sets of appellee counsel have endeavored to coordinate to the greatest extent possible to minimize duplication, including by filing a joint appellees' appendix and incorporating intersecting arguments by reference.

Respectfully submitted,

s/ *R. Reeves Anderson*
Robert Reeves Anderson

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,766 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word 365.

s/ *R. Reeves Anderson*
Robert Reeves Anderson

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing **BRIEF FOR APPELLEE ZACHARY PACKARD**:

a)      All required privacy redactions have been made;

b)      The ECF submission is an exact copy of the hard copy document that is being filed with the Court;

c)      The ECF submission has been scanned for viruses with the most recent version of the commercial virus scanning program Checkpoint Endpoint Security (Version 80.86.0169, most recently updated July 27, 2022), and, according to the program, is free of viruses.


s/ <i>R. Reeves Anderson</i><br>Robert Reeves Anderson