No. 22-1365

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

ELISABETH EPPS, ASHLEE WEDGEWORTH, AMANDA BLASINGAME, MAYA ROTHLEIN, ZACH PACKARD, HOLLIS LYMAN, CIDNEY FISK, AND STANFORD SMITH,

*Plaintiffs-Appellees,*

v.

CITY AND COUNTY OF DENVER, CITY OF AURORA, JONATHAN CHRISTIAN, KEITH VALENTINE, DAVID MCNAMEE, PATRICIO SERRANT, MATHEWS BRUKBACHER,

*Defendants-Appellants,*

---

On Appeal from the US District Court for the District of Colorado
Honorable R. Brooke Jackson
No. 20-cv-01878-RBJ, 20-cv-01922-RBJ-MEH

---

## **EMERGENCY** MOTION FOR STAY PENDING APPEAL

---

Michael T. Lowe
David M. Goddard
Heidi J. Hugdahl
Bruno, Colin & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO 80203
mlowe@brunolawyers.com
dgoddard@brunolawyers.com

Peter Ruben Morales
Office of the City Attorney
Aurora Municipal Center, Suite 3500
15151 East Alameda Parkway
Aurora, CO 80012
pmorales@auroragov.org
*Attorney for Defendants-Appellants City of Aurora*

hhugdahl@brunolawyers.com
*Attorneys for Defendants-Appellants*
*Serrant, McNamee, and Budaj*

**Statement of Specific Relief Requested**

Pursuant to Fed. R. App. P. 8 and 10th Cir. R. 8.1 & 8.2(A)[1], Defendants-Appellants the City of Aurora and Aurora Police Officers Budaj, Serrant, and McNamee (hereinafter "Aurora Defendants" or "Appellants") respectfully move for entry of an emergency stay of proceedings in the district court pending resolution of the instant appeal currently fully briefed and pending before this Court. Without jurisdiction to do so, the district court recently and without explanation reinstated previously terminated trial and pre-trial dates which are now imminent, despite a Joint Motion by the parties to enter a specific Order vacating those dates. Because the filing of a notice of interlocutory appeal based on qualified immunity divests a district court of jurisdiction to proceed to trial, the district court here is without jurisdiction to reinstate previously terminated trial and pre-trial dates, is further without jurisdiction to proceed to trial, and "[a]ny subsequent action by it is null and void." *Garcia v. Burlington Northern R.R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987). It is for these reasons as well as those

---

[1] Consistent with the requirements of 10th Cir. R. 8.2(A) & (C), a Certificate of Compliance is attached hereto and filed contemporaneously herewith as **Exhibit E.**

articulated in greater detail herein below that the Defendants-Appellants seek this emergency stay pending appeal.

## Statement of Opposing Parties' Position

On May 22, 2023, the parties to this matter conferred and on May 23, 2023 filed a Joint Motion to Vacate the trial dates, pre-trial preparation conference and associated deadlines in this matter pending resolution of Appellants' appeal. *See* [5/22/2023 Joint Motion, Dkt. #476, attached hereto as **Exhibit A**]. The district court denied that Joint Motion, without explanation or written order, at 11:02 p.m. on May 24, 2023. *See* [5/24/2023 Order, Dkt. #479, attached hereto as **Exhibit B**]. Appellants then reached out to Appellees via email requesting their position on the instant Emergency Motion. Despite filing the Joint Motion stipulating that "[t]he issues raised in Defendants' appeal are relevant to the issues to be resolved at trial, including qualified immunity," [**Exh. A** at p. 2], on May 27, 2023 counsel for the Appellees informed via email that they now oppose the relief requested herein.

## Introduction and Procedural History

This case is one of several currently in litigation across the nation that involves police response to mass demonstrations, protests and rioting that occurred in the wake of the death of George Floyd. Appellees' First Amended Complaint, in Civil Action No. 1:20-cv-1878, named Defendants the City of Aurora, Officer

McNamee, Sergeant Serrant, and Matthew Brukbacher. That action was consolidated with Appellees' Third Amended Complaint in Civil Action No. 1:20-cv-01922, which further named Officer Budaj as a defendant. The Third Amended Complaint is the operative pleading in this matter. [App. Vol. I at 149-158]. The Appellants filed a motion for summary judgment asserting, *inter alia,* qualified immunity on behalf of the individual officer appellants on January 28, 2022. [App. Vol. I at 161]. Summary judgement was fully briefed by July 29, 2022, [App. Vol. VII at 1744] and the district court, on September 23, 2022, granted in part and denied in part Appellants' motion for summary judgment, denying qualified immunity to Aurora Officers Budaj, Serrant, and McNamee. [App. Vol. VII at 1750-1770]. Appellants filed their notice of appeal challenging the denial of qualified immunity on October 24, 2022. [App. Vol. VII at 1771-1774]. At that point, the district court was divested of jurisdiction to proceed to trial. *See Stewart v. Donges*, 915 F.2d 572, 575 (10th Cir. 1990). The appeal went forward in this Court in due course, and briefing by the parties was completed on March 24, 2023. The appeal is currently pending discretionary assignment for oral argument and resolution by this Court. This appeal has been pending for approximately seven months, during which time no proceedings have occurred in the district court, with

the exception of the Joint Motion to Vacate the trial and all related deadlines. [**Exh. A**].

On May 10, 2022, the district court originally set this matter for a five-day jury trial to begin in now less than a month, on June 19, 2023, and scheduled a trial preparation conference for June 1, 2023. [App. Vol. I at 68]. This protest case, much like the many others still pending, involves nuanced applications of law—and particularly the doctrine of qualified immunity—to unique circumstances, as well as voluminous disclosures and discovery and numerous witnesses; in the instant matter, the parties have disclosed several hundred witnesses. As the pre-trial preparation conference date and trial date approached here, the parties recognized that the district court had not entered a Minute Order formally vacating the trial and pre-trial dates pursuant to the filing of the Notice of Appeal. The parties therefore conferred and on May 22, 2023, Appellants and Appellees filed a Joint Motion to Vacate the trial dates, pre-trial preparation conference and associated deadlines pending resolution of Appellants' appeal. [**Exh. A** at p.2]. The parties further requested the district court set a status conference for thirty (30) days after the Tenth Circuit Court of Appeals issues its mandate in the pending appeal. *Id.* At the time of filing the Joint Motion to Vacate, Appellants were unaware that the district court had, in fact, previously terminated the trial

preparation conference date and pre-trial dates several months earlier, on September 19, 2022, because the district court did not enter a concomitant Minute Order when terminating the trial and pre-trial dates. *See* [Docket Report, captured 5/23/2023, attached hereto as **Exhibit C**, at p. 4]. Regardless, two days later, on May 24, 2023, the district court summarily denied the parties' Joint Motion to Vacate by Minute Order, without explanation, written findings, or citation to authority. [**Exh. B**]. On that same date, the district court also reinstated the previously terminated trial dates, again summarily and without entry of a concomitant Minute Order or notice to the parties, also moving the start date of the trial by one day, presumptively due to the Juneteenth holiday, which then wraps the trial into a second week not previously contemplated. *See* [Docket Report, captured 5/26/2023, attached hereto as **Exhibit D**, at p. 4-5].

This Emergency Motion to Stay timely follows. In light of the well-established authority divesting the district court of jurisdiction to proceed to trial upon the filing of a notice of appeal, *see Stewart*, 915 F.2d at 575, the rapidly approaching trial dates, the importance of the legal issues currently pending on appeal, and the fact that allowing this matter to proceed to trial would inevitably result in duplicative and piecemeal litigation as well as transgress the rights of the

individual Appellants not to stand trial under the doctrine of qualified immunity, this Court should grant this Emergency Motion to Stay.

## Statement of Jurisdiction

In the matter currently under review, Appellees originally asserted: 1) retaliation claims under the First Amendment; 2) excessive force claims under the Fourth Amendment; 3) due process and equal protection claims under the Fourteenth Amendment; 4) failure-to-intervene and supervisory liability claims; and 5) municipal liability claims against the City under *Monell* and on the basis of custom or policy and failure to train, supervise, or discipline. [App. Vol. I at 149-158]. The district court for the District of Colorado has subject matter jurisdiction over such claims pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon district courts for "all civil actions under the Constitution, laws, or treaties of the United States," and pursuant to § 1343(a), which confers jurisdiction on the district court for all alleged violations under 42 U.S.C. § 1983.

The Tenth Circuit Court of Appeals has jurisdiction over this interlocutory appeal because it is brought pursuant to the denial of qualified immunity at the summary judgment stage. This appeal therefore falls under collateral-order doctrine and is an appealable final decision within the meaning of 28 U.S.C. § 1291. *Ashcroft v. Iqbal*, 556 U.S. 662, 674-75 (2009). The district court Order

being appealed was submitted on September 23, 2022. [App. Vol. VII at 1750]. Pursuant to Fed. R. App. P. 4(a)(1)(A), the Appellants timely filed their Notice of Appeal on October 24, 2022. [App. Vol. VII at 1771-74].

**Argument**

**I.      This Court should issue a stay because the district court was divested of jurisdiction upon Appellants' filing of their notice of appeal.**

The Tenth Circuit Court of Appeals has long held that the filing of a notice of appeal "is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Stewart v. Donges*, 915 F.2d 572, 575 (10th Cir. 1990) (quoting *Griggs v Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). This is because of "the axiomatic premise that 'a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously.'" *Id.* Because the filing of a timely notice of appeal "transfers the matter from the district court to the court of appeals, thus divesting the district court of jurisdiction, *any subsequent action taken by the district court is null and void*." *Garcia*, 818 F.2d at 721 (emphasis added; citations omitted).

Moreover, the divestiture of jurisdiction occasioned by the filing of a notice of appeal is "especially significant" when, as is the case here, the "appeal is an interlocutory one." *Stewart*, 915 F.2d at 575. "When an interlocutory appeal is

8

taken, the district court [only] retains jurisdiction to proceed with *matters not involved in that appeal*." *Id.* (quoting *Garcia*, 818 F.2d at 721 (emphasis original)). More specifically, when an interlocutory appeal is from the denial of summary judgement based on qualified immunity—which is also the case here—"the central issue in the appeal is the defendant's asserted right not to have to proceed to trial." *Id.* at 576. Importantly, unlike some interlocutory appeals that challenge discrete orders that can be carved out and isolated from the remainder of the case, a motion for summary judgement based on qualified immunity cannot be so isolated because if the defense is valid, then no part of the action should proceed against the defendant. *Id.* "In that regard, an interlocutory appeal from an order refusing to dismiss on double jeopardy or qualified immunity grounds relates to the entire action and, therefore, *it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant*." *Id.* (citing *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) (emphasis added); *cf. Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed.")).

Here, the Aurora Defendants properly filed their Notice of Appeal on October 24, 2022. [App. Vol. VII at 1771-1774]. At that point, the district court was automatically divested of jurisdiction to proceed to trial, and any trial

proceedings prior to resolution of the appeal would be null and void. *Stewart*, 915 F.2d at 574 (10th Cir. 1990) ("… we must decide whether the defendant's interlocutory appeal from the denial of summary judgment based on qualified immunity *divested the district court of jurisdiction to conduct a trial*. We hold that it did, and that because the trial was conducted without jurisdiction, *it was a nullity*." (Emphasis added)). Further, the Court in *Stewart* "held that a district court was automatically divested of jurisdiction by an interlocutory appeal from the denial of summary judgment based on qualified immunity where the court did not certify the appeal as frivolous or forfeited." *McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158, 1161 (10th Cir. 2005). The instant appeal has not been certified as frivolous or otherwise forfeited in the seven months since the Notice of Appeal was filed and briefing completed.[2]

---

[2] A district court may prevent the potential misuse of an interlocutory appeal if the district court "(1) after a hearing and, (2) for substantial reasons given, (3) found the claim to be frivolous." *Stewart*, 915 F.2d at 576 (quoting *United States v. Hines*, 689 F.2d 934, 937 (10th Cir. 1982)). Just three days ago, and seven months into an appeal that has been fully briefed, the Plaintiffs-Appellees filed for the first time a motion in the district court to certify Appellants' appeal as frivolous, attempting to capitalize on the district court's apparent resolve not to vacate the trial. This despite filing the Joint Motion to Vacate the trial dates which stipulates that "[t]he issues raised in Defendants' appeal are relevant to the issues to be resolved at trial, including qualified immunity." [Exh. A at p. 2].

Thus, by reinstating already-terminated trial and pre-trial dates, the district court has acted without jurisdiction by proceeding with trial against the Aurora Defendants-Appellants. Moreover, in taking such action the district court has risked breaching the Appellants' "right not to stand trial," an entitlement that, "like an absolute immunity, is effectively lost if a case is erroneously permitted to go to trial." *Stewart*, 915 F.2d at 575 (quoting *Michell v. Forsyth*, 472 U.S. 511, 526, 527 (1985)).

The foregoing facts and authority are dispositive: the district court is without jurisdiction to proceed with trial or impose compliance with pre-trial proceedings until this Court resolves the appeal currently before it. As such, this Court must grant the relief requested herein, and issue an emergency Order staying the proceedings in the district court pending resolution of the currently pending appeal.

**II.    The relevant factors under 10th Cir. R. 8.1 are also in favor of staying the trial proceedings in the district court, and vacating the fast-approaching trial and pre-trial dates pending resolution of the interlocutory appeal.**

While the foregoing facts and law are dispositive of the district court's lack of jurisdiction here and thus mandate a stay of proceedings, 10th Cir. R. 8.1 requires that a showing be made under the following factors as well: 1) the basis for the district court's and the court of appeals' jurisdiction; 2) the likelihood of success on appeal; 3) the threat of irreparable harm if the stay is not granted; 4) the

absence of harm to the opposing party if the stay is granted; and 5) any risk of harm to the public.

Basis for Jurisdiction: The jurisdictional factor has previously been addressed as set forth hereinabove. The operative complaint in this matter asserts claims under 42 U.S.C. § 1983, and the district court therefore had jurisdiction to hear the matter pursuant to 29 U.S.C. §§ 1331 & 1343(a). In turn, this Court has jurisdiction over the appeal of the summary judgment denial based on qualified immunity, as the same qualifies as an appealable final decision under the collateral-order doctrine and is within the meaning of 28 U.S.C. § 1291. *Ashcroft*, 556 U.S. at 674-75.

The remaining factors "require individualized consideration and assessment in each case." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776–77 (1987); *United States v. Various Tracts of Land in Muskogee and Cherokee Counties*, 74 F.3d 197, 198 (10th Cir. 1996)). In addition, "where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed." *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003) (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001); *Continental Oil Co. v. Frontier Ref.*

*Co.*, 338 F.2d 780, 781-82 (10th Cir. 1964)). In such circumstances, "probability of success is demonstrated when the petitioner seeking the stay has raised 'questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *F.T.C.*, 345 F.3d at 853 (quoting *Prairie Band*, 253 F.3d at 1246-47). And in circumstances where, as here, the interlocutory appeal is from a denial of summary judgment based on qualified immunity and a trial is imminent, the D.C. Circuit Court of Appeals has observed that "[a] showing of irreparable injury will generally be automatic from invocation of the immunity doctrine if the trial has begun or will commence during the pendency of the petitioner's appeal. Concomitantly, the public interest in an official's 'unflinching discharge of [his] duties' normally will support a stay. Finally, injury to others caused by a delay of trial normally will be subsidiary to the overarching interest in preserving the immunity defense." *McSurely v. McClellan*, 697 F.2d 309, 317 (D.C. Cir. 1982) (citations omitted); *accord Stewart*, 915 F.2d at 575 (entitlement to qualified immunity is an entitlement "not to stand trial or face the other burdens of litigation … [which is] … effectively lost if a case is erroneously permitted to go to trial." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Threat of Irreparable Harm: With respect to the "harm" factors, then, the same circumstances noted by the D.C. Circuit Court of Appeals as demonstrating irreparable harm to the defendant-appellants are present here with respect to the Aurora Defendant-Appellants. The Appellants timely filed their Notice of Appeal on October 24, 2022, divesting the district court of jurisdiction over the trial. The appeal is based on the entitlement of the individual Appellants to qualified immunity and, therefore, immunity from suit. If the district court is now allowed to unilaterally proceed to trial against the Appellants, the immunity defense will be effectively lost and cannot be regained.

Absence of Harm to Opposing Parties: The same is not true with respect to any prejudice or harm that Appellees might face if the stay is granted. Indeed, given that the Plaintiffs-Appellees filed a Joint Motion requesting that the district court enter an order vacating the pending trial and pre-trial dates (which Appellants did not know, at the time, had already been terminated by the lower court), as well as the fact that the Joint Motion expressly stipulated that "[t]he issues raised in Defendants' appeal are relevant to the issues to be resolved at trial, including qualified immunity," [**Exh. A** at p. 2], any subsequent claims of prejudice or harm by the Appellees are necessarily mitigated. Moreover, by pleading federal claims, Appellees accepted the reality that Appellants might be dismissed on qualified

immunity grounds and might take an appeal from the district court if such immunity were denied, triggering sometimes lengthy stays of proceedings while such immunity issues are decided. *See, e.g., Dalton v. Town of Silver City ex rel. Silver City Police Dep't*, 2019 U.S. Dist. LEXIS 53757 at \*9-10 (D.N.M. 2019). Any such claims of harm or prejudice by Appellees thus cannot overcome the "overarching interest in preserving the immunity defense." *McSurely*, 697 F.2d at 317. To the contrary, the parties here—as well as this Court and the district court— in fact will benefit from the efficiencies attending a stay of proceedings and the certainty that will follow with respect to the scope and nature of any future trial. Staying proceedings will avoid the risk of being prejudiced and significantly burdened by piecemeal and duplicative litigation requiring all parties to call and cross-examine witnesses with respect to the same events and presenting the possibility of inconsistent jury verdicts, or the even greater specter of having a jury verdict that is inconsistent with the ultimate decision of this Court on appeal.

The Public Interest: The fundamental public interest here is in the efficient and just determination of civil actions. *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The public, consistent therewith, also has a significant interest in "conserving public resources and the efficient functioning of government." *Eggert v. Chaffee County*, 2010 U.S. Dist. LEXIS 95245, at \*14 (D. Colo. 2010)

(citing *Iqbal*, 129 S. Ct. at 1953; *Harlow*, 457 U.S. at 817 n.29). "Avoiding wasteful efforts by the Court clearly serves th[ese] interest[s]." *ProfitStreams LLC v. Ameranth, Inc.*, 2011 U.S. Dist. LEXIS 122223, at *7 (D. Colo. 2011). Here, staying proceedings in the district court while the appeal is heard and resolved best serves these public interests, will narrow and solidify the issues potentially to be placed before the jury, and will be the most efficient manner in which to accomplish those public interest goals.

Likelihood of Success on Appeal: As noted above, where the "harm" factors have been shown to support a stay of proceedings, which they do here, the party seeking relief will be deemed to have satisfied the likelihood of success on appeal element if they show "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon*, 79 F.3d at 1020-21 (internal citations omitted). The purpose of a stay is to preserve the status quo pending determination. *Id.* By allowing this case to proceed to trial in a court without jurisdiction over the claims, the status quo would be completely hindered, particularly given that this appeal has completed the briefing process and the district court has been divested of jurisdiction to proceed to trial for several months.

Moreover, the issues addressed in the appeal pending in this Court are matters of first impression in this Circuit in the context of large-scale, multi-jurisdictional police response to mass protests, demonstrations and riots. As a specific single example, the district court relies almost exclusively on the cases of *Buck v. Albuquerque*, 549 F.3d 1269 (10th Cir. 2008) and *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) to clearly establish the law with respect to the individual Defendants-Appellees. [App. Vol. VII at 1750-1770]. Those cases, however, are not only factually distinguishable from the circumstances presented to the individual officers here, but those cases also define the right at issue at "too high a level of generality" to have put every official on notice that in the circumstances presented to the officers here, their actions would violate the Constitution. *See, e.g., Lewis v. City of Edmond*, 48 F.4ᵗʰ 1193, 1197-99 (10th Cir. 2022) (discussing the level of specificity required to clearly establish the law in the qualified immunity context). More directly, and as discussed at length in Appellants' briefing on this issue, the law enforcement personnel in *Buck* and *Fogarty* were intent on taking plaintiffs into custody and actually arrested them. *Buck*, 549 F.3d at 1277-79; *Fogarty*, 523 F.3d at 1152. That was not the case in the circumstances presented to the Appellants here. What is more, neither of those cases addresses a use of less-lethal force triggered by plaintiff's attempts to thwart

law enforcement's efforts to disperse a crowd composed of a mix of violent and non-violent protestors by kicking deployed gas canisters that had been deployed back in the direction of police (as is the case with Plaintiff Packard), and neither case addresses a situation where a plaintiff was impacted a single time with a less-lethal munition as the plaintiff stood in close proximity to other protestors engaged in assaultive and threatening behavior with police (as is the case with Plaintiff Duran). Instead, in both *Buck* and *Fogarty* the claims centered on alleged objectionable and unreasonable force arising out of the "seizures" of three *arrested* plaintiffs and objectionable and unreasonable force *after* the plaintiffs were in custody. *Id.*

In addition to the foregoing, *Buck* and *Fogarty* are further distinguishable in that the plaintiffs had been culled and separated from the larger groups of protestors at the time force was used against them, and law enforcement personnel were engaging with each plaintiff individually. Neither the plaintiffs nor the defendant officers in *Buck* and *Fogarty* were in positions or circumstances similar to the Plaintiffs or Defendants here at the time force was used. Unlike the plaintiffs in *Buck* and *Fogarty,* Mr. Packard and Mr. Duran were free to move about and to leave the area at any time—and were in fact requested to do so, as both were out after an emergency curfew. At no time were any efforts made to effect an arrest on

either Mr. Packard or Mr. Duran. Instead, the sole purpose of the force used was directed to efforts to maintain the integrity of the gas canisters and in response to the efforts to move the riotous crowd while best attempting the ensure officer safety, the safety of other protestors, and the protection of property.

In each case, then, and unlike the circumstances presented here, plaintiffs' engagement with police took place in circumstances of a direct confrontation with individuals rather than in the context of close association with protest groups engaged in unlawful conduct. Moreover, and also entirely dissimilar to the circumstances presented here, the force used by officers in *Fogerty* and *Buck* was in connection with efforts to effect an arrest or after the plaintiffs were in custody. *Id.* Thus, not only do the facts and circumstances presented in *Buck* and *Fogarty* diverge so materially from those at issue here as to preclude their clearly establishing the law, but the facts in those two cases are much more readily suited to an analysis within the framework of *Graham v. Connor*, 490 U.S. 386 (1989), which the district court here also mistakenly relied on in finding the law clearly established. [App. Vol. VII at 1762-1764]; *see Lewis*, 48 F.4th at 1197-98 ("Statements derived from *Tennessee v. Garner* and its progeny that lay out excessive force principles or rules at only a general level do not by themselves create clearly established law." (quotation marks omitted; citing *White v. Pauly*,

580 U.S. 73, 79-80 (2017)). Given the multiple pending protest cases against multiple Denver metropolitan police agencies and officers, the issues considered for appeal herein are ripe for a deliberate investigation by this Circuit, with particular attention to the complicated nuances of the applicable precedent, which is lacking in the district court's Order on the Aurora Defendant's Summary Judgment Motion.

Furthermore, since filing of the briefs before this Court, undersigned counsel has recently discovered that the 9th Circuit has recently dismissed *Monell* theories presented in a protest case in San Jose, particularly custom policy and practice, failure to train, and ratification, on a motion for summary judgment. *Sanderlin v. City of San Jose*, 2023 U.S. Dist. LEXIS 44551, at *68-85, Case No. 20-cv-04824-BLF (March 2023). The facts in that case are like those presented in this underlying case, particularly ratification and Plaintiffs' apparent confounding of that theory with supervisory liability. *Id.* Further, the 9th Circuit clearly held that when a Plaintiff cannot establish a constitutional violation against an individual defendant, the *Monell* theory advanced by that Plaintiff must fail, which is addressed in the instant appeal. *Id*. at *70. Given this case, which the Appellants intend to submit to this Court as supplemental authority, further advances its likelihood of success on the merits.

As demonstrated above, this case presents issues that are matters of first impression in this Circuit, involve nuanced application of the law to unique factual scenarios, and are "so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon*, 79 F.3d at 1020-21 (internal citations omitted). The questions addressed in this appeal will affect the multiple other protest cases pending in the district court as well, as several cases have been filed against Aurora, who provided mutual aid to Denver. The Orders to date between mutual aid jurisdictions have been inconsistent, and deserve guidance from this Court to resolve, so that issues might be clarified in potential future trials, and the rights and entitlements of individuals pursuant to the qualified immunity doctrine will be preserved. Having met the foregoing standards, Appellants have shown a substantial likelihood of success on the merits of their appeal on multiple bases.

## Conclusion

For the reasons given above, the Court should enter a stay of the underlying proceedings pending the appeal.

DATE: May 30, 2023

*s/ Michael T. Lowe*
Michael T. Lowe
David M. Goddard
Heidi J. Hugdahl
Bruno, Colin & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO 80203
mlowe@brunolawyers.com
dgoddard@brunolawyers.com
hhugdahl@brunolawyers.com
*Attorneys for Defendants-Appellants*
*Serrant, McNamee, and Budaj*

*s/ Peter R. Morales*
Peter Ruben Morales
Office of the City Attorney
Aurora Municipal Center, Suite 3500
15151 East Alameda Parkway
Aurora, CO 80012
pmorales@auroragov.org

*Attorney for Defendants-Appellants City*
*of Aurora*

# CERTIFICATE OF COMPLIANCE

1.      I certify that this document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this document contains 4,463 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.

DATE: May 30, 2023

*s/ Michael T. Lowe*
Michael T. Lowe
David M. Goddard
Heidi J. Hugdahl
Bruno, Colin & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO 80203
mlowe@brunolawyers.com
dgoddard@brunolawyers.com
hhugdahl@brunolawyers.com
*Attorneys for Defendants-Appellants*
*Serrant, McNamee, and Budaj*

## CERTIFICATE OF SERVICE

I certify that on May 30, 2023, I electronically filed the foregoing Motion via the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Julie Bozeman*
Julie Bozeman, Paralegal
Bruno, Colin & Lowe, P.C.