No. 22-01365

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JOHNATHEN DURAN, et al., *Plaintiffs-Appellees*,

v.

CORY BUDAJ, et al., *Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Colorado
No. 20-cv-1878 (Hon. R. Brooke Jackson)

## APPELLEES' RESPONSE TO EMERGENCY MOTION FOR STAY
## PENDING APPEAL

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

Timothy Macdonald
Sara R. Neel
AMERICAN CIVIL LIBERTIES
UNION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
T: (303) 777-5482
tmacdonald@aclu-co.org
sneel@aclu-co.org

Robert Reeves Anderson
Matthew J. Douglas
Brian M. Williams
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
T: (303) 863-1000
F: (303) 863-2301
reeves.anderson@arnoldporter.com
matthew.douglas@arnoldporter.com
brian.williams@arnoldporter.com

## INTRODUCTION

In May 2020, protestors took to the streets of Denver in the aftermath of the police killing of George Floyd. Although the protests were overwhelmingly peaceful, the Denver Police Department and officers from other agencies in Denver's mutual-aid network (including the Aurora Police Department), used violent crowd control tactics on the protestors. Over the course of several days, police used excessive force to control, corral, and assault the protestors. Among other things, officers launched tear gas and flashbang grenades into crowds and shot projectiles at peaceful protestors without warning. The police use of force injured many protestors, journalists, and bystanders.

This case arises from those events exactly three years ago. Minutes after Plaintiff Zachary Packard joined other protestors in downtown Denver on May 31, 2020, Aurora Officer David McNamee—at the verbal direction of Sergeant Patricio Serrant—aimed and fired his shotgun at Mr. Packard, hitting him in the head with a Kevlar bag filled with lead pellets. The blow to Mr. Packard's temple immediately knocked him unconscious, fractured his skull, broke two discs in his neck, and caused brain bleeding. As Mr. Packard lay immobile in the gutter, police officers did nothing to aid him. The horrifying event was captured on camera from multiple vantage points, including by Officer McNamee's body-worn camera. Mr. Packard was hospitalized for four days.

1

That same day, Plaintiff Johnathen Duran, a journalist, was livestreaming at the intersection of Colfax and Pearl Street in downtown Denver when Aurora officers pushed forward using batons and less-lethal weapons, including tear gas. As Mr. Duran was backing up, he was shot in the testicle with a 40mm "foam baton" round, commonly referred to as a "rubber bullet," fired by Aurora Officer Cory Budaj. Duran described being shot in the testicle as horrific and the worst pain he had felt in his life.

After extensive discovery, the district court denied the Aurora defendants' motion for summary judgment, holding that a reasonable jury could find that the named Aurora officers intentionally shot Mr. Packard and Mr. Duran. The district court denied the Aurora officers' request for qualified immunity because it has been clearly established for more than a decade that a police officer may not lawfully shoot a person with a so-called "less lethal" projectile when that person had committed no crime and posed no threat to the safety of officers or anyone else. The district court also denied summary judgment to the City of Aurora on Plaintiffs' claim that Aurora's policies, practices, customs, and failure to train caused the constitutional violations against them. As appellees explained in their merits briefing, this Court has no jurisdiction over appellants' interlocutory appeal because their arguments to this Court are based entirely on their version of the facts.

2

This emergency motion is no emergency at all. Over a year ago, the district court set a June 19, 2023 trial date and June 1, 2023 trial preparation conference for Plaintiffs' claim against these Aurora Defendants. On the literal eve of trial, the Aurora defendants ask this Court to step in and delay the upcoming trial after the district court denied a similar request. Plaintiffs are ready, willing, and eager to have their day in court. Because this Court lacks jurisdiction over appellants' interlocutory appeal, which is frivolous in any event, this Court should deny appellants' motion for a stay.

## ARGUMENT

## I. The Court Should Deny the Emergency Motion Due to Lack of Jurisdiction over the Interlocutory Appeal

This Court should deny appellants' request for an emergency stay for three reasons. First, as appellees explained in their merits briefs, this appeal is improperly based on *appellants'* version of the facts that contradicts the district court's specific findings, thereby stripping this Court of jurisdiction to answer only "neat abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995). Second, the Court lacks pendent jurisdiction over Aurora's bootstrapped appeal, which likewise is premised on disputed issues of fact. Third, the filing of notice of interlocutory appeal did not divest the district court of jurisdiction because the appeal is frivolous; a motion to certify the appeal as frivolous is pending in the district court.

### A.    Appellants improperly contest the district court's factual findings related to qualified immunity

This Court lacks jurisdiction over an interlocutory appeal challenging the denial of qualified immunity when the officers' appeal requires the Court to revisit or reject the district court's factual findings, including the district court's identification of disputed issues of fact. *Monarque v. Garcia*, 505 F. App'x 739, 741 (10th Cir. 2012) (dismissing interlocutory qualified-immunity appeal because appellant challenged district court's factual findings). That is because "[o]rders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291." *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013). Under the collateral-order doctrine, the Supreme Court has carved out a narrow exception to that rule, permitting review a government official's appeal from a denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves "neat abstract issues of law." *Johnson*, 515 U.S. at 317. Accordingly, when reviewing the denial of qualified immunity at summary judgment, this Court "lacks jurisdiction … to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Sawyers v. Norton*, 962 F.3d 1270, 1281 (10th Cir. 2020). "Those facts explicitly found by the district court, combined with those that it likely assumed, … form the universe of facts upon which [appellate courts] base [their] legal review of

4

whether defendants are entitled to qualified immunity." *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008).

Appellants' opening brief disregards these limitations on the Court's jurisdiction under the collateral-order doctrine. The opening brief openly disputes the district court's findings.[1] And the legal issues presented rely on *appellants'* version of disputed material facts—turning the summary judgment standard on its head. This Court's jurisdiction over whether the law was clearly established extends only "when the defendant does not dispute the facts alleged by the plaintiff and raises only legal challenges to the denial of qualified immunity based on those facts." *Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015). Where, as here, an opening brief "dispute[s] the facts [the] district court determines a reasonable juror could find" and does not raise pure "legal challenges to the denial of qualified immunity

---

[1] *Compare, e.g.*, Aurora Opening Br. 21 ("The record in this case does not provide any evidence that the Aurora Officers engaged in an intentional effort to apply force to Plaintiffs Packard or Duran, and there has therefore been no seizure here."), *with* Add. 12 ("Though defendants insist that there is no proof of such an intent for either officer, the fact is that there is evidence (that I have outlined in the sections above) that these officers fired munitions in the direction of Messrs. Packard and Duran and evidence that Messrs. Packard and Duran were hit with these munitions. A reasonable juror could (but certainly does not have to) infer from these facts that Officer McNamee shot Mr. Packard intentionally, and Officer Budaj shot Mr. Duran intentionally."); *compare also* Aurora Opening Br. 22–23 ("Put directly, the record contains no evidence that any Aurora Officer intentionally targeted Plaintiff Packard or Plaintiff Duran, nor any evidence that they were directed to do so by Sergeant Serrant."), *with* Add. 13 ("[Sergeant Serrant] instructed officers to use substantial force against protesters ….").

based on those facts," *Ralston v. Cannon*, 884 F.3d 1060, 1067 (10th Cir. 2018), this Court lacks jurisdiction over the appeal.

Appellants cannot skirt this careful jurisdictional balance simply by arguing that "no evidence" supports the district court's findings. *See* Aurora Opening Br. 6–7, 21, 22–23. "[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). "[T]his court has no interlocutory jurisdiction to review whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Roosevelt-Hennix*, 717 F.3d at 753 (citing *Johnson*, 515 U.S. at 320).

### B. The Court lacks pendent jurisdiction to review the denial of summary judgment on *Monell* liability

The district court denied the City of Aurora's motion for summary judgment on appellees' *Monell* claims after concluding that they had raised a genuine dispute of material fact regarding whether Aurora's policies, practices, or customs caused their injuries. Add. 17–19. A denial of summary judgment on *Monell* liability is generally not appealable. *Moore v. City of Wynnewood*, 57 F.3d 924, 928 (10th Cir. 1995). Because municipalities are not entitled to qualified immunity, Aurora "cannot invoke the collateral order doctrine to justify appeal of an otherwise nonappealable decision." *Id.* at 929 (cleaned up). Thus, this Court may consider Aurora's *Monell*

liability only if it chooses to exercise pendent appellate jurisdiction over this aspect of the appeal. *Id.*

This Court has pendent appellate jurisdiction only to the extent the issues raised by Aurora's appeal are "inextricably intertwined with the district court's denial of qualified immunity to the individual defendants." *Crowson*, 983 F.3d at 1185. Issues are inextricably intertwined "[i]f resolution of the collateral qualified immunity appeal *necessarily* resolves" Aurora's liability, as well. *Id.* Otherwise, this Court lacks jurisdiction. *Id.*

Aurora's "me too" argument on appeal relies on the same reframing of facts that strip this Court of jurisdiction to review the officers' qualified immunity argument that no constitutional violation occurred. But even as a legal matter, resolution of the officers' qualified immunity will not necessarily resolve Aurora's municipal liability. The Aurora officers violated appellees' Fourth Amendment rights when they shot Mr. Packard in the head with a lead-filled Kevlar bag and shot Mr. Duran in the groin. Even if this Court concluded that the Aurora officers violated appellees' rights but were nonetheless entitled to qualified immunity because the right was not clearly established, *but see infra* Part I.C., that holding cuts against the exercise of pendent appellate jurisdiction. *Lynch v. Barrett*, 703 F.3d 1153, 1164 (10th Cir. 2013) ("But because we *assumed* Defendant Officers violated Plaintiff's right to court access and *held* they were entitled to qualified immunity based on the

lack of clearly established law, Defendant City's appeal i[s] not 'inextricably intertwined' with Defendant Officer's appeal.").

## C.    Appellants' appeal is frivolous

Finally and independently, the Court should deny the emergency motion because the pending appeal is wholly without merit. Recognizing "the risk" that interlocutory appeals of qualified immunity would "be subject to abuse," this Circuit has clarified that a district court may retain jurisdiction over a case notwithstanding a notice of appeal if it "certif[ies] the appeal as frivolous or forfeited." *Stewart v. Donges*, 915 F.2d 572, 577–78 (10th Cir. 1990). Here, a motion to certify appellants' appeal as frivolous is pending before the district court. Dkt. 485.[2]

An appeal is frivolous if it is "wholly without merit." *Stewart*, 915 F.2d 572, 583 n.14 (10th Cir. 1990) (citations omitted); *cf. Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) ("An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit.") (citation omitted). Appellants' appeal warrants that label.

This Court's decisions in *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), and *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), clearly establish

---

[2] After the district court denied the motion to vacate the trial date, which required an implicit finding that the pending appeal is frivolous, appellees promptly filed a motion to certify the appeal as frivolous to obtain jurisdictional clarity for all parties and remove any question over the district court's ability to proceed.

the unlawfulness of the Aurora officers' conduct, as the district court rightly held. Those precedents are discussed at length in appellees' merits briefs, which are incorporate by reference for brevity's sake. In short, those precedents put all reasonable officers in this Circuit on notice that it is unconstitutional to use less-lethal force against protestors who pose no immediate threat to anyone, who have committed no crime more severe than a misdemeanor, and who are not fleeing arrest—exactly the facts as the district court found them below.

Appellants' attempts to distinguish these on-point cases are wholly without merit. Appellants contend that, unlike here, the plaintiffs in those cases were not "in the vicinity of other individuals against whom officers were justifiably using force" and who were "actively resisting lawful orders to disperse." Aurora Opening Br. 18–19. This proposed distinction is a non-starter. The district court did not find that any orders to disperse had been given, let alone that appellees were among protesters "actively resisting" those orders. The district court held that the evidence supports a jury finding that the Aurora officers intentionally shot appellees; therefore, appellees' proximity to other protesters is irrelevant, no matter what they were or were not doing.

Appellants also argue that "neither *Buck* nor *Fogarty* addressed a situation where officers were being pummeled with rocks, bricks, and mortars by a swelling crowd engaging in threatening behaviors at the time the officers utilized the force at

issue." Aurora Opening Br. 20. Again, the district court found no evidence that the Aurora officers faced "a swelling crowd engaging in threatening behaviors" after reviewing extensive video of the events. In any event, this Court in *Fogarty* and *Buck* denied the officers qualified immunity notwithstanding that those officers, like the Aurora officers, were dealing with a crowd-control situation. *See Fogarty*, 523 F.3d at 1150–52 (describing the protests involving between 500 and 1,000 protesters, which the officers "vehemently contest[ed]" were peaceful); *Buck*, 549 F.3d at 1274 (adopting the same factual background as *Fogarty*). In any event, appellees need not identify a case with identical facts to show that the constitutional right was clearly established. *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) ("[O]ur analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law."); *see also Finch v. Rapp*, 38 F.4th 1234, 1242–43 (10th Cir. 2022) ("To be sure, there is no case with identical facts to those here. But we do not think it requires a court decision with identical facts to establish clearly that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself."). Indeed, if *Buck* and *Fogerty* were distinguishable on the facts found by the district court, appellants presumably would not have gone so far to change the facts altogether. The district court found that neither appellee was threatening; because that finding

10

is unreviewable by this Court, appellants' arguments lack any merit. *Id.* at 1238 ("The district court held that a reasonable jury could find that Finch was unarmed and unthreatening. We are bound by those findings for the purposes of this appeal.").

Because this Court's precedents raise no legitimate room for debate over the officers' entitlement to qualified immunity at summary judgment, the district court is well within its discretion to certify the pending appeal as frivolous.

## II.     The Rule 8.1 Factors Do Not Support a Motion to Stay

Not only does this Court lack jurisdiction over the appeal, but appellants also fail to show that the factors outlined in Tenth Circuit Rule 8.1 support their motion for a stay. Instead, these factors support allowing the district court to proceed with litigation in the ordinary course.

### A.     Appellants are not likely to succeed on appeal

Despite the importance of showing a likelihood of success on appeal, appellants give this factor short shrift. As appellees explain in their merits briefs, the district court's opinion is supported by extensive record evidence and is unreviewable on interlocutory appeal. All the arguments raised by the Aurora defendant are forfeited, factually baseless, legally meritless, or all three. Therefore, the questions on the merits raised by the appellants are not "so serious, substantial, difficult and doubtful, as to make these issues ripe for litigation and deserving of

more deliberate investigation." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996).

The district court correctly held that none of the Aurora officers (Budaj, McNamee, and Serrant) are entitled to qualified immunity. Appellants' opening and reply briefs on appeal ask this Court to consider *their* version of the facts because it is impossible to accept *appellees'* version of the facts—as this Court must—and find that the officers are entitled to qualified immunity. The district court correctly concluded that the officers violated appellees' right to be free from excessive force when they shot Mr. Packard in the head with a lead-filled Kevlar shotgun round and when they shot Mr. Duran in the groin with a 40mm round. These physical assaults constituted seizures within the meaning of the Fourth Amendment because they were applications of physical force with intent to restrain. The applications of force were unreasonable because Mr. Packard and Mr. Duran posed no immediate threat to any officer, had committed no crime, and were not fleeing arrest. The officers' use of force against Mr. Packard and Mr. Duran was excessive and in clear violation of appellees' constitutional rights—or so a reasonable jury could find. These facts are unreviewable in this appeal.

The law on this point is clearly established, and every reasonable officer would have known that shooting appellees in this context violated their constitutional rights. As noted above, this Court's decision in *Buck v. Albuquerque*,

549 F.3d 1269 (10th Cir. 2008), and *Fogarty v. Gallegos*, 523 F.3d 1157 (10th Cir. 2008), make clear that police may not fire less-lethal munitions at protesters who pose no threat, have committed no crime more serious than a misdemeanor, and who are not fleeing arrest.

In *Fogarty*, the Court considered whether police officers violated the plaintiff's clearly established Fourth Amendment right when they shot him with a pepper ball and exposed him to tear gas while he protested the Iraq War. 523 F.3d at 1150-53. The Court determined that, at most, the plaintiff's conduct constituted a petty misdemeanor, he did not pose an immediate threat to the officers' or public's safety and was not resisting or evading arrest. *Id.* at 1160–61. The Court thus held that the officers' "considerable" use of force was unreasonable. *Id.* at 1161. Similarly, this Court held in *Buck* that shooting a peaceful protester with pepper ball rounds was unreasonable under facts similar to those in this case. 549 F.3d at 1289–91.

Both *Buck* and *Fogarty* are directly on point and informed every reasonable officer that they were not entitled to qualified immunity for shooting a peaceful protester with less-lethal munitions.[3] Because the record clearly supports that appellants violated Mr. Duran's and Mr. Packard's constitutional rights, and because

---

[3] The district court also correctly allowed the appellees to maintain excessive force claims under the Fourteenth Amendment in the alternative.

the law was clearly established on that point, appellants are not at all "likely" to succeed on appeal. Indeed, appellees have maintained that this Court lacks jurisdiction over this appeal because the only way to dispute the district court's holding below—and the only argument appellants make—is to rely on appellants' version of evidence that is unsupported by the record or contrary to the district court's unreviewable findings.

**B.     Any potential threat of irreparable harm is mitigated by the lack of jurisdiction**

To constitute irreparable harm, "an injury must be certain, great, actual, and not theoretical." *Schrier v. University of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005). While qualified immunity protects certain defendants from trial when applicable, *see Behrens v. Pelletier*, 516 U.S. 299, 308 (1996), that harm is mitigated where, as here, this Court lacks jurisdiction to consider appellants' appeal. As explained above, appellants' appeal relies on a version of the facts that the district court rejected, thereby depriving this Court of jurisdiction. Moreover, any potential right by the individual appellees to avoid trial under that doctrine was lost 15 years ago when this Court decided in *Buck* and *Fogerty* that the officers' actions in this case were unconstitutional. Any potential for irreparable harm is mitigated under the unique circumstances here.

**C.    The balance of hardships favors appellees**

Contrary to appellants' assertion, Mr. Packard and Mr. Duran will be significantly harmed by continued delay in this case, as will their co-plaintiffs who have been waiting more than 15 months for entry of a final judgment on their verdict. Both Mr. Duran and Mr. Packard have brought weighty constitutional claims alleging police misconduct and abuse relating to their participation in peaceful protests over police brutality. Postponing Mr. Duran's and Mr. Packard's day in court as the result of appellants' frivolous appeal would give legitimacy to litigation gamesmanship, designed only to cause delay. "[J]ustice delayed is justice denied, and in this case, the denial of justice looms." *Montoya v. City and Cnty. of Denver*, 2021 WL 8087380, at *4 (D. Colo. 2021).

In addition to the harmful delay Mr. Duran and Mr. Packard would experience if a stay were granted, their co-plaintiffs would similarly suffer hardship in the event of a stay. In March 2022, twelve of the plaintiffs (including Mr. Packard)[4] in this consolidated lawsuit tried their First and Fourth Amendment claims against the Defendant City and County of Denver to verdict. Appx. at 54 (Dkt. 343). The jury awarded those plaintiffs a total of $14 million. Those plaintiffs (including Mr. Packard) and the Defendant City and County of Denver filed motions for the district

---

[4] Elisabeth Epps, Ashlee Wedgeworth, Maya Rothlein, Amanda Blasingame, Hollis Lyman, Zachary Packard, Stanford Smith, Sara Fitouri, Jacquelyn Parkins, Claire Sannier, Joe Deras, and Kelsey Taylor.

court to enter partial judgment on that verdict under Federal Rule of Civil Procedure 54(b). Dkts. 431, 434. On the same day that the district court denied the motion to vacate the June 19 trial date, the district court also denied motions for entry of partial judgment on the March 2022 verdict. Dkts. 477, 478. Thus, none of those twelve plaintiffs can obtain the compensation the jury awarded them *over a year ago* until final judgment is entered, and the district court has indicated that no judgment will be entered until all claims against all parties—including the claims of Mr. Packard and Mr. Duran against the appellants—are resolved.

### D. The public interest is served by allowing this case to proceed

Interlocutory appeals are "traditionally disfavored" because they are "necessarily disruptive, time-consuming, and expensive for the parties and the courts." *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009) (internal quotations omitted). The public interest is not served by prolonging the delay in this case simply because appellants chose to pursue a meritless interlocutory appeal. The first verdict in the case against Denver was an important public milestone and had ripple effects that continue to reverberate across the city and state. *See Montoya*, 2021 WL 8087380 at *5 ("The public has a strong interest in seeing cases resolved, especially when public entities and violations of citizens' constitutional rights are involved."). Indeed, "resolution of the particular claims in this case will provide a much greater benefit to the public—either reform of inadequate municipal policies

16

or increased confidence in local government." *Id.* By contrast, granting a stay in this case would only serve to reward the pursuit of a meritless appeal.

Because the appellants have not made a sufficient showing on this Court's Rule 8.1 factors in support of their motion for a stay, their motion should be denied, and the June 19, 2023 trial allowed to proceed.

## CONCLUSION

Appellees respectfully ask this Court to deny the Emergency Motion for a Stay Pending Appeal.

Dated: May 31, 2023

Respectfully submitted,

s/ *R. Reeves Anderson*

Robert Reeves Anderson
Matthew J. Douglas
Brian M. Williams
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
(303) 863-1000
reeves.anderson@arnoldporter.com
matthew.douglas@arnoldporter.com
brian.williams@arnoldporter.com

Timothy Macdonald
Sara R. Neel
AMERICAN CIVIL LIBERTIES UNION OF
  COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
T: (303) 777-5482
tmacdonald@aclu-co.org
sneel@aclu-co.org

s/ *Elizabeth Wang*

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Fed. R. App. P. 27 because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation because it contains 3,978 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word 365.

s/ *R. Reeves Anderson*
Robert Reeves Anderson

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing **APPELLEES'**
**RESPONSE TO AURORA'S EMERGENCY MOTION FOR STAY**
**PENDING APPEAL**:

      a)     All required privacy redactions have been made;

      b)     The ECF submission is an exact copy of the hard copy document
that is being filed with the Court;

      c)     The ECF submission has been scanned for viruses with the most
recent version of the commercial virus scanning program Checkpoint
Endpoint Security (Version 80.86.0169, most recently updated July 27, 2022),
and, according to the program, is free of viruses.

s/ *R. Reeves Anderson*
Robert Reeves Anderson

20